IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DILORENZO,

             Plaintiff,

          v.

NORTON, et al.,

             Defendants.

Civil Action No. 1:07-cv-00144-RJL

**DEFENDANTS' MOTION TO DISMISS THE VERIFIED
SHAREHOLDER DERIVATIVE COMPLAINT**

Defendants respectfully move to dismiss Plaintiff's Verified Shareholder Derivative

Complaint for the reasons set forth in the accompanying Statement of Points and Authorities. In

the alternative, Defendants move for an order directing Plaintiff to make a more definite

statement.

Dated:  April 23, 2007

Respectfully Submitted,

/s/ F. Joseph Warin
F. JOSEPH WARIN (DC Bar # 235978)
FWarin@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DILORENZO,

          Plaintiff,

        v.

NORTON, et al.,

          Defendants.

Civil Action No. 1:07-cv-00144-RJL

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE VERIFIED
SHAREHOLDER DERIVATIVE COMPLAINT**

Dated:  April 23, 2007

F. JOSEPH WARIN (DC Bar # 235978)
FWarin@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendants*

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY.....................................................................................1

II. ALLEGATIONS OF THE COMPLAINT ............................................................................3

III. ARGUMENT .........................................................................................................................6

    A.    The Court Should Dismiss this Case in Its Entirety Because the Complaint Fails to Plead Any Viable Federal Claim. .............................................................6

         1.    The Court Should Dismiss the Section 14(a) Claim (Count I) Because There Is No "Essential Link" Between ePlus's Proxy Solicitations and the Alleged Backdating. ...................................................7

         2.    The Court Should Dismiss the Section 14(a) Claim Because Errors in ePlus's Proxy Statements, If Any, Are Immaterial as a Matter of Law. ...........................................................................................................9

         3.    The Court Should Dismiss the Section 14(a) Claim Because the Complaint Fails to Plead Particularized Allegations that Any Proxy Statements Were Misleading. ...............................................................10

         4.    The Court Should Dismiss this Case in Its Entirety for Lack of Subject-Matter Jurisdiction..........................................................................11

    B.    The Court Should Dismiss this Case in Its Entirety Because Plaintiff Failed to Make Pre-Suit Demand.................................................................11

         1.    The Complaint is Subject to the *Rales* Test for Demand Futility Because the Allegations Do Not Challenge a Decision of ePlus's Board..................................................................................................13

         2.    The Complaint Fails the *Rales* Test Because It Does Not Raise a Reasonable Doubt that the Board Could Have Exercised Independent Business Judgment in Responding to a Demand. .................15

             i.    Threat of Personal Liability for Approval or Acquiescence..........16

             ii.    Sue Themselves ...................................................................................19

             iii.    Insurance Policy...................................................................................19

             iv.    Sue Friends, Colleagues or Allies.....................................................20

             v.    Audit Committee...................................................................................20

             vi.    Domination and Control .....................................................................21

vii.    Financial Interest....................................................................................22

3.    The Complaint Would Also Fail the *Aronson* Test Because It Does Not Raise a Reasonable Doubt that the Challenged Acts Were a Product of the Board's Protected Business Judgment. ..............................23

C.    The Court Should Dismiss Counts II through IX, in Whole or in Part, for Failure to State a Claim...................................................................................26

1.    The Court Should Dismiss the "Accounting" Claim (Count II) Because Plaintiff Fails to Allege that Any Relevant Accounts Are Sufficiently Complex to Justify Such Extraordinary Relief. ...................26

2.    The Court Should Dismiss the Fiduciary Duty Claims (Counts III through VII) as to the Director Defendants Because They Are Exempt from Liability for These Claims....................................................27

3.    The Court Should Dismiss the Unjust Enrichment Claim (Count VIII) Because Plaintiff Fails to Allege that Any Defendants Were Unfairly Enriched at the Company's Expense.........................................31

4.    The Court Should Dismiss the Contract Rescission Claim (Count IX) Because No Contract Is Contested in this Case. ...............................32

D.    The Court Should Dismiss Any Remaining Claims That Have Expired Under the Statute of Limitations................................................................33

1.    The Federal-Law Claim (Count I) Is Time-Barred Before January 18, 2006.................................................................................................33

2.    The State-Law Claims (Counts II through IX) Are Time-Barred Before January 18, 2004. ......................................................................35

E.    In the Alternative, the Court Should Order Plaintiff to Plead a More Definite Statement. ...................................................................................36

1.    Plaintiff Has Failed to Allege Standing Sufficiently. ...............................37

2.    Counts III through VIII Are Duplicative and Improperly Fail to Separate Claims Relating to Distinct Transactions....................................37

IV. CONCLUSION................................................................................................39

# TABLE OF AUTHORITIES

## Cases

*Abbey v. Control Data Corp.*, 603 F.2d 724 (8th Cir. 1979) ............................................................ 8

*Alabi v. DHL Airways, Inc.*, 583 A.2d 1358 (Del. Super. Ct. 1990) ............................................ 32

*Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.)*, 333 B.R. 506, 527 n.25 (Bankr. D.D.C. 2005) .................................................................................................................................. 30

*Anderson v. Dist. Bd. Tr. Cent. Fl. Cmty. Coll.*, 77 F.3d 364 (11th Cir. 1996) ........................... 39

\* *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ..................................................................... passim

*Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75 (D.D.C. 2003) ... 6

*Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69 (D.D.C. 2006) .......................................... 26

*Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) .............................................................................. 20

*Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir. 1972) .................................................................. 26

*Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906 A.2d 27 (Del. 2006) ........... 28, 30

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ................................................................................ 15

*Cal. Pub. Employees Ret. Sys. v. Coulter*, No. Civ. A. 19191, 2002 WL 31888343 (Del. Ch. Dec. 18, 2002) ......................................................................................................................................... 20

*Caruna v. Saligman*, Civ. A. No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990) ............... 20

*Ceres Partners v. GEL Assoc.*, 918 F.2d 349 (2d Cir. 1990) ....................................................... 33

\* *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984), *as amended* (Nov. 27 & Dec. 7, 1984) ........ 8, 9

*Crocker v. Piedmont Aviation*, 49 F.3d 735 (D.C. Cir. 1995) ...................................................... 33

*Decker v. Clausen*, Civ. A. No. 10684, 1989 WL 133617 (Del. Ch. Nov. 6, 1980) ................... 19

*Gabrielsen v. BancTexas Group, Inc.*, 675 F. Supp 367 (N.D. Tex. 1987) ................................... 9

*Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981) ...................................................................... 8

*Gen. Elec. Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992) ......................................................... 6, 8

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988) ..................................................................... 15, 21, 22

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ..................................................................... 23

*Halpern v. Barran*, 313 A.2d 139 (Del. Ch. 1973) ........................................................ 35

*In re Baxter Int'l*, 654 A.2d 1268 (Del. Ch. 1995) ...................................................... 17

\*   *In re CNET Networks Inc. Shareholder Derivative Litigation*, No. C 06-03817 WHA, 2007 WL 1089690 (N.D. Cal. Apr. 11, 2007) ..................................................... 13, 17, 24, 26

\*   *In re Computer Sciences Corp. Derivative Litigation*, No. 06-05288 MRP, 2007 U.S. Dist. LEXIS 25414 (C.D. Cal. Mar. 26, 2007) (Mar. 26, 2007) ................................................ passim

*In re Data Access Systems Sec. Litigation*, 843 F.2d 1537 (3d. Cir. 1988) .................................. 33

*In re Dean Witter Partnership Litig.*, Civil Action No. 14816, 1998 Del. Ch. LEXIS 133 (Del. Ch. July 17, 1998) ......................................................................... 35

*In re Exxon Mobil Sec. Litig.*, 387 F. Supp. 2d 407 (D.N.J. 2005) ................................................ 33

*In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003) ..................... 33, 34

\*   *In re Linear Technology Corp. Derivative Litigation*, No. C-06-3290 MMC, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) ............................................................ 12, 24, 25

*In re Maxxam/ In re Federated Dev. S'holders Litig.*, No. 12111, 1995 WL 376942 (Del. Ch. June 21, 1995) ........................................................................... 36

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (2d Cir. 2002) ...................................... 10

*In re Tenneco Sec. Litig.*, 449 F. Supp. 528 (S.D. Tex. 1978) ........................................ 8

*In re Wheelabrator Technologies, Inc. S'holders Litig.*, C.A. No. 11495, 1992 Del. Ch. LEXIS 196 (Del. Ch. Sept. 1, 1992) ........................................................ 29

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) ........................................................... 6, 7

*Judicial Watch, Inc. v. Deutsche Bank, A.G.*, No. 00-5187 20012001 U.S. App. LEXIS 13891 (D.C. Cir. May 21, 2001) ............................................................. 13

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ................................... 11, 12, 13

*Kanter v. Barella*, 388 F. Supp. 2d 474 (D. N.J. 2005) ........................................ 24

*Kaufman v. Guest Capital, L.L.C.*, 386 F. Supp. 2d 256 (S.D.N.Y. 2005) ................................... 27

*Kenney v. Keonig*, 426 F. Supp. 2d 1175 (D. Colo. 2006) ........................................ 20

*Lampf, Pleva, Lipkind, Prupis & Petigrew v. Gilbertsen*, 501 U.S. 350 (1991) ........................ 34

*Malpiede v. Townson*, 780 A.2d 1075 (2001) ......................................................... 28, 29

*Marianao Sugar Trading Corp. v. Pennsylvania R.R. Co.*, 11 F.R.D. 288 (S.D.N.Y. 1951)....... 39

*McMichael v. United States Filter Corp.*, No. EDCV 99-182 VAP (Mcx), 2001 U.S. Dist. LEXIS 3918 (C.D. Cal. Feb. 26, 2001)................................................................. 29

*Merck & Co. v. SmithKline Beechman, Pharms. Co.*, No. 15443-NC, 1999 Del. Ch. LEXIS 242 (Del. Ch. 1999) ........................................................................................ 36

*Messick v. Diamond State Truck Brokers, Inc.*, No. 816, 1980 Del. Ch. LEXIS 573, 1980 WL 81865 (Del. Ch. Mar. 12, 1980)..................................................................... 27

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ............................................................ 7

*Norton v. Poplos*, 443 A.2d 1 (Del. 1982) ........................................................................ 32

*Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211 (Del. Ch. 2001)..................... 38

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ........................................................ 12, 13, 14, 15

*Rattner v. Bidzos*, No. 19700, 2003 Del. Ch. LEXIS 103 (Del. Ch. Apr. 7, 2003) ...................... 21

*Ryan v. Gifford (In re Maxim)*, No. 2213-N, 2007 Del. Ch. LEXIS 22 (Del. Ch. Feb. 6, 2007) . 25

*Saltzman v. Birrell*, 78 F. Supp. 778 (S.D.N.Y. 1948) ................................................. 39

*Seidel v. Lee*, 954 F. Supp. 810 (D. Del. 1996) ............................................................ 36

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995)................................................ 12, 17

*Student Fin. Corp. v. Royal Indem. Co.*, No. 03-507 JJF, 2004 U.S. Dist. LEXIS 4952, at *22 (D. Del. May 23, 2004) ................................................................................ 31

*TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ........................................... 9

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)................................................... 11

*Virginia M. Damon Trust v. North Country Financial Corp.*, 325 F. Supp. 2d 817 (W.D. Mich. 2004) ........................................................................................ 33

*Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349 (3d Cir. 1993) ........................... 33

*White v. Panic*, 783 A.2d 543 (Del. 2001)........................................................ 15, 23

## Statutes

15 U.S.C. § 78n(a) (2002)............................................................................. 6

15 U.S.C. § 78u-4(b) (1998) ................................................................. 6, 10

28 U.S.C. § 1331 (1980) ........................................................................................ 11

28 U.S.C. § 1367(c)(3) (1990) ............................................................................... 11

28 U.S.C. § 1658(b) (2002) .................................................................................... 33

\*    Del. Code Ann. tit. 8 § 102(b)(7) (2007) ........................................................ 28, 29

Del. Code Ann. tit. 8 § 141(e) (2007) .................................................................... 26

Del. Code. Ann. tit. 10 § 8106 (2007) ................................................................... 35

Del. Code. Ann. tit. 8 § 327 (2007) ....................................................................... 37

## Rules

Fed. R. Civ. P. 10(b) ............................................................................................. 39

Fed. R. Civ. P. 12(e) ......................................................................................... 37, 38

Fed. R. Civ. P. 23.1 ........................................................................................... 11, 37

Fed. R. Civ. P. 9(b) ............................................................................................... 32

Fed. R. Evid. 201(b) ............................................................................................. 4, 17

## Other Authorities

1 Am. Jur. 2d Accounts & Accounting § 52 (2006) ............................................... 26

ePlus, Current Report (Form 8-K) (Nov. 27, 2006).............................................. 4, 14

Restatement (Second) of Contracts § 164 (1981) .................................................. 32

# I.
## INTRODUCTION AND SUMMARY

Plaintiff Christopher Dilorenzo purports to bring this action as a derivative case on behalf of ePlus inc. ("ePlus" or the "Company") against eight of ePlus's current directors and/or officers.[1]  The sole factual basis for all of Plaintiff's claims is that these Defendants had some unspecified connection to stock option grants that were allegedly "backdated."  This lawsuit follows on the heels of ePlus's August 11, 2006 announcement that it would restate previous financial statements regarding stock-based compensation expenses and that the Company was, of its own initiative, in the process of investigating all options it granted since 1996.  The Complaint must be dismissed in its entirety for at least two reasons.

First, Plaintiff has impermissibly invoked the authority of this Court.  Although the claims are overwhelmingly based on fiduciary duties existing under state law, Plaintiff attempts to manufacture federal-question jurisdiction by throwing in a challenge to the accuracy of ePlus's proxy statements under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act").  This claim, which is Plaintiff's only basis for federal jurisdiction, has no merit.  Section 14(a) claims are permitted only to challenge corporate action that shareholders authorized based on a misleading proxy statement.  This case has nothing to do with any actions authorized by shareholders; rather, it concerns alleged "backdating" that was not the subject of shareholder voting.  Furthermore, Plaintiff fails to plead any basis for an inference that errors in

---

[1] Defendants are the following ePlus officers and directors:  Philip G. Norton, CEO and Chairman of the Board of Directors; Bruce M. Bowen, Executive Vice President and Director; Steven J. Mencarini, Senior Vice President and Chief Financial Officer; Kleyton L. Parkhurst, Senior Vice President, Treasurer and Assistant Secretary; Milton E. Cooper, Director; Terence O'Donnell, Director; Lawrence S. Herman, Director; and C. Thomas Faulders, Director.  *See* Compl. ¶¶ 13-20.

ePlus's proxy statements (if any) were material.  Plaintiff also fails to plead allegations sufficient to state the claim that any proxy statements were even misleading.  Consequently, Plaintiff's sole federal claim must be dismissed and, with it, this state-law Complaint.

Second, Plaintiff has impermissibly sought to deprive ePlus's directors of their authority and right to determine whether this legal action is in the Company's best interest.  Plaintiff made no demand on the board, as is ordinarily required, before filing this lawsuit purportedly on the Company's behalf.  Moreover, Plaintiff has failed to plead particularized facts demonstrating that the requirement of pre-suit demand is excused in this case.  Drawing all reasonable inferences in favor of Plaintiff, there is absolutely no basis in the allegations from which the Court could infer that a majority of ePlus's eight directors—six of whom are independent, two of whom are not defendants, and all of whom are protected against liability by ePlus's charter—could not impartially consider a litigation demand concerning the Company's stock option grants.  The only particularized allegations in the entire Complaint, in fact, demonstrate that ePlus's board authorized an investigation into that very subject before Plaintiff arrived at the courthouse.  Since Plaintiff thus seeks to force the hand of the Company against itself with no legal basis for doing so, the Complaint must be dismissed.

In addition, insofar as any of the claims are permitted to proceed, many must be dismissed for failure to state a claim.  Plaintiff's false proxy claim (Count I) must be dismissed for the reasons discussed above.  The accounting claim (Count II) must be dismissed because Plaintiff fails to plead the complexity required to support such an extraordinary equitable remedy.  The various, duplicative iterations of the fiduciary duty claims (Counts III through VII) must be dismissed as to each of ePlus's independent directors because the Company's charter exculpates them from liability for those claims as a matter of law.  The unjust enrichment claim

(Count VIII) is hopelessly generic and must be dismissed because it fails to plead that any Defendants were unfairly enriched at the Company's expense. The rescission claim (Count IX) must be dismissed because it has no basis in the allegations. Although Plaintiff contests alleged "backdating" not authorized in ePlus's stock option contracts, no reading of the Complaint suggests that this case has anything to do with the contracts themselves or circumstances in which they were executed. Statutes of limitation and repose provide further bars to Plaintiff's claims.

Finally, although it is clear that the Complaint should be dismissed, Defendants move in the alternative for a more definite statement regarding Plaintiff's standing and the specific transactions and occurrences at issue in this case. Without clarification as to what events Plaintiff disputes, Defendants cannot frame a responsive pleading.

## II.
## ALLEGATIONS OF THE COMPLAINT

ePlus is a leading provider of information technology products, sales and services, leasing and financing services, procurement software, document management and distribution software, and electronic catalog content management software and services. Compl. ¶ 35. ePlus is incorporated in Delaware and has its principal place of business in Herndon, Virginia. *Id*. at ¶ 12. When this suit was filed, ePlus's board of directors consisted of eight members: ePlus's CEO and Chairman, Philip G. Norton; ePlus's Executive Vice President, Bruce M. Bowen; and non-management directors C. Thomas Faulders, Terence O'Donnell, Lawrence S. Herman, Milton E. Cooper, Jr., Eric D. Hovde, and Irving R. Beimler. *Id*. at ¶¶ 13-14, 17-20; ePlus,

Current Report (Form 8-K) (Nov. 27, 2006).[2]  Messrs. Hovde and Beimler are not Defendants in this lawsuit.

Plaintiff purports to be a shareholder of ePlus, Compl. ¶ 11, bringing this lawsuit on ePlus's behalf.  The gravamen of the Complaint is that the Defendants caused or did not prevent ePlus from backdating stock options granted to ePlus's senior executives.  *See id*. at ¶¶ 3, 5.  Without specifying which options were supposedly improper, Plaintiff alleges that "many of the hundreds of thousands of options granted to ePlus's executives," *id*. at ¶ 37, between 1997 and 2006, were "backdated to ensure that the strike price associated with the option grants were at or near the lowest trading price for the fiscal period." *Id*. at ¶ 25.

As a result of the backdating, the Complaint alleges, "ePlus's compensation expense was understated and its net earnings were overstated."  *Id*. at ¶¶ 50-57.  Thus, between 1997 and 2006, ePlus filed incorrect financial statements with the United States Securities and Exchange Commission ("SEC").  The Complaint also recites ePlus's public announcement on August 11, 2006 that it would restate those financial disclosures to correct them.  *Id*. at ¶ 42.  The Complaint does not allege, however, that these errors resulted in direct shareholder litigation that might subject the Company to liability.

The Complaint alleges that ePlus's proxy statements between 1997 and 2005 were also incorrect because they stated "that the options granted by ePlus carried with them an exercise

---

[2]  For the reasons set forth in the Motion for Judicial Notice in Support of Defendants' Motion to Dismiss, the Court should take judicial notice of ePlus's board appointments following the actions alleged in the Complaint.  *See* Docket Entry ("DE") 7.  These facts are "not subject to reasonable dispute," are "generally known within" the District of Columbia, and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Furthermore, these facts are neither relevant to nor raised to question the veracity of the allegations.  Instead, they concern the procedural requirements for maintaining a derivative lawsuit.

price that was not less than the fair market value of ePlus stock on the date of grant and issuance." *Id*. at ¶ 2 (emphasis omitted). Plaintiff alleges no facts, however, regarding Defendants' preparation and dissemination of these proxy statements. Plaintiff also fails to allege that errors in these proxy statements induced shareholders to authorize backdating or any other conduct questioned in the Complaint.

The Complaint admits that Plaintiff failed, as is generally required by Delaware law, to make a demand on ePlus's board before initiating this lawsuit. Rather, Plaintiff contends that complying with that requirement would have been futile. *See id*. at ¶¶ 44-48. In support of this contention, Plaintiff vaguely asserts that ePlus's directors are unable to exercise independent judgment in evaluating a demand. *Id*. at ¶ 47 (a) – (i). The Complaint also contains conclusory allegations that six of ePlus's eight current directors approved of or acquiesced in the alleged "backdating scheme." *See, e.g., id*. at ¶ 24. The Complaint is devoid, however, of any particularized factual allegations concerning who set the grant date or exercise price of any disputed options, how the grant dates were chosen, when these decisions were made, and whether they were believed to be improper. The Complaint pleads no specific facts that, if true, would suggest that any of ePlus's current directors actually knew that any alleged backdating had occurred. Nor does it specifically allege that ePlus's independent directors received any backdated options. Moreover, the Complaint admits that three of the six directors who are defendants—namely, Messrs. Cooper, Herman, and Faulders—joined the board after 1997, when the alleged "scheme" purportedly began. As noted above, two more of the eight total directors who comprise the board—Messrs. Hovde and Beimler—are not defendants at all.

**III.**
**ARGUMENT**

A.    **The Court Should Dismiss this Case in Its Entirety Because the Complaint
      Fails to Plead Any Viable Federal Claim.**

Count I of the Complaint, which is the only claim under federal law, alleges violations of

Section 14(a) of the Exchange Act.[3]  To state a Section 14(a) claim, Plaintiff must plead that "(1)

a proxy statement contained a material misrepresentation or omission which (2) caused the

plaintiff injury and (3) that the proxy solicitation . . . was 'an essential link in the

accomplishment of the transaction.'"  *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*,

295 F. Supp. 2d 75, 81-82 (D.D.C. 2003) (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932

(3d Cir. 1992)).  Since the enactment of the Private Securities Litigation Reform Act of 1995

("PSLRA"), private claims under the federal securities laws involving untrue statements or

misleading omissions must "specify each statement alleged to have been misleading, the reason

or reasons why the statement is misleading, and, if an allegation regarding the statement or

omission is made on information and belief, the complaint shall state with particularity all facts

on which that belief is formed."  15 U.S.C. § 78u-4(b) (1998).

Here, Plaintiff's Section 14(a) claim must be dismissed for at least three reasons.  First,

there is no essential link between any transaction contested by the Complaint and corporate

action approved by shareholders, whether in reliance on ePlus's proxy statements or otherwise.

---

[3]  Section 14(a) provides that it is unlawful for any person "to solicit or to permit the use of his
name to solicit any proxy or consent or authorization in respect of any security (other than an
exempted security)" in violation of the Rules of the United States Securities and Exchange
Commission ("SEC").  15 U.S.C. § 78n(a) (2002).  Exchange Act Rule 14a-9, in turn,
prohibits solicitations by means of proxy statements that are "false or misleading with respect
to any material fact."  Although neither the Exchange Act nor the rules contain an express
right of action for violations of Section 14, the Supreme Court has held that such a right is
implied for private plaintiffs.  *J.I. Case Co. v. Borak*, 377 U.S. 426, 430-31 (1964).

Second, errors in ePlus's proxy statements, if any, are immaterial as a matter of law because they could not be important in reasonable shareholders' voting decisions.  Third, the Complaint fails to satisfy the PSLRA's standard for pleading that any proxy statements were misleading.

Since the Section 14(a) claim has no merit and there are no other federal claims in the Complaint, the Court should dismiss this case in its entirety for lack of subject matter jurisdiction.  These points are discussed, in turn, below.

1.    **The Court Should Dismiss the Section 14(a) Claim (Count I) Because There Is No "Essential Link" Between ePlus's Proxy Solicitations and the Alleged Backdating.**

Count I must be dismissed because Plaintiff does not—and cannot—plead that ePlus's proxy statements were an "essential link in the accomplishment" of any contested action.  *Id.*; *accord Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970).  As the Supreme Court explained, "the purpose of § 14(a) is to prevent management from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitations."  *J.I. Case Co.*, 377 U.S. at 431.  Such authorization was not obtained in this case.  The Complaint only challenges one type of conduct:  backdating options.  *See* Compl. ¶ 66 (alleging that ePlus's proxy statements were misleading because they omitted to state that "Defendants were causing ePlus to engage in an option backdating scheme . . . .").  ePlus's proxy statements clearly were not used to obtain shareholder authorization for such backdating, and Plaintiff does not allege that they were.  Therefore, Section 14(a) is an improper vehicle for Plaintiff's claims, and Count I fails as a matter of law.

The D.C. Circuit's decision in *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984), *as amended* (Nov. 27 & Dec. 7, 1984), requires this conclusion.[4]  Daniel Cowin, a minority shareholder in Berler & Reiner, sued the company and its directors for a wide range of alleged mismanagement, fraud, and self-dealing, including a claim under Section 14(a).  *Id*. at 412. Cowin's Section 14(a) claim alleged that the company's misleading proxy statement "artificially depressed the value of company stock by limiting the public trading market in [its] shares and resulted in the election of appellees as directors, thus allowing them to continue their fraudulent activity."  *Id*. at 425.  The district court dismissed this claim.  The D.C. Circuit affirmed on the ground that Cowin's alleged damages were "not a result of corporate action authorized by the proxy statement and therefore not the type of damages sought to be remedied by section 14(a)." *Id*. at 428.  Nor was the directors' conduct, following their election, a proper basis for a Section 14(a) claim.  The directors' actions were "only an incident to" their election by shareholders; they were not a direct result of a misleading proxy statement.  *Id*.  Therefore, the court held that Cowin's claims were "actionable, if at all, as a state law claim for breach of fiduciary duty."  *Id*.

Here, Plaintiff likewise attempts to characterize his state-law challenge to Defendants' management as a federal-law challenge to the content of ePlus's proxy statements.  Yet, the

---

[4] Other circuits are in accord.  *See, e.g., Gen. Elec. Co.*, 980 F.2d at 933  ("[D]amages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought."); *Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981) (holding that Section 14(a) claims require plaintiffs to plead that their harm "resulted from the corporate transaction they authorized as a result of the false or misleading proxy solicitation" (quoting *In re Tenneco Sec. Litig.*, 449 F. Supp. 528, 531 (S.D. Tex. 1978)); *Abbey v. Control Data Corp.*, 603 F.2d 724, 732 (8th Cir. 1979) ("[A]s an essential element of a § 14(a) cause of action[,] the harm to plaintiff-shareholders must have resulted from the corporate transactions which were authorized as a result of the false or misleading proxy solicitations.").

Complaint fails to allege that any action disputed in this case was authorized by the votes of shareholders who were misled. On its very face, the Complaint pleads the contrary; it alleges that the purported backdating was "not authorized in accordance" with ePlus's shareholder-approved stock option plan. Compl. ¶ 103. Even if Plaintiff challenged the election of the directors—and he does not—the allegation that such election allowed them to engage in an unauthorized "option backdating scheme," *id*. ¶ 4, is plainly insufficient to state a claim under Section 14(a). *See Cowin*, 741 F.2d at 428; *Gabrielsen v. BancTexas Group, Inc*., 675 F. Supp 367 (N.D. Tex. 1987) ("A complaint is simply not within the reach of § 14(a) if the transaction complained of occurred without shareholder approval or disapproval."). Therefore, Count I must be dismissed.

> **2.    The Court Should Dismiss the Section 14(a) Claim Because Errors in ePlus's Proxy Statements, If Any, Are Immaterial as a Matter of Law.**

For purposes of Section 14(a) claims, "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. v. Northway, Inc*., 426 U.S. 438, 449 (1976). As explained above however, the actions at issue in the Complaint were not the subject of a shareholder vote. Thus, the contents of, or omissions in, ePlus's proxy statements are necessarily immaterial regardless of whether they are correct. In any event, Plaintiff has pleaded no facts to support an inference that errors in any proxy statements were significant enough in scope to be "important" to reasonable shareholders. ePlus's historical share prices would belie any such suggestion. For example, on the first trading day following ePlus's August 11, 2006 announcement (cited in the Complaint), ePlus's closing price was higher than it was on the day of the announcement and the day before it. The market's apparent indifference to the issues alleged in the Complaint are doubtless one

reason why no other plaintiffs have filed direct or derivative lawsuits like the one at bar against ePlus or its management.

> **3.      The Court Should Dismiss the Section 14(a) Claim Because the Complaint Fails to Plead Particularized Allegations that Any Proxy Statements Were Misleading.**

In addition to the reasons explained above, Plaintiff's Section 14(a) claim must also be dismissed because it fails to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," as is required by the PSLRA.  15 U.S.C. § 78u-4(b); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (2d Cir. 2002) (affirming dismissal of Section 14(a) claims based on the PSLRA's heightened pleadings standard).  In fact, the Complaint fails to specify any statement that is alleged to be misleading; it does not cite a single, particular proxy statement.

As for "reasons why" any statement is misleading, the Complaint is equally deficient.  It generally alleges that ePlus's proxy statements (without reference to any one in particular) stated "that the options granted by ePlus carried with them an exercise price that was not less than the fair market value of ePlus stock on the date of grant issuance."  Compl. ¶ 2 (emphasis omitted). The lack of any citation to such a disclosure is not surprising.  ePlus's proxy statements disclose the specific exercise price of all options discussed in them.  The phrase "fair market value" appears nowhere in any of ePlus's proxy statements filed in or after 2004.[5]

Thus, Count I falls far short of the PSLRA's pleading requirements and must be dismissed for that additional reason.

---

[5]  This date is significant because the applicable statute of repose absolutely bars any Section 14(a) claims in this case based on proxy statements that were filed before 2004.  *See infra* at Part III.D.1 (explaining that Count I is time-barred).

4.    **The Court Should Dismiss this Case in Its Entirety for Lack of Subject-Matter Jurisdiction.**

A district court may "decline to exercise supplemental jurisdiction over a claim" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (1990). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, Plaintiff has attempted to invoke the authority of this Court based on federal question jurisdiction. Compl. ¶¶ 7-8 (citing 28 U.S.C. § 1331). The only claim under the laws of the United States, however, is Count I, the Section 14(a) claim. As discussed above, this claim lacks merit and must be dismissed. Since no federal question remains, this case should be dismissed in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

B.    **The Court Should Dismiss this Case in Its Entirety Because Plaintiff Failed to Make Pre-Suit Demand.**

Plaintiff seeks to bring this lawsuit as a derivative action on behalf of ePlus. Plaintiffs must generally ask a company's board to provide relief voluntarily before filing a derivative action. As the Supreme Court explained, the purpose of this requirement, known as "the demand requirement," is to "afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (quotation marks and citation omitted). Derivative complaints must also be "verified" and must "allege ***with particularity*** the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires" from the corporation's board, and "the reasons for the plaintiff's failure to obtain the action." Fed. R. Civ. P. 23.1 (emphasis added).

If the plaintiff fails to make a demand on the corporation's board before filing a derivative lawsuit, the plaintiff must instead establish by particularized pleadings that the demand requirement is excused because making a demand would have been futile. Overcoming the demand requirement is an onerous burden for derivative plaintiffs. *See, e.g., Kamen*, 500 U.S. at 96 (observing that the demand requirement will only be "excused by extraordinary conditions"). Such plaintiffs must show that "the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). This burden cannot be met by alleging the "mere threat of personal liability for approving a questioned transaction." *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984). Rather, plaintiffs must plead particularized facts that establish a "substantial likelihood" that a majority of the current directors are liable. *Id.*; *accord Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).

If demand is neither made nor excused, a derivative complaint must be dismissed. *Aronson*, 473 A.2d at 818 (reversing denial of motion to dismiss where plaintiff failed to make demand or allege particular facts showing that the demand requirement was excused). Indeed, the majority of courts that have issued written opinions regarding options backdating cases to date have entered orders dismissing them for this reason. For example, in December 2006, the district court granted dismissal in *In re Linear Technology Corp. Derivative Litigation*, No. C-06-3290 MMC, 2006 WL 3533024, at *4 (N.D. Cal. Dec. 7, 2006). Although the plaintiffs sufficiently alleged that two of the company's six directors were "interested," the plaintiffs failed to satisfy Rule 23.1's pleading requirement with regard to the remaining four. *Id.* at *3-*4. In March of this year, another district court similarly dismissed *In re Computer Sciences Corp. Derivative Litigation*, No. 06-05288 MRP, 2007 U.S. Dist. LEXIS 25414, at *49 (C.D. Cal. Mar.

26, 2007) (Mar. 26, 2007) (holding that the plaintiffs failed to show that demand was excused under Rule 23.1, Delaware's *Rales* test, or applicable Nevada law).  Most recently, a third district court dismissed *In re CNET Networks Inc. Shareholder Derivative Litigation*, No. C 06-03817 WHA, 2007 WL 1089690, at *20 (N.D. Cal. Apr. 11, 2007).  Again, the court held that the plaintiffs failed to plead allegations sufficient to show that the demand requirement was excused. *Id*. at *19.  Because the plaintiffs had ample opportunity to investigate their allegations, the court indicated (without ruling definitively) that it was "inclined to deny further leave to amend." *Id*. at * 20.

Here, Plaintiff has failed to make pre-suit demand on ePlus's board of directors and also failed to show that the demand requirement should be excused.  Indeed, as explained below, Plaintiff's allegations are even less particular than those of the three cases that were recently dismissed due to their insufficiency.  Because Plaintiff has thus impermissibly sought to force the hand of the company against itself, this complaint must be dismissed in its entirety.

### 1. The Complaint is Subject to the *Rales* Test for Demand Futility Because the Allegations Do Not Challenge a Decision of ePlus's Board.

Under Delaware law,[6] there are two tests for determining whether a plaintiff has alleged "demand futility" sufficiently to excuse the demand requirement.  One of these, called the *Aronson* test, applies to complaints that challenge conscious actions of the same directors who would have considered the demand if one had been made.  *See Rales,*, 634 A.2d at 933 ("The

---

[6] Because the demand requirement is a rule of substance, not procedure, it is governed by the law of the state of incorporation of the nominal defendant.  *See Kamen, Inc.*, 500 U.S. at 108-109 ; *Judicial Watch, Inc. v. Deutsche Bank, A.G.*, No. 00-5187 2001, U.S. App. LEXIS 13891 (D.C. Cir. May 21, 2001).  ePlus is a Delaware corporation, and, therefore, Delaware law governs the demand requirement, demand futility, and claims relating to ePlus's internal affairs.

essential predicate for the *Aronson* test is the fact that a decision of the board of directors is being challenged in the derivative suit."); *see generally Aronson*, 473 A.2d at 805. The other test, called the *Rales* test, applies "where the board that would be considering the demand did not make a business decision which is being challenged" by the complaint. *Rales*, 634 A.2d at 933-34. For example, the *Rales* test governs (1) where a business decision was made by the board of a company, but a majority of the directors making the decision have been replaced; (2) where the subject of the derivative suit is not a business decision of the board; and (3) where the decision being challenged was made by the board of a different corporation. *Id*. at 934.

This case is properly analyzed under the *Rales* test. The Complaint pleads only one factual basis for relief: that the Defendants purportedly breached duties owed to ePlus in connection with the backdating of unspecified stock options. The Complaint does not plead any specific allegations—as required by Rule 23.1 and Delaware law—that the board took conscious action with regard to those options, such as approving them or approving a methodology used to determine their grant dates. Thus, the "subject of the derivative suit is not a business decision of the board." *Id*.; *see also In re Computer Sciences Corp. Derivative Litig.*, 2007 U.S. Dist. LEXIS 25414, at *20 ("Plaintiffs' Complaint does not challenge any transaction or decision related to options backdating that was undertaken by the CSC board as a whole. Thus, this Court will evaluate Plaintiffs' allegations of demand futility under *Rales*.").

Moreover, the Complaint admits that three of the current directors were not board members in 1997, when the disputed conduct allegedly began. Two more of ePlus's current directors joined the board after the disputed conduct allegedly ceased. ePlus, Current Report (Form 8-K) (Nov. 27, 2006). Therefore, at least part of the current board has changed since the time of the disputed conduct. Although it is impossible to tell from the face of the Complaint

exactly what actions form the basis for Plaintiff's claims, it is likely that some of those actions occurred before a majority of the directors had joined ePlus's board.

2.    **The Complaint Fails the *Rales* Test Because It Does Not Raise a Reasonable Doubt that the Board Could Have Exercised Independent Business Judgment in Responding to a Demand.**

Under the *Rales* test, the demand requirement is not excused unless "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales,* 634 A.2d at 934. "At the motion to dismiss stage of the litigation, 'plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences.'" *White v. Panic*, 783 A.2d 543, 549 (Del. 2001) (quoting *Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000)). Courts "need not blindly accept as true all allegations" nor "draw all inferences from them in plaintiffs' favor unless they are reasonable inferences." *Id*. (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)).

The Central District of California's recent decision in *In re Computer Sciences Corp. Derivative Litigation*, 2007 U.S. Dist. LEXIS 25414, is instructive. In that case, the plaintiffs alleged that directors and officers of Computer Sciences Corp. ("CSC") colluded to backdate options granted to the company's CEO and other officers from 1996 to 2004. *Id*. at *17. Rather than making a litigation demand on CSC's board, the plaintiffs filed a derivative lawsuit and alleged that a demand would have been futile. *Id*. at *12. In support of their demand futility argument, the plaintiffs specifically alleged that the company's chairman and CEO received almost 2.5 million improper options. *Id*. at *24. They further alleged with particularity that two

specific members of CSC's Compensation Committee participated directly in options backdating transactions. *Id*. Applying the *Rales* test, the court dismissed the case. *Id*. at *47. The court reasoned that, although the complaint created a reasonable doubt about the impartiality of three of the company's directors, it failed to plead particularized facts sufficient to show that any of the other four directors, comprising a majority of the board, could not properly consider a demand. *Id*. The court emphasized that the complaint's general allegations that a majority of the board participated in wrongful acts were simplify insufficient to overcome the plaintiffs' obligation to make a demand. *Id*. at *17-*18.

The Complaint in this case is similarly deficient. In fact, it is worse. Here, Plaintiff makes no particular allegations about who received improper options or who made relevant decisions. The Complaint fails even to specify which transactions are at issue. Instead, the Complaint merely pleads a series of unsupported conclusions and vague generalities—addressed in turn below—that could apply to any derivative case. Courts have systematically held that such boilerplate, nonspecific pleadings are insufficient to overcome the demand requirement. Since the Complaint utterly fails to create a reasonable doubt that any of ePlus's directors could properly consider a demand, it must be dismissed.

### i.     Threat of Personal Liability for Approval or Acquiescence

Plaintiff's main argument for skirting the demand requirement is that the directors cannot fairly evaluate a demand because they face the threat of personal liability for having "participated in, approved and/or permitted the wrongs alleged herein." Compl. ¶ 47(b). *See also id*. ¶ 47(e) (arguing that the directors cannot properly evaluate a demand because they are exposed to the risk of liability in related lawsuits that have not been filed). This statement of conclusion lacks required support in the factual allegations, is refuted by an exculpatory

16

provision in ePlus's articles of incorporation, and, moreover, is at least partially contradicted by the fact that the board's membership has changed significantly since the alleged violations began.

The Delaware Supreme Court has held that "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815; *see also In Re CNET Networks, Inc. S'holder Derivative Litig.*, 2007 WL 1089690, at *17. Demand is excused only when the particularized allegations demonstrate a "substantial likelihood" of director liability. *Id.*; *see also Seminaris*, 662 A.2d at 1354. As discussed in greater detail below, ePlus's certificate of incorporation absolutely eliminates director liability for damages claims concerning a breach of the duty of care, *i.e.*, negligence or gross negligence.[7] *See infra* Part III.E. Therefore, there cannot be any possibility—much less a "substantial likelihood"—of liability for such claims. "When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *In re Baxter Int'l*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (refusing to excuse the demand requirement).

---

[7] As explained further in Defendants' Motion for Judicial Notice, the Court should take judicial notice of the contents ePlus's Certificate of Incorporation. DE 7. Like ePlus's board appointments, ePlus's Certificate of Incorporation is "not subject to reasonable dispute" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Furthermore, it is neither relevant nor raised to question the veracity of the allegations in the Complaint. Rather, the certificate sets forth the legal relationship between certain Defendants and the Company whose interests Plaintiff purports to represent.

Here, the Complaint contains no more than vague conclusions of liability unsupported by particularized facts.  For instance, Plaintiff cavalierly alleges:

> Each of the Defendants aided and abetted and rendered substantial assistance in the wrong complained of herein.  In taking action to [aid and abet] the wrongdoing . . . each defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

Compl. ¶ 34.  This boilerplate recitation of the aiding-and-abetting elements, however, has no supportive factual allegations whatsoever.  There are absolutely no particular allegations that any Defendant possessed specific information relevant to any conduct the Plaintiff disputes.  Nor are there particular allegations that any Defendant assisted another in accomplishing any specific act.

Moreover, the majority of even the Complaint's insufficient, conclusory allegations merely assert due care claims.  For example, Plaintiff generally claims that unspecified Defendants "participated in, approved and/or permitted the wrongs alleged herein."  *Id*. at ¶ 47(b).  This claim, which is typical of most claims throughout the Complaint,[8] acknowledges Plaintiff's belief that the directors might not have participated in or approved any vague "wrongs."  *Id*.  They might have merely "permitted" them carelessly and without knowledge or intent to harm the company.  ePlus's certificate of incorporation demolishes all claims of this nature against directors by eliminating their liability for breaches of the duty of care.  Thus, even if these claims had been pleaded with the requisite degree of particularity (and they have not), they could pose no threat to the directors nor any doubt that they could fairly evaluate a demand.  *See infra* Part III.C.2 (moving for dismissal of due care claims against the directors).

---

[8] A variation of this refrain is repeated throughout the Complaint.  *See, e.g. id*. at ¶ 24, 47(b) ("Director defendants agreed to, approved and/or acquiesced in alleged option backdating scheme."); *id*. at ¶ 33 (Defendants caused "ePlus purposefully and/or recklessly to engage in option backdating.").

Finally, Plaintiff's generic argument that the directors' threat of liability excuses the demand requirement flatly ignores the fact that two of ePlus's eight directors are not Defendants and are thus under no conceivable threat at all.  It further ignores the Complaint's admission that three of the directors who are defendants joined the board after 1997, when the conduct underlying the claims is alleged to have begun.  Although the Complaint's imprecision makes it impossible to determine what actions the Plaintiff disputes, it is entirely likely that some of those actions took place before a majority of ePlus's current board members joined the company.  As such, the Complaint sets forth no reasonable basis to doubt that the board could properly consider the demand it deserves before derivative litigation is permitted to proceed.

### ii.     Sue Themselves

The Complaint generically alleges that demand is futile because ePlus's directors are unwilling to sue themselves.  Compl. ¶¶ 47(a), (f), (g).  It is well-established that "a bare claim of this sort raises no legally cognizable issue under Delaware corporate law."  *Aronson*, 473 A.2d at 818.  If credited, this "bootstrap argument" would eviscerate the demand requirement in all cases, "effectively abrogat[ing] Rule 23.1 and weaken[ing] the managerial power of directors."  *Id*.  It should be rejected here as it repeatedly has been in Delaware and elsewhere.  *See, e.g., id*.

### iii.     Insurance Policy

Plaintiff alleges that the directors would lose liability insurance coverage for claims they authorize ePlus to bring against them.  Compl. ¶ 47(h).  Such allegations have been squarely addressed by Delaware courts and found insufficient to create a reasonable doubt that the directors are disinterested or independent.  *See Decker v. Clausen*, Civ. A. No. 10684, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1980).  Such allegations are "nothing more than a 'variation[] on the directors suing themselves . . . refrain."  *Caruna v. Saligman*, Civ. A. No. 11135, 1990 WL

19

212304, at *4 (Del. Ch. Dec. 21, 1990) (citing *Decker*, 1989 WL 133617, at *2). As a result, Plaintiff's allegations regarding directors' insurance coverage do not excuse demand.

### iv.    Sue Friends, Colleagues or Allies

Plaintiff's allegations that demand is futile because board members would have to sue their colleagues and friends, Compl. ¶¶ 47 (a), (i), similarly fail to establish demand futility. Allegations of personal friendship, without more, are insufficient to raise a reasonable doubt that board members are independent and disinterested. *See Cal. Pub. Employees Ret. Sys. v. Coulter*, No. Civ. A. 19191, 2002 WL 31888343, at *9 (Del. Ch. Dec. 18, 2002). In *Beam v. Stewart*, 845 A.2d 1040 (Del. 2004), the plaintiff's allegations that the company's directors traveled in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as "friends" were held to be insufficient to raise a reasonable doubt of director independence. *See id.* at 1051. In stark contrast, the Complaint at bar alleges only that the directors would not be willing to sue their friends and colleagues, without any more facts about the personal and professional ties among the board members. These boilerplate allegations fail to establish demand futility.

### v.    Audit Committee

Plaintiff suggests that certain Defendants had "a special duty" to know and understand ePlus's financial reporting because they were members of ePlus's Audit Committee. Compl. ¶ 40. This vague allegation does not excuse the demand requirement. "A director's mere membership of an audit committee during the relevant period does not suffice to create a substantial likelihood of liability." *Kenney v. Keonig*, 426 F. Supp. 2d 1175, 1183 (D. Colo. 2006) (applying Delaware law). Thus, in a recent derivative case involving similar backdating allegations at another company, demand was not excused as to audit committee members

because the plaintiffs failed to allege "with particularity which actions, omissions or communications would connect" that committee to other defendants who were the subject of particularized allegations of misconduct. *In re Computer Sci. Corp. Derivative Litig.*, 2007 U.S. Dist. LEXIS 25414, at *18; *see also Rattner v. Bidzos*, No. 19700, 2003 Del. Ch. LEXIS 103, at *44-*45 (Del. Ch. Apr. 7, 2003) (dismissing derivative complaint that quoted public disclosures related to misstatements but failed to plead particular facts regarding the company's internal controls or audit committee practices).

The only specific allegations with regard to any Defendants are copied directly from ePlus's public disclosures about its restatement and internal review. Compl. ¶ 42. These allegations do not demonstrate that the Board or Audit Committee members are unable to fairly consider a litigation demand related to stock option grants. To the contrary, these allegations make it clear that the Company, through its Audit Committee, was actively addressing those very issues before Plaintiff arrived at the courthouse.

### vi.     Domination and Control

The Complaint alleges that "[c]ertain directors are also dominated and controlled by other directors and cannot act independently of them." Compl. ¶ 47(b). To demonstrate lack of independence, however, Plaintiff must plead with particularity that the "directors were dominated or otherwise controlled" by another who is interested in the challenged conduct. *Grobow*, 539 A.2d at 189. In *Aronson*, even though the plaintiff alleged that a director's 47% stock ownership and selection of the board established a situation of control, the court determined that "[t]here must be coupled with the allegations of control such facts as would demonstrate that through personal or other relationships, the directors are beholden to the

controlling person." 473 A.2d at 815. Because the plaintiff did not plead such facts, the court found insufficient proof of domination and control. *See id*.

Here, the Complaint merely pleads vague allegations that some unspecified directors are dominated and controlled by other unspecified directors in an unspecified manner. The Complaint does not name the directors who are allegedly controlled, who is the controlling director, or describe with any specificity the nature of the controlling relationship. Plaintiff has not pleaded any particular facts from which the Court could infer domination and control that undermines directors' independence. Consequently, Plaintiff has again failed to provide a basis for excusing the demand requirement.

### vii.    Financial Interest

Plaintiff alleges that the "members of the ePlus Board have benefited, and will continue to benefit, from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and perquisites derived thereof." Compl. ¶ 47(d). Despite this vague assertion, the Complaint contains no specific facts to allege what type of benefit board members are alleged to have received, which board members received them, or how board members have acted to preserve their positions and perquisites. The Complaint pleads no specific allegation that any director received stock options that were backdated. Although the Complaint states that the alleged wrongdoing allowed the Defendants to maintain "substantial compensation" from ePlus board membership, Compl. ¶ 32, director compensation cannot constitute a benefit that can be a basis for alleging lack of disinterestedness. *See Grobow*, 539 A.2d at 188 ("[S]uch allegations, without more, do not establish any financial interest."). Thus, there can be no inference from the allegations that a majority of ePlus's directors derived any improper benefit that raises a reasonable doubt about their disinterestedness.

3.    **The Complaint Would Also Fail the *Aronson* Test Because It Does Not Raise a Reasonable Doubt that the Challenged Acts Were a Product of the Board's Protected Business Judgment.**

Even if the Court applies the *Aronson* test for demand futility, the Plaintiff fails to make

particularized allegations to show that demand should be excused.  Under the *Aronson* test, the

demand requirement is not excused unless "under the particularized facts alleged, a reasonable

doubt is created that: (1) the directors are disinterested and independent and (2) the challenged

transaction was otherwise the product of a valid exercise of business judgment."  473 A.2d at

814.  The *Aronson* and *Rales* tests are "only subtly different."  *Guttman v. Huang*, 823 A.2d 492,

500 (Del. Ch. 2003).  Plaintiff fails to satisfy the first prong of this test for all of the reasons

stated above.  *See supra* Part III.B.1 (applying the *Rales* test).  The second prong involves an

additional inquiry into "the substantive nature of the challenged transaction and the board's

approval thereof."  *Aronson*, 473 A.2d at 814.  It requires plaintiffs to plead particular facts that

demonstrate that the questioned decision was not the product of a valid exercise of the directors'

business judgment.  *Id.*  This second prong does not apply in this case because the Complaint

does not appear to challenge any transaction approved by the board.  Assuming *arguendo* that

Plaintiff had pleaded that any challenged grant was considered and approved by the board—and

he does not—then Plaintiff would still fail to establish demand futility.

Under Delaware law, a corporation's directors are presumed to have acted with due care,

in good faith and in the honest belief that the action taken is in the best interests of the company.

*See id.* at 812.  This presumption, known as the business judgment rule, places upon the plaintiff

a heavy burden of showing that a complaint's allegations create a reasonable doubt that the

board's decisions were the product of a valid exercise of business judgment.  *See White*, 783

A.2d at 551.  "[M]ere directorial approval of a transaction, absent particularized facts supporting

a breach of fiduciary duty claim . . . is insufficient to excuse demand." *Aronson*, 473 A.2d at 817.

As previously explained, the Complaint alleges no particular facts from which the Court could infer that any of the current directors had actual knowledge that any stock option grants were backdated or that backdating was even inappropriate. Furthermore, as noted above, three members of the current board were not on the board during at least some of the disputed conduct and two more members were not on the board during any of that conduct. These threadbare claims fail to satisfy the requirements for establishing demand futility. *See, e.g., Kanter v. Barella*, 388 F. Supp. 2d 474, 480 (D.N.J. 2005) ("[The complaint] does not single out, among current or past directors, which directors participated in the alleged wrongdoing . . . . Nor does the . . . complaint plead any facts showing that past directors had actual knowledge of the alleged wrongdoings at the time they were committed. Such conclusory allegations do not satisfy the heightened pleading requirements of Rule 23.1." (Citations and quotation marks omitted.)).

Two recent decisions of the U.S. District Court for the Northern District of California powerfully demonstrate the insufficiency of the pleadings here. In *In re CNET Networks, Inc. Shareholder Derivative Litigation*, 2007 WL 1089690, at *7, *11-*15, the complaint set forth the specific dates of the challenged option grants, the number of options issued, the particular board members who received those options, and the particular board members who were responsible for granting them. Nevertheless, the court held that the plaintiffs "failed to plead with particularity facts that a majority of the board was not disinterested or independent or did not exercise business judgment in making decisions under *Aronson*." *Id.* at *19. Likewise, in *In re Linear Tech. Corp. Derivative Litig.*, 2006 WL 3533024, at *2-*3, the allegations specified two board members who received disputed stock options and also identified seven specific occasions

when disputed options were awarded. Nonetheless, the court held that the allegations failed to plead with the requisite particularity that the demand requirement was excused. *Id*. at *3-*4.

The Delaware Court of Chancery's recent decision that the derivative plaintiff in the *Maxim* case had satisfied *Aronson*'s test for demand futility is readily distinguishable from the case at bar. *See generally Ryan v. Gifford (In re Maxim)*, No. 2213-N, 2007 Del. Ch. LEXIS 22 (Del. Ch. Feb. 6, 2007). The plaintiff in *Maxim* alleged options backdating by identifying "nine specific grants" that were backdated. *Id*. at *4. "[T]he plaintiff further support[ed] his allegations with empirical evidence suggesting that backdating occurred." *Id*. at *30. The plaintiff pleaded specific allegations that a particular committee of the board approved the disputed grants. *Id*. at *19. Moreover, he pleaded with particularity "that three members of a board *approved* backdated options, and another board member accepted them." *Id*. at *34. The plaintiff also cited language from the company's options plan. In finding that the plaintiff sufficiently pleaded that the demand requirement was excused, the court reasoned, "Plaintiff here points to specific grants, specific language in option plans, specific public disclosures, and supporting empirical analysis to allege knowing and purposeful violations of shareholder plans and intentionally fraudulent public disclosures." *Id*. at *32.

The allegations in this case are absolutely bereft of the particularized allegations of fact pleaded in *Maxim*; indeed, they are far more vague than those dismissed for their inadequacy in *Computer Sciences* and *Linear Technologies*. Here, Plaintiff has failed even to specify which option grants he disputes, who received the options, whether they were exercised, why their dating is believed to be improper, and who played a role in granting or dating them. Even if Plaintiff had alleged which board members approved the contested grant or grants—and the Complaint lacks even this fundamental claim—the allegations would be insufficient without

particular pleadings about why such approval was improper. *See In re CNET Networks, Inc.*

*Shareholder Derivative Litigation*, 2007 WL 1089690, at *18 ("[W]here plaintiffs merely allege

that approval was given without more, the facts pleaded simply do not support the inference that

[the approving] board members were not independent or disinterested or that their decisions were

not protected by the business judgment rule."); Del. Code Ann. tit. 8 § 141(e) (2007) (providing

that board members are "fully protected in relying in good faith upon the records of the

corporation and upon such information, opinions, reports or statements presented to the

corporation" by its officers, employees, board committees, or "any other person as to matters the

member reasonably believes are within such other person's professional or expert competence

and who has been selected with reasonable care by or on behalf of the corporation").

Consequently, the Complaint utterly fails the *Aronson* test and must be dismissed even if that test

applies.

**C.      The Court Should Dismiss Counts II through IX, in Whole or in Part, for
         Failure to State a Claim.**

        **1.      The Court Should Dismiss the "Accounting" Claim (Count II)
                 Because Plaintiff Fails to Allege that Any Relevant Accounts Are
                 Sufficiently Complex to Justify Such Extraordinary Relief.**

In Count II of the Complaint, Plaintiff seeks an accounting "of all stock option grants

made to Defendants." Compl. ¶ 75. "An 'accounting' is defined as an adjustment of the

accounts of the parties and a rendering of a judgment for the balance ascertained to be due."

1 Am. Jur. 2d *Accounts & Accounting* § 52 (2006). Accounting is an "extraordinary" equitable

remedy. *See Bates v. NW. Human Servs., Inc.*, 466 F. Supp. 2d 69, 103 (D.D.C. 2006) (citing

*Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir. 1972)). Courts deny this extraordinary remedy

where "there is 'nothing to indicate that the accounts between the parties are so complicated as

not to be understood by a law court or a jury.'" *Kaufman v. Guest Capital, L.L.C.*, 386 F. Supp.

2d 256, 274 (S.D.N.Y. 2005) (quoting *Messick v. Diamond State Truck Brokers, Inc.*, No. 816, 1980 Del. Ch. LEXIS 573, 1980 WL 81865, at *3 (Del. Ch. Mar. 12, 1980)).  They also dismiss claims for an accounting where the information sought is readily ascertainable from discovery. *See, e.g., Messick* , 1980 Del. Ch. LEXIS 573, 1980 WL 81865, at *5 (dismissing a complaint where "the plaintiffs do not seek an accounting so much as they seek discovery of the defendants' records").

Here, the Complaint alleges absolutely no facts from which the Court could infer that an accounting is necessary.  The dates and amounts of all options ePlus granted to its officers is publicly available information.  Moreover, if this case proceeded, Plaintiff would presumably acquire additional information in the course of discovery.  Taking the allegations as true, there is no support for the conclusion that any calculations related to ePlus's option grants would be complex.  The difference in ePlus's share price on any two days can be determined through simple subtraction.  Thus, Count II is a meritless, kitchen-sink claim that should be dismissed.

> **2.      The Court Should Dismiss the Fiduciary Duty Claims (Counts III through VII) as to the Director Defendants Because They Are Exempt from Liability for These Claims.**

Counts III through VII of the Complaint (the "Fiduciary Duty Claims") allege, in various ways, that Defendants are liable for breaching fiduciary duties owed to ePlus.  ePlus's certificate of incorporation, however, eliminates director liability for damages claims alleging a breach of

the duty of care.  Since Counts III though VII allege no more, they must be dismissed as to

Defendants Faulders, O'Donnell, Herman, and Cooper (collectively the "Director Defendants").[9]

Under Delaware General Corporation Law Section 102(b)(7), a company's certificate of

incorporation may eliminate its directors' personal liability for any breach of their fiduciary

duties except:

> (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) [improper dividends or stock redemptions]; or (iv) for any transaction from which the director derived an improper personal benefit.

Del. Code Ann. tit. 8 § 102(b)(7) (2007).  As summarized by the Delaware Supreme Court, this

statutory provision authorizes companies "to exculpate directors from monetary damage liability

for a breach of the duty of care."  *Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906

A.2d 27, 65 (Del. 2006).

It is well-established that duty of care claims for damages fail as a matter of law when

asserted against directors who are so exculpated.  The Delaware Supreme Court made this point

forcefully in *Malpiede v. Townson*, 780 A.2d 1075 (2001).  The plaintiffs claimed that directors

of Frederick's of Hollywood breached their fiduciary duties to the company in connection with

the company's sale to Knightsbridge Capital Corporation.  *Id.* at 1082.  Drawing all inferences in

the plaintiffs' favor, the Delaware Supreme Court construed the complaint to "allege that the

board was grossly negligent in immediately accepting the Knightsbridge offer and agreeing to

various restrictions on further negotiations without first determining whether [another bidder]

---

[9] Defendants Phillip G. Norton and Bruce M. Bowen also served on ePlus's board at relevant times, but they are not referred to as "Director Defendants" here because they also served as officers.

would issue a counteroffer." *Id.* at 1089.  The court squarely rejected the plaintiffs' contention

that their due care claims were "inextricably intertwined with loyalty and bad faith claims." *Id.*

at 1093.  The defendants moved to dismiss the plaintiffs' claim based in part on the company's

charter, which contained the exculpatory provision authorized by Section 102(b)(7) of

Delaware's corporate code.  The chancery court granted dismissal, and the supreme court

affirmed, explaining, "if there is only an unambiguous, residual due care claim and nothing

else—*as a matter of law—then* Section 102(b)(7) would bar the claim." *Id. See also In re*

*Wheelabrator Techs., Inc. S'holders Litig.*, C.A. No. 11495, 1992 Del. Ch. LEXIS 196, at *40-

*41 (Del. Ch. Sept. 1, 1992); *McMichael v. U.S. Filter Corp.*, No. EDCV 99-182 VAP (Mcx),

2001 U.S. Dist. LEXIS 3918, at *28 (C.D. Cal. Feb. 26, 2001) (applying Delaware law).

    The principle set forth in *Malpiede* requires dismissal here.  ePlus's Certificate of

Incorporation contains an exculpatory provision that eliminates liability for its directors to the

full extent allowed under Delaware law.[10]  Consequently, Plaintiff's claims against the Director

Defendants based on the duty of care fail as a matter of law.

_____

[10]  The court may take notice of ePlus's Certificate of Incorporation on this motion.  *See supra*
Note 7 & DE 7.  In relevant part, those articles provide:

> No person shall be personally liable to the Corporation or its stockholders for
> monetary damages for breach of fiduciary duty as a director; *provided, however*,
> that the foregoing shall not eliminate or limit the liability of a director (i) for any
> breach of the director's duty of loyalty to the Corporation or its stockholders, (ii)
> for acts or omissions not in good faith or which involve intentional misconduct or
> a knowing violation of law, (iii) under Section 174 of the Delaware General
> Corporation Law, or (iv) for any transaction from which the director derived an
> improper personal benefit.

Certificate of Incorporation of MLC Holdings, Inc. [later ePlus inc.], ¶ NINTH (Aug. 27, 1996)
(attached as Ex. B to DE 7).

Fairly read, Counts III through VII of the Complaint plead no more than breaches of the duty of care and must, accordingly, be dismissed as to each of the Director Defendants. The Delaware Supreme Court has held that "grossly negligent conduct, without more, does not and cannot constitute a breach of the fiduciary duty to act in good faith." *Eisner*, 906 A.2d at 65. Rather, "bad faith" includes an "intentional dereliction of duty, a conscious disregard for one's responsibilities." *Id*. at 62, 67. Disloyalty, moreover, requires a claim of "subjective bad intent," such as "preferring the adverse self-interest of the fiduciary." *Id*. at 66. Such dereliction or intent has not been pleaded with respect to any of the Defendants, much less any of the Director Defendants. Although Counts III through VII contain boilerplate references to various fiduciary duties, they contain no well-pleaded allegation that particular Defendants (1) had awareness during the relevant times that any option grants were backdated, (2) had awareness during the relevant times that backdating was improper or could result in liabilities to the company, (3) approved the backdating of grants, or (4) sought in any way to harm or cheat the company. *See supra* Part III.B. Drawing all reasonable inferences in favor of Plaintiff, the Counts III through VII claim, at most, that the Director Defendants failed to take care sufficient to prevent unspecified options from being backdated by unspecified people. *See supra* Part II. In light of ePlus's exculpatory charter provision, these claims must be dismissed as to each of the Director Defendants. "These are exactly the types of claims that the immunity clause was designed to prevent." *Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.)*, 333 B.R. 506, 527 n.25 (Bankr. D.D.C. 2005).

**3.      The Court Should Dismiss the Unjust Enrichment Claim (Count VIII) Because Plaintiff Fails to Allege that Any Defendants Were Unfairly Enriched at the Company's Expense.**

In Count VIII of the Complaint, Plaintiff claims that the Defendants were unjustly enriched at the expense of the Company.  Compl. ¶ 98-101.  "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."  *Student Fin. Corp. v. Royal Indem. Co.*, No. 03-507 JJF, 2004 U.S. Dist. LEXIS 4952, at *21 (D. Del. May 23, 2004) (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1993)).

Plaintiff's unjust enrichment claim consists solely of generic allegations that fail to plead these elements.  Plaintiff cites ePlus's announcement involving a shareholder inquiry about options received by "four senior officers in 2004."  Compl. ¶ 42.  Plaintiff then asserts that all defendants "have been unjustly enriched at the expense of ePlus, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office."  Compl. ¶ 99.  Plaintiff fails to name the officers who received options, state the amounts of the "salaries, benefits, bonuses, stock options grants or other emoluments," or state why option grants were unjust.  Moreover, the Complaint lacks allegations regarding how the Company has been impoverished by stock option grants to any Defendants.  The Complaint also fails to allege that there was no justification for the stock option grants to ePlus's unspecified officers.

The Complaint fails to plead that ePlus's independent directors received any stock options at all.  Rather, it merely refers to options granted to ePlus's executive officers.  Compl. ¶¶ 37, 103.  The Complaint is devoid of any hint that other types of compensation are at issue in this case.  Therefore, there can be no inference from the pleadings that the Director Defendants were unjustly enriched.

4.      **The Court Should Dismiss the Contract Rescission Claim (Count IX) Because No Contract Is Contested in this Case.**

Count IX of the Complaint seeks rescission of all contracts for stock option grants to ePlus's officers.  Compl. ¶¶ 103-04.  This Count is thus asserted only against the four "Officer Defendants": Messrs. Norton, Bowen, Mencarini, and Parkhurst.  "[R]escission results in abrogation or 'unmaking' of an agreement, and attempts to return the parties to the status quo."  *Norton v. Poplos*, 443 A.2d 1, 4 (Del. 1982).  To state a claim for rescission, Plaintiff must allege "(1) that there was a misrepresentation; (2) that the misrepresentation was either fraudulent or material; (3) that the misrepresentation induced the recipient to enter into the contract; and (4) that the recipient's reliance on the misrepresentation was reasonable."  *Alabi v. DHL Airways, Inc.*, 583 A.2d 1358, 1361-62 (Del. Super. Ct. 1990) (citing Restatement (Second) of Contracts § 164 (1981)).

Plaintiff's throw-in claim for rescission bears no logical connection to the facts alleged in the Complaint.  The Complaint is absolutely devoid of any allegation that the Officer Defendants obtained any stock option contracts by inducing ePlus to rely on material or fraudulent errors of fact.  If Plaintiff had made this claim, he would have to plead it with particularity.  *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  As previously explained, none of the claims have been stated with particularity.  Surely, there are no allegations about who induced whom to rely on what with regard to option contracts.

More to the point, the Complaint focuses exclusively on the claim that the Company was injured by "backdating" that was not authorized by the stock option contracts.  Compl. ¶ 103.  There is no hint that the contracts, as written, are harmful to the company, were conceived in fraud, or were otherwise entered into based on any misunderstanding.  Nor is there any hint that

32

"unmaking" these contracts would reverse the unrelated conduct of which Plaintiff apparently complains.  Thus, Count IX seemingly misses the point of this lawsuit.

**D.   The Court Should Dismiss Any Remaining Claims That Have Expired Under the Statute of Limitations.**

**1.   The Federal-Law Claim (Count I) Is Time-Barred Before January 18, 2006.**

To determine the proper limitations period for Section 14(a), courts have looked to analogous federal statutes of limitation in other provisions of the Securities Exchange Act.  *See Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993).  *Cf. Crocker v. Piedmont Aviation*, 49 F.3d 735, 742 (D.C. Cir. 1995) (holding that the limitations periods for implied rights of action under federal statutes should be drawn from federal, rather than state, law when federal law provides a closer analogy to the claim and federal policies are at stake).  On this basis, courts have determined that the time period for bringing a Section 14(a) claim is limited to "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation."  *Westinghouse*, 933 F.2d at 353 (citing *In re Data Access Systems Sec. Litig.*, 843 F.2d 1537, 1550 (3d. Cir. 1988)); *accord Ceres Partners v. GEL Assoc.*, 918 F.2d 349, 364 (2d Cir. 1990).[11]

_____

[11] Section 804 of the Sarbanes-Oxley Act extended the statute of limitations applicable to fraud claims under the federal securities laws.  *See* 28 U.S.C. § 1658(b) (2002).  This extension does not apply to Section 14(a) claims.  *See, e.g. In re Exxon Mobil Sec. Litig.*, 387 F. Supp. 2d 407, 423-24 (D.N.J. 2005) ("On its face, then the language of Sarbanes-Oxley clearly applies to claims of fraud.  It does not specifically apply to claims, like those under Section 14(a), for which fraud is not an element or requisite."); *Virginia M. Damon Trust v. N. Country Fin. Corp.*, 325 F. Supp. 2d 817, 823-24 (W.D. Mich. 2004); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2003).

Here, Plaintiff filed the Complaint on January 18, 2007.  Therefore, Plaintiff cannot sue for Section 14(a) claims that were discoverable before January 18, 2006.

Although Plaintiff vaguely contends that the statute of limitations should be tolled, his argument is unavailing.  "[T]he equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure.  The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary." *Lampf, Pleva, Lipkind, Prupis & Petigrew v. Gilbertsen*, 501 U.S. 350, 363 (1991).  Such discovery occurs when the plaintiff obtains "actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 199 (S.D.N.Y. 2003).  The one-year period in this case should begin to run with the filing of each disputed proxy statement.  Even in 1997, Plaintiff had notice of facts, which in the exercise of reasonable diligence, would have revealed the claims he failed to raise until a decade later.  All of ePlus's option grants were publicly disclosed in its SEC filings.  The price of ePlus's stock was also publicly available.  As the Complaint admits, this information was sufficient to enable another shareholder to inquire about ePlus's options practice.  Compl. at ¶ 42.  Through similar inquiry, Plaintiff reasonably could have discovered the information that is now the basis for his claims.  Therefore, those claims based on proxy statements filed before January 18, 2006 are time-barred.  Since the Complaint only challenges proxy statements from 2005 and earlier, all of the Section 14(a) claims are time-barred.

In any event, "[t]he 3-year limit is a period of repose inconsistent with tolling." *Lampf*, 501 U.S. at 362.  It is an "outside limit" irrespective of what facts Plaintiff could have discovered.  *Id* at 363. (citation omitted).  Therefore, even if the Court concludes that Plaintiff's

claims could not have been discovered earlier through reasonable diligence, all claims based on

proxy statements filed before January 18, 2004 are time-barred nonetheless.

### 2.    The State-Law Claims (Counts II through IX) Are Time-Barred Before January 18, 2004.

A three-year limitations period applies to Plaintiff's state-law claims, *i.e.*, Counts II

through IX.  Courts have determined this limitations period should be borrowed by analogy from

Section 8106 of the Delaware Code.[12]  *Halpern v. Barran*, 313 A.2d 139, 141 (Del. Ch. 1973).

Thus, the state-law claims are time-barred before January 18, 2004, *i.e.*, three years before

Plaintiff filed the Complaint.

Plaintiff contends that the limitations period for the state-law claims should be tolled

because Defendants "concealed their manipulation of the stock option plans" and "withheld . . .

the facts that give rise to the claims."  Compl. ¶¶ 62-63.  This argument lacks merit.

Plaintiff "bears the burden of pleading specific facts to demonstrate that the statute of

limitations was, in fact, tolled."  *In re Dean Witter P'ship Litig.*, Civil Action No. 14816, 1998

Del. Ch. LEXIS 133 (Del. Ch. July 17, 1998); *see also In Re Maxxam/ In re Federated Dev.*

---

[12]  Section 8106 provides as follows:

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action.

Del. Code. Ann. tit. 10 § 8106 (2007).

*S'holders Litig.*, No. 12111, 1995 WL 376942, at *6 (Del. Ch. June 21, 1995) (same). The statute of limitations may be tolled by allegations of fraudulent concealment, but the plaintiff must plead some "actual artifice" by the defendant to prevent the plaintiff from learning the facts or a misrepresentation by the defendant that is "intended to put the plaintiff off the trail of inquiry." *Merck & Co. v. SmithKline Beechman Pharms. Co.*, No. 15443-NC, 1999 Del. Ch. LEXIS 242, at *130 (Del. Ch. 1999). The plaintiff cannot "put on blinders to such obvious signals as publicly filed documents and quarterly reports, proxy statements, and SEC filings." *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996) (applying Section 8106).

As discussed in Part III.D.1., *supra*, information about ePlus's option grants and stock price was publicly available, and that information was sufficient to enable another shareholder to inquire about ePlus's options practices. Compl. ¶ 42. Because Plaintiff did not so inquire, but instead "put on blinders to obvious signals," *Seidel*, 954 F. Supp. at 817, he is not entitled to tolling, and the three-year limitation period applies.

**E.    In the Alternative, the Court Should Order Plaintiff to Plead a More Definite Statement.**

For the foregoing reasons, the Complaint must be dismissed in its entirety. No claims may survive where this Court lacks jurisdiction, *see supra* Part III. A, and Plaintiff has impermissibly failed to make pre-suit demand, *id*. at III.B. To the extent that any claims are nonetheless permitted to go forward, however, Plaintiff must plead a more definite statement as to his standing and the transactions and occurrences that form the basis for Counts III through VIII.

1.      **Plaintiff Has Failed to Allege Standing Sufficiently.**

To have standing, derivative plaintiffs must verify and allege that they were shareholders at the time of all of the transactions of which they complain.  Fed. R. Civ. P. 23.1; Del. Code. Ann. tit. 8 § 327 (2007).  The allegations of the Complaint fall short of this requirement. Although the Complaint alleges that Plaintiff owns ePlus stock now and did "during times relevant" to the alleged misconduct, Compl. ¶ 46, the Complaint does not specify that Plaintiff was a stockholder at all such times.  Indeed, the Complaint omits any dates for the challenged transactions, making it impossible to determine whether Plaintiff was a shareholder at the requisite times.  As such, the Complaint deprives Defendants of the opportunity "to frame a responsive pleading," potentially seeking dismissal of claims based on conduct that might have occurred when Plaintiff was not an ePlus shareholder.  Fed. R. Civ. P. 12(e).  Consequently, the Court should order Plaintiff to plead a more definite statement with regard to the times during which he was a shareholder.

2.      **Counts III through VIII Are Duplicative and Improperly Fail to Separate Claims Relating to Distinct Transactions.**

Rule 10(b) of the Federal Rules of Civil Procedure provides that "[e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth."

Here, the Complaint purports to plead nine counts.  Instead of using one count per disputed "transaction or occurrence," as required by the Rules, Plaintiff exhausts six counts to assert one insufficient and unsupportable claim of continuous misfeasance since "at least 1997." Compl. ¶¶ 1, 41.  Five of these, Counts III through VII (together the "Fiduciary Duty Claims") are indistinguishable.  They repeat one, vague assertion:  that the defendants breached fiduciary duties owed to ePlus as a result of their unspecified connection to the backdating of unspecified

options and, thereby, damaged the company.  The repetition of these claims serves no purpose other than to make the Complaint more prolix in violation of Rule 8(e)(1) of the Federal Rules of Civil Procedure.  Although the Defendants do not assert prejudice from this needless repetition, the Court should nonetheless consider striking redundant Counts IV through VII, based on its discretion under Rule 12(f), in the interests of clarifying the issues in dispute.  In *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1236 (Del. Ch. 2001) for example, a Delaware Chancery Court found that the plaintiff's "derivative constructive fraud counts simply reiterate the individual breach of fiduciary duty counts."  The court thus directed the plaintiff to "transform" its redundant claims "into straightforward breach of fiduciary duty counts."  *Id.* at 137.

Count VIII pleads one minor variation on the vague theme repeatedly asserted in the Fiduciary Duty Claims:  the Defendants were unjustly enriched as a result of the same, unspecified conduct.  Compl. ¶ 99.

To the extent that Count VIII and the Fiduciary Duty Claims are founded on separate transactions or occurrences (such as different option grants or decisions about dating options), it is impossible to determine which.  This clumsy pleading is "so vague and ambiguous that [Defendants] cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  Defendants cannot determine which count corresponds to which alleged transaction, or if certain transactions are not disputed at all.  Moreover, Defendants cannot address the different facts and defenses that pertain to various options granted since 1997.  For example, the Complaint pleads on its face that several Defendants were not directors or officers at ePlus in 1997.  Compl. ¶¶ 16, 17, 19, 20.  These Defendants clearly could not be liable for some early transactions that the Plaintiff might (or might not) dispute.  For this reason, separation of the

claims would undoubtedly facilitate "the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b).

 *Marianao Sugar Trading Corp. v. Pennsylvania Railroad Co.*, 11 F.R.D. 288 (S.D.N.Y. 1951) is illustrative. In that case, the court ordered the plaintiff to separate undifferentiated claims related to various shipments of sugar. *Id.* at 290. The court reasoned that "[t]he cause of damage might well be different as to each shipment, and the defenses available to defendant may likewise vary in regard to each shipment." *Id.*; *see also Saltzman v. Birrell*, 78 F. Supp. 778, 780-81 (S.D.N.Y. 1948) (ordering derivative plaintiff to amend the complaint to "itemize the several [disputed] transaction into separately stated claims").

 Therefore, if the Complaint is not dismissed, the Court should order the Plaintiff, under Rule 12(e), to file a more definite statement setting forth separate counts for each "transaction or occurrence" that forms the factual basis for any of the Fiduciary Duty Claims or Count VIII. Fed. R. Civ. P. 10(b). As amended, the Complaint should present each claim "with such clarity and precision that the defendant[s] will be able to discern what the plaintiff is claiming and to frame a responsive pleading." *Anderson v. Dist. Bd. Tr. Cent. Fl. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

## IV.
## CONCLUSION

 For the foregoing reasons, Defendants respectfully request an order dismissing the Complaint and specific claims as described above or, in the alternative, directing Plaintiff to make a more definite statement.

Dated:  April 23, 2007                          Respectfully Submitted,


                                                /s/ F. Joseph Warin
                                                F. JOSEPH WARIN (DC Bar # 235978)
                                                FWarin@gibsondunn.com
                                                JASON J. MENDRO (DC Bar # 482040)
                                                JMendro@gibsondunn.com
                                                GIBSON, DUNN & CRUTCHER LLP
                                                1050 Connecticut Avenue N.W.
                                                Washington, District of Columbia 20036
                                                Telephone: (202) 955-8500
                                                Facsimile: (202) 467-0539

                                                *Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

A copy of Defendants' ***Defendants' Motion To Dismiss The Verified Shareholder Derivative Complaint*** and the ***Statement Of Points And Authorities In Support*** thereof were filed electronically this 23rd day of April 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Jason J. Mendro

Jason J. Mendro (DC Bar # 482040)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DILORENZO,

               Plaintiff,

           v.

NORTON, et al.,

               Defendants.

Civil Action No. 1:07-cv-00144-RJL

**[PROPOSED] ORDER**

Upon consideration of the Motion to Dismiss filed by defendants, and for the reasons stated in the memorandum opinion issued on this date, it is hereby

**ORDERED** that the defendants' motion is **GRANTED**; and it is further

**ORDERED** that all claims against the defendants by the plaintiff are **DISMISSED** with prejudice.

SO ORDERED on _____, 2007.

_____
RICHARD J. LEON
United States District Judge