**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DILORENZO,

          Plaintiff,

        v.

NORTON, et al.,

          Defendants.

Civil Action No. 1:07-cv-00144-RJL

## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED
## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

On July 24, 2007, Plaintiff moved for leave to amend his complaint. In a stipulation filed on August 3, 2007, Defendants agreed not to oppose Plaintiff's motion and to respond to any amended complaint no later than today. This Court has not yet ruled on Plaintiff's motion. Insofar as leave to amend is granted consistent with Plaintiff's proposal, Defendants respectfully move to dismiss Plaintiff's First Amended Verified Shareholder Derivative Complaint for the reasons set forth in the accompanying Statement of Points and Authorities.

Dated:  October 22, 2007

Respectfully Submitted,

/s/ F. Joseph Warin
F. JOSEPH WARIN (DC Bar # 235978)
FWarin@gibsondunn.com
MICHAEL F. FLANAGAN (DC Bar # 435942)
MFlanagan@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DILORENZO,

Plaintiff,

v.

NORTON, et al.,

Defendants.

Civil Action No. 1:07-cv-00144-RJL

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED VERIFIED
SHAREHOLDER DERIVATIVE COMPLAINT**

Dated:  October 22, 2007

F. JOSEPH WARIN (DC Bar # 235978)
FWarin@gibsondunn.com
MICHAEL F. FLANAGAN (DC Bar # 435942)
MFlanagan@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ..........................................................................................1

PROCEDURAL BACKGROUND..........................................................................................2

ALLEGATIONS OF THE COMPLAINT.............................................................................2

ARGUMENT .............................................................................................................................5

    I.    The Amended Complaint Pleads No Viable Cause Of Action Under
Federal Law. .................................................................................................................5

        A.    The Court Should Dismiss The Section 10(b) Claim (Count I) For
Failure To State A Claim. ...........................................................................5

            1.    The Harm Alleged In Count I Is Not Connected With The
Purchase Or Sale Of Securities.....................................................6

            2.    Count I Fails To Plead Particularized Allegations Of A
Misstatement Or Omission. ...........................................................7

            3.    Misstatements Or Omissions Alleged In Count I, If Any,
Are Immaterial As A Matter Of Law...............................................8

            4.    Count I Fails To Plead Reasonable Reliance................................10

            5.    Count I Fails To Plead *Scienter* Adequately.................................11

        B.    The Court Should Dismiss The Section 14(a) Claim (Count II) For
Failure To State A Claim. .........................................................................12

            1.    Count II Fails To Demonstrate An "Essential Link"
Between ePlus's Proxy Solicitations And The Alleged
Backdating. ...................................................................................12

            2.    Count II Fails To Plead Particularized Allegations That
Any Proxy Statements Were Misleading........................................14

            3.    Any Alleged Proxy Statement Errors Are Immaterial...................15

            4.    Count II Fails To Plead The Required State of Mind
Adequately. ...................................................................................16

        C.    The Court Should Dismiss The Section 20(a) Claim (Count III)
Because Plaintiff Failed To Plead An Underlying Violation,
Culpability, Or Control. .............................................................................16

D.     The Court Should Dismiss The Claim Under Section 304 Of The Sarbanes-Oxley Act (Count XII) For Failure To State A Claim. ..............18

     1.     Section 304 Does Not Provide A Private Right Of Action............18

     2.     Count XII Fails To Plead Misconduct. ..........................................20

II.     The Court Should Dismiss This Case In Its Entirety For Lack Of Subject-Matter Jurisdiction. ...................................................................................20

III.     The Court Should Dismiss This Case In Its Entirety Because Plaintiff Failed To Make Pre-Suit Demand Or Sufficiently Plead Demand Futility...........21

A.     The *Rales* Test For Demand Futility Governs This Case. .........................22

B.     The Amended Complaint Fails To Satisfy The *Rales* Test.......................23

     1.     Plaintiff Fails To Plead Particularized Allegations Of Misconduct..................................................................................25

     2.     Directors Are Protected Under ePlus's Certificate Of Incorporation...............................................................................28

     3.     Directors Are Entitled To Rely In Good Faith On ePlus's Employees, Committees, And Agents. ...........................................28

     4.     A Majority Of ePlus's Current Directors Did Not Serve On The Board When The Alleged Misconduct Began. .......................29

C.     The Amended Complaint Also Fails To Satisfy The *Aronson* Test Because It Does Not Raise A Reasonable Doubt That Any Challenged Decision Was The Product Of Protected Business Judgment. .............................................................................................30

IV.     The Court Should Dismiss This Case In Its Entirety Because Plaintiff Has Not Adequately Pleaded Standing To Assert Derivative Claims. .........................31

V.     The Amended Complaint Pleads No Viable Cause Of Action Under State Law. .........................................................................................................32

A.     The Court Should Dismiss The Accounting Claim (Count IV) Because Plaintiff Is Not Entitled To This Extraordinary Equitable Relief.........................................................................................................32

B.     The Court Should Dismiss The Breach Of Fiduciary Duty Claim (Count V) For Failure To State A Claim. ...................................................33

     1.     Count V Fails To State A Claim For Breach Of The Duty Of Loyalty........................................................................................34

2.      Count V Fails To State A Claim For Breach Of The Duty Of Care. ......................................................................36

3.      Count V Should Be Dismissed As To The Director Defendants For The Additional Reason That They Are Exempt From Liability For Breaches Of The Duty Of Care. ........36

C.      The Court Should Dismiss Count VI Through IX Because They Merely Repeat The Failed Fiduciary Duty Claim. ....................................38

D.      The Court Should Dismiss The Unjust Enrichment Claim (Count X) Because Plaintiff Fails To Allege That Any Defendants Were Unfairly Enriched At The Company's Expense. ......................................40

E.      The Court Should Dismiss The So-Called "Rescission" Claim (Count XI) Because Rescission Is A Remedy, Not An Independent Cause Of Action. ...................................................................................41

VI.    The Court Should Dismiss Any Remaining Claims That Have Expired Under The Statute Of Limitations. ....................................................42

A.      The Section 10(b), 20(a), And 304 Claims (Counts I, III, XII) Are Time-Barred Before January 18, 2005. ......................................42

B.      The Section 14(a) Claims (Counts II) Are Time-Barred Before January 18, 2006. ...............................................................43

C.      The State-Law Claims (Counts IV through XI) Are Time-Barred Before January 18, 2004. ......................................................44

CONCLUSION. ...................................................................................45

# TABLE OF AUTHORITIES

## Cases

*Abbey v. Control Data Corp.*,
603 F.2d 724 (8th Cir. 1979) ................................................................. 13

*Albert v. Alex. Brown Mgmt. Servs.*,
C.A. Nos. 762-N & 763-N, 2005 Del. Ch. LEXIS 133 (Aug. 26, 2005)................................ 36

*Alberts v. Tuft (In re Greater S.E. Cmty. Hosp. Corp.)*,
333 B.R. 506 (Bankr. D.D.C. 2005) ..................................................... 38

*Alexander v. Sandoval*,
532 U.S. 275 (2001)................................................................. 18, 19

*Allegheny Gen. Hosp. v. Phillips Morris, Inc.*,
228 F.3d 429 (3d Cir. 2000) ........................................................ 40

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ......................................................... 21, 24, 25, 30

*Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*,
295 F. Supp. 2d 75 (D.D.C. 2003)...................................................... 12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ........................................................ 17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................. 8

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
845 A.2d 1040 (Del. 2004) ........................................................ 24

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007)............................................................. 32

*Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*,
906 A.2d 27 (Del. 2006) ........................................................ passim

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ........................................................ 32

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001) ..................................................... 39

*Cal. Pub. Employees Ret. Sys. v. Coulter*,
No. Civ. A. 1919, 2002 WL 31888343 (Del. Ch. Dec. 18, 2002) ............................................ 24

*Carlson v. Hallinan*,
925 A.2d 506 (Del. Ch. 2006) ................................................................................ 34

*Caruna v. Saligman*,
Civ. A. No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990) ............................................ 25

*Childers v. Nw. Airlines, Inc.*,
688 F. Supp. 1357 (D. Minn. 1988) ................................................................................ 6

*Clark v. Lacy*,
376 F.3d 682 (7th Cir. 2004) ................................................................................ 39

*Cort v. Ash*,
422 U.S. 66 (1975) ................................................................................ 18

\* *Cowin v. Bresler*,
741 F.2d 410 (D.C. Cir. 1984) ................................................................................ 13

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ................................................................................ 34

*Decker v. Clausen*,
Civ. A. Nos. 10,684, 10,685, 1989 WL 133617 (Del. Ch. Nov. 6, 1980) .............................. 25

\* *Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007) ................................................................................ 22, 35

*Detroit Med. Ctr. v. Provider Healthnet Servs.*,
269 F. Supp. 2d 487 (D. Del. 2003) ................................................................................ 41

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................ 6

*E.I. Du Pont de Nemours & Co. v. Florida Evergreen Foliage*,
744 A.2d 457 (Del. 2000) ................................................................................ 41

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ................................................................................ 11

*Freeland v. Iridium World Communs., Ltd.*,
233 F.R.D. 40 (D.D.C. 2006) ................................................................................ 9

*Gabrielsen v. BancTexas Group, Inc.*,
675 F. Supp. 367 (N.D. Tex. 1987) ................................................................................ 14

*Gaines v. Haughton*,
   645 F.2d 761 (9th Cir. 1981) ........................................................................ 13

*Gen. Elec. Co. v. Cathcart*,
   980 F.2d 927 (3d Cir. 1992) .................................................................. 12, 13

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) .............................................................. 30, 35

*Halpern v. Barran*,
   313 A.2d 139 (Del. Ch. 1973) ..................................................................... 44

*Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell*,
   No. CV 06-06935 (C.D. Cal. Aug. 24, 2007) .............................................. 22

*High View Fund, L.P. v. Hall*,
   27 F. Supp. 2d 420 (S.D.N.Y. 1998) ........................................................... 17

*In re Atmel Corp. Deriv. Litig.*,
   No. C 06-4592 JF (HRL), 2007 WL 2070299 (N.D. Cal. July 16, 2007) ............... 42

*In re Baxter Int'l*,
   654 A.2d 1268 (Del. Ch. 1995) ................................................................... 28

*In re Bisys Group Inc.*,
   396 F. Supp. 2d 463 (S.D.N.Y. 2005) ......................................................... 19

*In re Cendant Corp. Secs. Litig.*,
   76 F. Supp. 2d 539 (D.N.J. 1999) .............................................................. 6, 7

*In re CNET Networks, Inc. S'holder Deriv. Litig.*,
   483 F. Supp. 2d 947 (N.D. Cal. 2007) ........................................... 22, 26, 30, 31

*In re Computer Scis. Corp. Deriv. Litig.*,
   Lead Case No. CV 06-05288 MRP (Ex), 2007 U.S. Dist. LEXIS 25414
   (C.D. Cal. Mar. 26, 2007) ........................................................................... 22

*In re Dean Witter P'ship Litig.*,
   No. Civ. A. 14816, 1998 WL 442456 (Del. Ch. July 17, 1998) ....................... 45

* *In re Ditech Networks, Inc.*,
   No C 06-5157 JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007) ..................... 27

*In re Exxon Mobil Sec. Litig.*,
   387 F. Supp. 2d 407 (D.N.J. 2005) .............................................................. 43

\* *In re Fed. Nat'l Mortgage Ass'n Sec. Deriv. and 'ERISA' Litig.*,
   Civil Action Nos. 04-1639(RJL), 06-0082 & 06-0139, 2007 WL 2248037
   (D.D.C. July 31, 2007) ............................................................................................. 11, 17

*In re Fed. Nat'l Mortgage Ass'n Sec. Deriv. and 'ERISA' Litig.*,
   MDL No. 1688, 2007 U.S. Dist. LEXIS 39348 (D.D.C. May 31, 2007) .......................... 23, 24

*In re Global Crossing, Ltd. Sec. Litig.*,
   313 F. Supp. 2d 189 (S.D.N.Y. 2003) ........................................................................ 42, 43

*In re Global Crossing, Ltd. Sec. Litig.*,
   322 F. Supp. 2d 319 (S.D.N.Y. 2004) ........................................................................ 17

*In re Linear Tech. Corp. Deriv. Litig.*,
   No. C-06-3290 MMC, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) .......................... 22, 26, 31

*In Re Maxxam/In re Federated Dev. S'holders Litig.*,
   Civ. A. Nos. 12111 & 12353, 1995 WL 376942 (Del. Ch. June 21, 1995) ...................... 45

*In re McKesson HBOC Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................................................................... 14, 16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   289 F. Supp. 2d 416 (S.D.N.Y. 2003) ........................................................................ 42, 43

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (2d Cir. 2002) .................................................................................... 14

\* *In re Openwave Sys. Inc. S'holder Deriv. Litig.*,
   No. C 06-03468 SI, 2007 U.S. Dist. LEXIS 36517 (N.D. Cal. May 17, 2007) ........... 26, 27, 31

*In re PMC-Sierra, Inc. Deriv. Litig.*,
   No. 06-5330, 2007 U.S. Dist. LEXIS 64879 (N.D. Cal. Aug. 22, 2007) ........................ 27

*In re Regal Commc'ns Corp. Sec. Litig.*,
   Master File No. 94-179, 1996 WL 411654 (E.D. Pa. July 17, 1996) .............................. 18

*In re Tenneco Sec. Litig.*,
   449 F. Supp. 528 (S.D. Tex. 1978) ............................................................................ 13

*In re Textainer P'ship Sec. Litig.*,
   No. C-05-0969 MMC, 2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) .............................. 16

*In re VeriSign, Inc., Deriv. Litig.*,
   No. C 06-4165 PJH, 2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) ....................... 10, 17, 31

*In re Wheelabrator Techs., Inc. S'holders Litig.*,
   C.A. No. 11495, 1992 Del. Ch. LEXIS 196 (Sept. 1, 1992) .......................................... 37

*In re Zoran Corp. Deriv. Litig.*,
  No. C 06-05503 WHA, 2007 U.S. Dist. LEXIS 43402
  (N.D. Cal. June 5, 2007) .................................................................... 34, 38, 39, 41

*Judicial Watch, Inc. v. Deutsche Bank, A.G.*,
  No. 00-5187, 2001 U.S. App. LEXIS 13891 (D.C. Cir. May 21, 2001) ................................. 22

*Kalnit v. Eichler*,
  85 F. Supp. 2d 232 (S.D.N.Y. 1999) ....................................................................... 18

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ................................................................................... 21, 22

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) .............................................................................. 7

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767, 774 (2d Cir. 1991) ......................................................................... 41

*Lampf, Pleva, Lipkind, Prupis & Petigrew v. Gilbertsen*,
  501 U.S. 350 (1991) ............................................................................... 42, 43, 44

*Lovelace v. Software Spectrum*,
  78 F.3d 1015 (5th Cir. 1996) .............................................................................. 41

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) ................................................................................. 37

*McMichael v. United States Filter Corp.*,
  Case No. EDCV 99-182 VAP (Mcx), 2001 U.S. Dist. LEXIS 3918
  (C.D. Cal. Feb. 26, 2001) ................................................................................. 37

*Merck & Co. v. SmithKline Beecham Pharms. Co.*,
  No. 15443-NC, 1999 WL 669354 (Del. Ch. Aug. 5, 1999) .................................................... 45

*Messick v. Diamond State Truck Brokers, Inc.*,
  Civil Action No. 816, 1980 Del. Ch. LEXIS 573 (Mar. 12, 1980) ............................................ 33

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ....................................................................................... 12

* *Neer v. Pelino*,
  389 F. Supp. 2d 648 (E.D. Pa. 2005) .................................................................... 18, 20

*One-O-One Enters. v. Caruso*,
  848 F.2d 1278 (D.C. Cir. 1988) ........................................................................... 10

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002) .................................................................................. 34

*Pan Am. Trade & Inv. Corp. v. Comm. Metals Co.*,
    94 A.2d 700 (Del. Ch. 1953) ................................................................................ 33

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ................................................................ 21, 22, 23, 24

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007) .............................................................................. 26

*Sao Paulo of the Federative Republic of Braz. v. Am. Tobacco Co.*,
    919 A.2d 1116 (Del. 2007) ................................................................................... 40

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972) ................................................................................... 8

*Seidel v. Lee*,
    954 F. Supp. 810 (D. Del. 1996) .......................................................................... 45

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995) ............................................................................ 24

*Steinman v. Levine*,
    C.A. No. 19107, 2002 Del. Ch. LEXIS 132 (Nov. 27, 2002) ............................... 36

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ............................................................................... 34, 35

*Teachers' Ret. Sys. of La. v. Aidinoff*,
    900 A.2d 654 (Del. Ch. 2006) .............................................................................. 41

*Teamsters Local 282 Pension Trust Fund v. Angelos*,
    762 F.2d 522 (7th Cir. 1985) ................................................................................ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ......................................................................................... 11

*Theis v. Board of Educ.*,
    C.A. No. 17270-NC, 2000 Del. Ch. LEXIS 48 .................................................... 33

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) ....................................................................................... 18, 19

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ......................................................................................... 8, 15

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) ............................................................................................ 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................... 14

*Virginia M. Damon Trust v. N. Country Fin. Corp.*,
    325 F. Supp. 2d 817 (W.D. Mich. 2004) .......................................................... 43

*Westinghouse Elec. Corp. v. Franklin*,
    993 F.2d 349 (3d Cir. 1993) .............................................................................. 43

*White v. Panic*,
    783 A.2d 543 (Del. 2001) ........................................................................... 32, 39

**Statutes**

15 U.S.C. § 7243 ................................................................................................ 18, 20

15 U.S.C. § 7244 ...................................................................................................... 19

15 U.S.C. § 78j ...................................................................................................... 5, 7

15 U.S.C. § 78n ........................................................................................................ 12

15 U.S.C. § 78t ......................................................................................................... 16

15 U.S.C. § 78u-4 ....................................................................................................... 7

28 U.S.C. § 1367 ....................................................................................................... 20

28 U.S.C. § 1658 ................................................................................................. 42, 43

**Rules**

Fed. R. Civ. P. 23.1 ............................................................................................ 21, 31

**Regulations**

17 C.F.R. § 240.10b-5 ................................................................................................ 5

17 C.F.R. § 240.14a-9 .............................................................................................. 12

**Other Authorities**

Del. Code Ann. tit. 8 § 102 ............................................................................... 36, 37

Del. Code Ann. tit. 8 § 141 ...................................................................................... 29

Del. Code. Ann. tit. 10, § 8106 ................................................................................................ 44

**Other Authorities**

Compass Group PLC, SEC No-Action Letter, 1999 WL 311797 (May 13, 1999) ....................... 7

H.R. Rep. No. 107–414 (2002) ................................................................................................ 19

H.R. Rep. No. 107–610 (2002) ................................................................................................ 19

S. Rep. 107–205 (2002) ........................................................................................................... 19

SEC Release No. 33-6188, 1980 WL 29482 (Feb. 1, 1980) ...................................................... 7

## INTRODUCTION AND SUMMARY

Plaintiff Christopher Dilorenzo purports to bring this action as a derivative case on behalf of ePlus inc. ("ePlus" or the "Company") against eight individuals serving as ePlus's current directors and/or officers. The only alleged factual basis for all of Plaintiff's claims is that these Defendants had an unspecified connection to stock options with "suspicious" grant dates. The Complaint must be dismissed in its entirety for at least three reasons.

First, Plaintiff asserts nothing more than fiduciary duty claims arising under state law. Although Plaintiff attempts to cram the square pegs of his state-law claims into the round holes of federal law, Plaintiff's allegations bear no logical relationship to the federal authority he invokes. Accordingly, this Court should dismiss each of the federal claims and, with them, Plaintiff's wholly state-law complaint.

Second, Plaintiff has impermissibly sought to deprive ePlus's board of directors of its authority to determine whether the prosecution of this lawsuit serves the Company's best interests. Plaintiff flouted his well-established obligation to make a pre-suit demand on the board before initiating this derivative lawsuit. Furthermore, Plaintiff has failed to establish that this lawsuit is among the rare cases in which the demand requirement is excused. The allegations raise no doubt that the board can evaluate the proposed claims impartially. Indeed, Plaintiff asks this Court to accept his mere "suspicions" in place of well-pleaded allegations of wrongdoing. No court has ever countenanced this novel pleading strategy, which would allow plaintiffs to use coercive legal process to *search* for derivative claims when none has been properly alleged. Furthermore, Plaintiff concedes that a majority of ePlus's current directors did not even serve on the board when the alleged misconduct purportedly began.

Third, Plaintiff has failed to plead allegations sufficient to show that he has standing to bring suit on behalf of ePlus. Plaintiff seeks permission to do so in exchange for the vague as-

surance that he was an ePlus shareholder "at relevant times."  He fails, however, to specify which times were relevant or when he owned shares.  This Court should hold, as others have recently, that this generic assertion is insufficient to demonstrate an investor's standing to force a company into the role of an unwilling plaintiff.

Each of Plaintiff's claims is also independently flawed.  Most of the claims attempt, in various formulations, to plead a single cause of action for breach of fiduciary duties.  These redundant claims are vague, conclusory, and speculative.  They are also precluded against ePlus's directors by the Company's charter.  Statutes of limitation and repose provide further bars to these claims.

In sum, Plaintiff has utterly failed to demonstrate federal jurisdiction, demand excusal, or derivative standing.  Furthermore, his particular claims fail independently.  For each of these reasons, the Amended Complaint should be dismissed.

## PROCEDURAL BACKGROUND

Plaintiff filed his first complaint in this case on January 18, 2007.  Defendants moved to dismiss this lawsuit on April 23.  On July 24, Plaintiff's response deadline, Plaintiff sought leave to amend the complaint, rather than opposing the motion to dismiss.  Plaintiff attached a proposed First Amended Complaint as an exhibit to his motion for leave to amend.  This proposed pleading is referred to herein as the "Amended Complaint" or abbreviated as the "FAC."[1]

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Christopher Dilorenzo claims to bring this lawsuit on behalf of ePlus against eight of its officers and/or directors.  Plaintiff alleges that he was a shareholder of ePlus "at rele-

---

[1] Although leave to amend the complaint has not been granted, Defendants respond today in good faith based on the stipulation filed on August 3, 2007.  *See* Docket Entry 13.

vant times." FAC ¶ 20. The complaint does not specify, however, what times were relevant or whether Plaintiff was a shareholder during all of those times.

The Amended Complaint names ePlus as a nominal defendant in this derivative lawsuit. FAC ¶ 21. ePlus is a leading provider of information technology products, sales and services, leasing and financing services, procurement software, document management and distribution software, and electronic catalog content management software and services. ePlus is incorporated in Delaware and has its principal place of business in Herndon, Virginia. FAC ¶ 21. Now, and when this suit was first filed, ePlus's board of directors consisted of eight members: Philip G. Norton; Bruce M. Bowen; and non-management directors C. Thomas Faulders, Terence O'Donnell, Lawrence S. Herman, Milton E. Cooper, Jr., Eric D. Hovde, and Irving R. Beimler. FAC ¶ 152.

The Amended Complaint names the following individuals as the "Director Defendants": Messrs. Norton, CEO and board chairman; Bowen, Executive Vice President and director; and non-management directors Cooper, O'Donnell, Herman, and Faulders. FAC ¶¶ 22, 23, 26–29, 30. It names the following individuals as the "Officer Defendants": Messrs. Steven J. Mencarini, Senior Vice President and CFO; and Kleyton L. Parkhurst, Senior Vice President, Treasurer, and Assistant Secretary. FAC ¶¶ 24–25, 30. Directors Hovde and Beimler are not defendants. FAC ¶ 152.

The gravamen of the Amended Complaint is that the individual Defendants "allowed senior ePlus insiders" to backdate stock options, FAC ¶ 1, that is, to set the exercise (or "strike") prices of those options to the fair market value of ePlus's shares on dates before the dates when the options were granted. Plaintiff claims generally that this practice enabled unspecified Defendants to obtain greater profits from their options than they otherwise would have, FAC ¶ 1, and

also caused a variety of ePlus's public disclosures to be incorrect, FAC ¶¶ 2, 5. Plaintiff does not allege, however, that these disclosure errors subjected ePlus to liability in shareholder lawsuits (and, in fact, there have been none).

Although the Amended Complaint lists "a sampling" of grant dates it calls "highly suspicious," FAC ¶¶ 64–79, it does not allege that any specific option grant was backdated in fact. Thus, the Amended Complaint claims that "Director Defendants Norton, Bowen, Faulders, O'Donnell, and Herman, each received backdated stock options," FAC ¶ 156, without specifying which options were allegedly backdated. Defendant Cooper, an ePlus director, is not alleged to have received option grants that are "suspicious," much less backdated. FAC ¶¶ 64–79.

The Amended Complaint does not specifically allege that any individual Defendant was responsible for backdating stock options. The Amended Complaint states merely that each Defendant knew "adverse nonpublic information" about ePlus as a result of his duties for the Company. The Amended Complaint generically asserts that Defendants "control[led] the wrongful acts complained of herein," which it then lists as follows:

> (i) agreement to and/or acquiescence in Defendants' option backdating scheme;
> (ii) willingness to cause ePlus to disseminate false Proxy Statements for **1997–2005**, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stocks they received.

FAC ¶ 35. Nowhere, however, does the Amended Complaint allege who set option grant dates or who—if anyone—knew that any option grant dates were incorrect. It does not allege how grant dates were chosen, when these decisions were made, and whether they were believed to be improper. Nor does the Amended Complaint allege that any particular Defendant was aware of any specific inaccuracies in ePlus's disclosures when they were made.

The Amended Complaint contends that Plaintiff is excused from the requirement of making a pre-suit demand on ePlus's board because complying with that requirement would have been futile. FAC ¶ 153. In this regard, the Amended Complaint generally asserts that ePlus's directors "played a central role in the events leading up to the backdating debacle that has ensnarled ePlus." FAC ¶ 153. As explained above, however, the Amended Complaint is devoid of any particularized factual allegations concerning that role. Apart from characterizing certain options grants as "suspicious," the Amended Complaint does not allege which options were backdated. Finally, the Amended Complaint admits that a majority of ePlus's current directors did not serve on the board when alleged misconduct purportedly began. Two of those directors are not defendants at all. FAC ¶ 152.

## ARGUMENT

### I.    The Amended Complaint Pleads No Viable Cause Of Action Under Federal Law.

#### A.    The Court Should Dismiss The Section 10(b) Claim (Count I) For Failure To State A Claim.

Count I of the Complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").[2] To state a Section 10(b) claim, Plaintiff must plead:

> (1) a material misrepresentation (or omission), (2) *scienter*, *i.e.*, a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market

---

[2]  Section 10(b) provides that it is unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance" in violation of the Rules of the United States Securities and Exchange Commission ("SEC"). 15 U.S.C. § 78j(b). Exchange Act Rule 10b-5, in turn, makes it unlawful "(a) [t]o employ any device, scheme, or artifice to defraud, [¶] (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, . . . not misleading, or [¶] (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

cases) as 'transaction causation,' (5) economic loss, and (6) 'loss causation,' *i.e.*, a causal connection between the material misrepresentation and the loss.

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (citations and emphases omitted).

Plaintiff fails to plead numerous of these elements adequately.  Indeed, many of these elements are completely inapplicable to this lawsuit.

### 1.    The Harm Alleged In Count I Is Not Connected With The Purchase Or Sale Of Securities.

Plaintiff alleges that ePlus relied on the purported false statements in "accounting for stock options, issuing proxy statements and Form 10-K filings and in awarding stock option grants."  FAC ¶ 172.  But these activities are not in connection with the purchase or sale of securities.  ePlus's accounting for the stock options is entirely unrelated to the purchase or sale of securities.  Similarly, the proxy statements at issue concern the election of directors or the approval of stock option plans under which grants might *later* be made; they do not involve any particular purchase or sale of securities.

Plaintiff's claim that ePlus relied on the allegedly false statements "in awarding stock option grants" is likewise insufficient.  FAC ¶ 172.  As *In re Cendant Corp. Securities Litigation* explains, the decision to award an options grant constitutes a purchase or sale only "where a potential employee acquires the right to options as part of his or her bargained-for compensation." 76 F. Supp. 2d 539, 544 (D.N.J. 1999); *see also Childers v. Nw. Airlines, Inc.*, 688 F. Supp. 1357, 1363 (D. Minn. 1988) ("[P]laintiffs' participation in the [option plan] was not an individual affirmative decision to give up a particular consideration in return for a financial interest."). This rule is analogous to the SEC's "no sale" doctrine, under which a stock grant through an employee bonus program is not a "purchase or sale" under the Securities Act of 1933 because the employees "do not individually bargain to contribute cash or other tangible or definable consideration to such plan . . . [and] employees in almost all instances would decide to participate if

given the opportunity." SEC Release No. 33-6188, 1980 WL 29482, at *15 (Feb. 1, 1980); *see also* Compass Group PLC, SEC No-Action Letter, 1999 WL 311797, at *6 (May 13, 1999) (registration of stock options is not required "[w]hen an employee does not give anything of value for stock other than [the] continuation of employment nor independently bargains for such stock").

Plaintiff does not allege that ePlus's option grants were "part of a bargained-for exchange that required [the recipient] to make an affirmative investment decision." *Cendant Corp.*, 76 F. Supp. 2d at 545. To the contrary, he alleges that grants made to the Defendants were made under the 1998 Long-Term Incentive Plan, which was adopted *after* many of the Defendants had joined ePlus. The alleged grants awarded to Defendants could, therefore, not have been part of any "bargained-for exchange." FAC ¶¶ 59–61. Count I thus fails to state a Section 10(b) claim because it does not concern grants that were "purchased or sold." 15 U.S.C. § 78j(b).

### 2.    Count I Fails To Plead Particularized Allegations Of A Misstatement Or Omission.

Plaintiff's Section 10(b) claim must also be dismissed because he has failed to satisfy the stringent requirements for pleading a misleading statement or omission. Under the Private Securities Litigation Reform Act ("PSLRA"), Plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiff must also satisfy Federal Rule of Civil Procedure 9(b), under which "the circumstances constituting fraud" must "be stated with particularity." *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (internal quotation marks omitted). Plaintiff fails to meet these requirements. The conceptual difficulty of applying this element underscores the fact that Section 10(b) is irrelevant to Plaintiff's allegations.

Insofar as Plaintiff contends that backdating itself is a misstatement of some kind, he has not alleged it with the requisite particularity. The Amended Complaint, like the initial Complaint filed six months earlier, fails to allege with specificity that a single option ePlus granted was actually backdated. Instead, Plaintiff attempts to circumvent his obligation to research his claims and plead them with particularity by supplying a list of option grants that he characterizes as "suspicious." FAC ¶¶ 64–78; *see infra* Part III.B (discussing at length the failure of the allegations to raise a substantial likelihood of liability). In this way, Plaintiff asks this Court to allow him access to judicial process to search for claims before he has ever stated one with the requisite particularity. This is not permissible. As the Second Circuit has made clear, "[a] complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir. 1972).

Insofar as Plaintiff contends that something else is a misstatement, his pleadings are far too vague to respond to and cannot conceivably satisfy the pleading requirements of the PSLRA or the Federal Rules of Civil Procedure.

### 3.    Misstatements Or Omissions Alleged In Count I, If Any, Are Immaterial As A Matter Of Law.

For an omitted or misstated fact to be material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Plaintiff makes absolutely no effort to explain how any misstatement or omission could have significantly altered the available information about ePlus in a way that would have affected the Company's decision to buy or sell securities.

8

Although Plaintiff's failure in this regard complicates any discussion of materiality, this Court may take judicial notice of the stock market's indifference to ePlus's public announcements concerning its accounting for stock option grants.[3]  In particular, on June 30, 2006, after market closing, ePlus publicly announced that it would file its Form 10-K late, in part because its "Audit Committee is reviewing certain stock options that were issued to the Company's four senior managers."  ePlus, Form 12b-25 (June 30, 2006).  When the market closed before this announcement, ePlus's shares were trading at $11.33.  When the market reopened the next morning, ePlus's share price had not fallen, but instead increased to $11.67.  The fact that ePlus's share price rose slightly after the Company announced the only issue raised in the Amended Complaint flatly contradicts any implication that previous omissions about that issue were significant to purchasers or sellers of ePlus stock or options.  Therefore, any misstatements or omissions regarding accounting for option grants were immaterial as a matter of law.[4]

---

[3] "The Court may take judicial notice of closing stock prices."  *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 43 n.3 (D.D.C. 2006).

[4] Among Plaintiff's shotgun allegations is a list of stock sales and the conclusory assertion that these "sales occurred while each Defendant was in possession of adverse non-public information regarding the secret stock option backdating scheme and ePlus' materially false financial results for the relevant reporting periods and, therefore, violated federal securities laws." FAC ¶ 143.  Plaintiff fails to connect this boilerplate claim to any of his numbered counts.  Assuming that it is part of his claim under Section 10(b), these allegations are nonsensical.  If Plaintiff intends to allege that the nondisclosure of the alleged backdating propped up ePlus's share price, that inflation would have increased the strike price of any options awarded, making them less valuable to the Defendants.  If instead Plaintiff intends to allege that such nondisclosure enabled Defendants to obtain ePlus shares at an inflated price when they exercised their options, Plaintiff's claim is demolished by the fact ePlus's share price did not decrease when the Company announced that it was reviewing its accounting for stock options.  If this list of trades is intended to be anything but a component of Plaintiff's flawed claim under Section 10(b), then it is so vague and ambiguous that Defendants cannot reasonably frame a response.

### 4.    Count I Fails To Plead Reasonable Reliance.

Count I fails to state a claim under Section 10(b) because it does not, and cannot, plead the element of reasonable reliance.  Reliance cannot be established when the individual acting on a misrepresentation "already possesses information sufficient to call the representation into question."  *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir. 1985).  Here, Plaintiff alleges that ePlus relied on misleading statements when it awarded option grants, but that is impossible because, according to Plaintiff, the individuals making those decisions already knew of—and, indeed, were responsible for—the statements being misleading.  *E.g.*, FAC ¶ 153 ("[T]he directors wasted the Company's valuable assets by secretly granting backdated stock options to ePlus executives and employees pursuant to the unlawful backdating scheme . . . .").  Furthermore, Plaintiff's Section 10(b) claim is legally insufficient because it "does not identify a single [ePlus] officer or director who relied on the supposedly false or misleading financial statements" in deciding whether to award stock options.  *In re VeriSign, Inc., Deriv. Litig.*, No. C 06-4165 PJH, 2007 WL 2705221, at *32 (N.D. Cal. Sept. 14, 2007) (dismissing a Section 10(b) claim).

Even if ePlus, as an entity, could be said to have relied on allegedly misleading statements, that reliance could not have been reasonable.  *See One-O-One Enters. Inc.  v. Caruso*, 848 F.2d 1283, 1286 (D.C. Cir. 1988) ("To state a claim of fraud or securities fraud upon which relief can be granted, plaintiffs' allegations must indicate that their reliance on the allegedly fraudulent representations was reasonable.").  Although it is difficult to tell from the vague allegations in the Amended Complaint precisely which alleged misstatements the Company purportedly relied on, ePlus could not reasonably have relied on any representation that it was granting options on a date that had already passed.

### 5.    Count I Fails To Plead *Scienter* Adequately.

Plaintiff also fails to plead particularized facts sufficient to support a strong inference that any Defendants committed the alleged misconduct, much less acted with *scienter*.  Under the PSLRA, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The *scienter*, or wrongful state of mind, required for a Section 10(b) claim is the "intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976), or perhaps recklessness, *id.* at 193 n.12.[5]  Plaintiff must plead facts creating a "'strong' inference of scienter," a requirement that can be satisfied "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509–10 (2007).  "[S]cienter cannot be inferred solely because a defendant is a corporate officer."  *In re Fed. Nat'l Mortgage Ass'n Sec. Deriv. and "ERISA" Litig.*, Civil Action Nos. 04-1639(RJL), 06-0082 & 06-0139, 2007 WL 2248037, at *10 (D.D.C. July 31, 2007) ("*Fannie Mae I*").  Rather, as this Court has held, the PSLRA "requires plaintiffs to allege *specific facts* demonstrating that *each of the defendants* acted with the requisite state of mind."  *Id.* (emphases added).

Plaintiff fails to satisfy this requirement.  The Complaint does not articulate a single specific allegation regarding any particular Defendant's role in the alleged wrongdoing or misrepresentations (other than simply reciting their positions with ePlus or noting that they signed par-

---

[5]  The D.C. Circuit has not decided whether recklessness is sufficient to establish a Section 10(b) violation.  And while "[e]very Court of Appeals that has considered the issue has held that a plaintiff may meet the scienter requirement by showing that the defendant acted intentionally *or recklessly*," the Supreme Court has twice reserved judgment on "whether reckless behavior is sufficient for civil liability" under Section 10(b).  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2507 (2007) (emphasis added); *see also Ernst & Ernst*, 425 U.S. at 193 n.12.

11

ticular documents). The Amended Complaint contains *no* well-pleaded allegations that particular Defendants acted with *scienter*, let alone sufficient allegations to create a strong inference that they did so. To the contrary, the most reasonable inference from the pleaded facts is that options were granted on dates chosen for reasons wholly unrelated to any misconduct by ePlus's directors or officers. *See infra* pp. 26–28 & n.15. As a result, Plaintiff's claims under Section 10(b) must be dismissed.

## B.    The Court Should Dismiss The Section 14(a) Claim (Count II) For Failure To State A Claim.

Count II of the Complaint alleges violations of Section 14(a) of the Exchange Act.[6] To state a Section 14(a) claim, Plaintiff must plead that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation . . . was 'an essential link in the accomplishment of the transaction.'" *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 81–82 (D.D.C. 2003) (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)). Plaintiff's Section 14(a) claim fails to meet any of these elements and additionally fails to plead with the requisite particularity that any Defendant acted with the required state of mind.

### 1.    Count II Fails To Demonstrate An "Essential Link" Between ePlus's Proxy Solicitations And The Alleged Backdating.

Count II must be dismissed because Plaintiff does not—and cannot—plead that ePlus's proxy statements were an "essential link in the accomplishment" of any contested action by the Company. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970). Plaintiff challenges only one

---

[6] Section 14(a) provides that it is unlawful for any person "to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security)" in violation of SEC Rules. 15 U.S.C. § 78n(a). Exchange Act Rule 14a-9, in turn, prohibits solicitations by means of proxy statements that are "false or misleading with respect to any material fact." 17 C.F.R. § 240.14a-9(a).

type of conduct: backdating options. *See* FAC ¶ 1 (summarizing the lawsuit as an action arising from the alleged "manipulation of grant dates associated" with stock options). But ePlus's proxy statements were not used to obtain shareholder authorization for any backdating or, for that matter, the grant dates for any options at all. In fact, Plaintiff claims the very opposite: He alleges that proxy statements were used to obtain approval of stock option plans that did not allow backdating. FAC ¶ 223. Because the proxy statements were not used to obtain shareholder approval of any challenged action, Plaintiff's claim under Section 14(a) fails as a matter of law.

The D.C. Circuit's decision in *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984), requires this conclusion.[7] Cowin, a minority shareholder in Berler & Reiner, sued the company and its directors, alleging that the directors manipulated the business for their personal profit and violated federal securities laws, including Section 14(a). *Id.* at 412. His Section 14(a) claim alleged that the company's misleading proxy statement "artificially depressed the value of company stock by limiting the public trading market in [its] shares and resulted in the election of appellees as directors, thus allowing them to continue their fraudulent activities." *Id.* at 425. The D.C. Circuit affirmed dismissal of this claim on the ground that Cowin's alleged damages were "not a result of the corporate action authorized by the proxy statement" and therefore were "not the type of damages sought to be remedied by section 14(a)." *Id.* at 428. Even though the directors' election was a result of the proxy solicitation, their improper conduct after the election was not a proper basis for a Section 14(a) claim: The directors' actions were "only an incident to" their election by shareholders rather than "a direct result of the misleading proxy statement." *Id.*

---

[7] Other circuits are in accord. *See, e.g., Gen. Elec. Co.*, 980 F.2d at 933; *Gaines v. Haughton*, 645 F.2d 761, 776 (9th Cir. 1981); *Abbey v. Control Data Corp.*, 603 F.2d 724, 732 (8th Cir. 1979).

Here, Plaintiff cannot meet the "essential link" requirement by requesting damages based on the alleged backdating because, as in *Cowin*, those transactions were not subject to shareholder approval. *See Gabrielsen v. BancTexas Group, Inc.*, 675 F. Supp. 367, 374 (N.D. Tex. 1987) ("A complaint is simply not within the reach of § 14(a) if the transaction complained of occurred without shareholder approval or disapproval."). Nor can Plaintiff satisfy the "essential link" requirement by alleging—as he attempts to in Paragraph 179 of the Amended Complaint—that the proxy solicitations caused the election of directors who harmed the Company. As in *Cowin*, the directors' alleged actions were only incidental to their election rather than a direct result of the proxy statement. Thus, Plaintiff's Section 14(a) claim must be dismissed.

**2.    Count II Fails To Plead Particularized Allegations That Any Proxy Statements Were Misleading.**

Plaintiff's Section 14(a) claim must also be dismissed because he has failed to satisfy the stringent requirements for pleading that any proxy statements were misleading. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000). Under the PSLRA and Rule 9(b), Plaintiff must plead particularized facts regarding the alleged misrepresentations. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002).[8] Although it is

---

[8] Even though fraud is not a *necessary* element of a Section 14(a) claim, Plaintiff's Section 14(a) claim is subject to Rule 9(b) because the underlying allegations used to establish his claim sound in fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (noting that, "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct"); *see also McKesson HBOC*, 126 F. Supp. 2d at 1266 (applying Rule 9(b) to a Section 14(a) claim). Here, Plaintiff unambiguously relies on allegations of fraud to plead his Section 14(a) claim. *See*, *e.g.*, FAC ¶ 13 (alleging that backdating "surreptitiously and illegally lined Defendants' pockets"); FAC ¶ 42 (alleging that "Defendants collectively and individually initiated a course of conduct which was designed to and did . . . deceive the investing public").

far from clear what Plaintiff is alleging, there appears to be three possible interpretations of his Section 14(a) claim. None has merit.

First, Plaintiff might claim that the proxy statements were misleading because they did not disclose "the fact that Defendants were causing ePlus to engage in an option backdating scheme." FAC ¶ 177; *see also* FAC ¶ 93. These allegations do not satisfy the PSLRA or Rule 9(b) because Plaintiff has not adequately pleaded that option grants were backdated.

Second, Plaintiff might claim that Defendants falsely "represented in these proxy statements that they granted stock options pursuant to each stock plan with exercise prices equal to the fair market value on the date of the grant." FAC ¶ 94. But, in fact, ePlus's proxy statements specifically disclose the actual exercise price of all of the options granted, rather equating them with a fair market value on any given date.

Third, Plaintiff might allege that the proxy statements were false because they "stated that ePlus issued stock options to maximize shareholder value and provide key employees with the incentive to act in the best interests of the Company and its shareholders." FAC ¶ 91. Plaintiff claims this statement was false because "[d]efendants issued backdated stock options at the expense of shareholders." FAC ¶ 92. Even if Plaintiff had adequately pleaded this generic backdating claim, he would have absolutely no basis for the outlandish conclusion that the proxy statements misrepresented the purpose of stock options. Regardless of the exercise price of the options granted, their recipients would benefit from taking action to *increase* ePlus's value.

### 3.    Any Alleged Proxy Statement Errors Are Immaterial.

In a Section 14(a) claim, "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus.*, 426 U.S. at 449. As explained above, however, the alleged backdating at issue in the Amended Complaint was not the subject of a shareholder vote. Thus, the contents of, or omissions in,

ePlus's proxy statements are necessarily immaterial regardless of whether they are correct. In any event, Plaintiff has pleaded no facts to suggest that any errors in the proxy statements were significant enough to be "important" to reasonable shareholders in their voting decisions. Indeed, the vagueness of the allegations makes it impossible to comprehend what information the Plaintiff believes should have been in ePlus's proxy statements and how that information might have changed any shareholder's vote on any corporate proposal.

### 4.    Count II Fails To Plead The Required State of Mind Adequately.

Under the PSRLA, Plaintiff must plead facts creating a "strong inference" of the required state of mind—*i.e.*, negligence—in the release of materially false proxy statements. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d at 1267; *In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596, at *4–*5 & n.3 (N.D. Cal. Dec. 12, 2005). As discussed above, Plaintiff has failed to include *any* particularized allegations about the role of each Defendant in the alleged wrongdoing. Because Plaintiff has failed to plead facts supporting an inference as to *each* Defendant that misstatements regarding stock option grants could have been discovered by the exercise of due care, his Section 14(a) claim must be dismissed.

### C.    The Court Should Dismiss The Section 20(a) Claim (Count III) Because Plaintiff Failed To Plead An Underlying Violation, Culpability, Or Control.

Count III of the Complaint alleges secondary securities violations under Section 20(a) of the Exchange Act.[9] To state a Section 20(a) claim, Plaintiff must plead "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's

---

[9] Section 20(a) provides generally that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." 15 U.S.C. § 78t(a).

fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *see also Fannie Mae I*, 2007 WL 2248037, at *13–*15. Plaintiff's Section 20(a) claim must be dismissed because, for the reasons explained above, he has not stated a claim for a primary violation of either Sections 10(b) or 14(a). *See High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 428 (S.D.N.Y. 1998) ("[B]ecause plaintiffs have not properly pled any primary violation of the federal securities laws, their derivative claim for 'controlling person' liability pursuant to § 20(a) must be dismissed.").

Plaintiff's claim must also be dismissed because he has not satisfied the pleading requirements imposed by the PSLRA and Rule 9(b). To satisfy those requirements, a plaintiff must "plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004) (internal quotation marks omitted). But, as discussed above, Plaintiff here has not pleaded particular facts that *any* of the Defendants were culpable participants in the alleged fraud. *See Fannie Mae I*, 2007 WL 2248037, at *15 (noting that "plaintiffs must plead, at a minimum, 'particularized facts' of a defendant's culpable participation").

Finally, Plaintiff has not properly alleged that Defendants exercised control of a primary violator. Plaintiff claims that Defendants were "controlling persons of ePlus and of each other," FAC ¶ 182, but this allegation is deficient in each respect. First, the Amended Complaint does not allege that ePlus has violated any securities laws. Indeed, because Plaintiff purports to bring this suit derivatively "*on behalf of the Company*," FAC ¶ 1 (emphasis added), it would be incongruous for him to argue that ePlus itself violated securities laws. *See, e.g.*, *VeriSign*, 2007 WL 2705221, at *37 ("[I]t is logically impossible for a corporation on whose behalf a derivative ac-

tion is brought to also be a primary violator.").  Second, Plaintiff cannot simultaneously maintain that *all* of the Defendants are primary violators of Sections 10(b) and 14(a) and that they are also *all* secondarily liable for controlling primary violators.  Under the conclusory allegations in the Amended Complaint, Defendants "would be primary violators rather than control persons," meaning that they "could not be control persons and [that] section 20(a) does not apply."  *Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999); *see also In re Regal Commc'ns Corp. Sec. Litig.*, Master File No. 94-179, 1996 WL 411654, at *4 (E.D. Pa. July 17, 1996) ("Where, as here, the defendant is alleged to be primarily liable for violations of the securities laws, it makes no sense to assert secondary liability . . . .  A person cannot be both the controller and the controlled.").  For the foregoing reasons, Count III should be dismissed.

### D. The Court Should Dismiss The Claim Under Section 304 Of The Sarbanes-Oxley Act (Count XII) For Failure To State A Claim.

#### 1. Section 304 Does Not Provide A Private Right Of Action.

Count XII of the Amended Complaint seeks disgorgement from Defendants Norton and Mencarini under Section 304 of the Sarbanes-Oxley Act.  Section 304 does not authorize private parties to sue to enforce its provisions.  15 U.S.C. § 7243.  The issue for this Court is therefore "whether a private remedy is implicit in a statute not expressly providing one."  *Cort v. Ash*, 422 U.S. 66, 78 (1975).  The "central inquiry" under *Cort* is "whether Congress intended to create, either expressly or by implication, a private cause of action."  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979); *see also Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).

The structure of the Sarbanes-Oxley Act makes clear that Congress did not intend to create a private right of action in Section 304.  *See Neer v. Pelino*, 389 F. Supp. 2d 648, 655 (E.D. Pa. 2005).  Indeed, just two sections later, Congress *explicitly* created a private right of action for violations of Section 306.  Section 306 makes it unlawful for directors or officers to purchase or

sell their company's equity securities during a "pension fund blackout perio[d]" if the securities had been acquired in connection with service as a director or officer. 15 U.S.C. § 7244. If the company that issued the securities fails to seek recovery of profits within sixty days of a request to do so, "[a]n action . . . [under] this subsection may be instituted . . . by the owner of any security of the issuer in the name and in behalf of the issuer." *Id.* § 7244(a)(2)(B). Congress's deliberate decision to create private cause of action for Section 306, but not Section 304, shows that "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross*, 442 U.S. at 572.

Because it is clear from the text and structure of Section 304 that Congress did not create a private right of action, this Court need not consider legislative history. *See Alexander*, 532 U.S. at 288 n.7. But the relevant legislative history confirms that no private right of action exists. *See In re Bisys Group Inc. Deriv. Action*, 396 F. Supp. 2d 463, 464 (S.D.N.Y. 2005). Although the Conference Report submitted with the Sarbanes-Oxley Act does not address who can bring a claim under Section 304, *see* H.R. Rep. No. 107–610 (2002), Conference Reports submitted with earlier drafts of the Act make clear that enforcement would "lie solely with the Commission," H.R. Rep. No. 107–414, at 12 (2002).[10]

---

[10] Under these earlier drafts, the SEC would have been authorized to prescribe its own rule requiring disgorgement, which only the SEC could enforce, if it believed such a rule was necessary after studying the issue. *Id.* A minority of Representatives criticized this proposal because it "simply tasked the SEC to study the question of disgorgement," rather than "provid[ing] the SEC with the power to require disgorgement." *Id.* at 50–51 (minority views). But neither supporters nor opponents of the House draft wanted to give *private parties* the right to seek disgorgement. The Senate draft responded to the House proposal by making disgorgement immediately available, without requiring the SEC to study the issue or prescribe its own rule. *See* S. Rep. No. 107–205 (2002). The Senate report likewise does not question—and indeed does not address—the House consensus that only the SEC could bring disgorgement actions.

If Congress had intended to create a new private right of action, one would expect to see some reference to that intent in these congressional reports. *See Neer*, 389 F. Supp. 2d at 657. Instead, the only discussion of the issue reveals—as the text and structure of the Act establish— that Congress did not intend to create a private right of action to enforce Section 304. This Court should enforce the congressional decision and dismiss Plaintiff's claim under Section 304.

### 2.    Count XII Fails To Plead Misconduct.

Section 304 provides for forfeiture of certain incentive-based compensation by CEOs or CFOs when their company is "required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct." 15 U.S.C. § 7243. Plaintiff's Section 304 claim must be dismissed because, for the reasons explained above, he has not adequately pleaded that either Norton or Mencarini engaged in "misconduct." Therefore, Count XII should be dismissed even if Section 304 did provide a private right of action.

## II.    The Court Should Dismiss This Case In Its Entirety For Lack Of Subject-Matter Jurisdiction.

A district court may "decline to exercise supplemental jurisdiction over a claim" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Plaintiff has attempted to invoke the original jurisdiction of this Court by characterizing his state-law challenges to ePlus's management as claims under the Exchange Act and the Sarbanes-Oxley Act. As explained above, however, each of these claims must be dismissed. Since no federal question remains, this case should be dismissed in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

**III.    The Court Should Dismiss This Case In Its Entirety Because Plaintiff Failed To Make Pre-Suit Demand Or Sufficiently Plead Demand Futility.**

Plaintiff purports to bring this lawsuit as a derivative action on behalf of ePlus.  Before filing a derivative action, plaintiffs are generally required to ask a company's board of directors whether it will pursue the intended claims or opt instead to waive them.   The purpose of this requirement, known as "the demand requirement," is to "afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (quotation marks, alteration and citation omitted).   Derivative complaints must also be "verified" and must "allege *with particularity* the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires" from the corporation's board, and "the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1 (emphasis added).

If the plaintiff fails to make a demand on the corporation's board before filing a derivative lawsuit, the plaintiff must instead establish by particularized pleadings that he or she is excused from making a demand because it would be futile to do so.   Overcoming the demand requirement is an onerous burden for derivative plaintiffs.  *See, e.g., Kamen*, 500 U.S. at 96 (observing that the demand requirement will only be "excused by extraordinary conditions") (internal quotation marks omitted).   Plaintiffs who fail to make a pre-suit demand must show "the directors are incapable of making an impartial decision regarding such litigation."  *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).   If demand is neither made nor excused, a derivative complaint must be dismissed.  *See, e.g., Aronson v. Lewis*, 473 A.2d 805, 818 (Del. 1984).   Indeed,

the majority of courts that have issued written opinions regarding options backdating cases to date have entered orders dismissing them for this reason.[11]

Here, Plaintiff has failed to make pre-suit demand on ePlus's board of directors and also failed to show that the demand requirement should be excused. Plaintiff's efforts to coerce ePlus into litigation through the derivative procedure, without allowing the board to consider the Company's best interests, is especially egregious in light of Plaintiff's admission that ePlus was reviewing certain stock options, of its own initiative, many months before Plaintiff arrived at the courthouse. FAC ¶ 53. Because Plaintiff has failed to satisfy the requirements for bringing a derivative lawsuit, the Amended Complaint should be dismissed.

### A.    The *Rales* Test For Demand Futility Governs This Case.

Under Delaware law,[12] there are two tests for determining whether a plaintiff has alleged "demand futility" sufficiently to excuse the demand requirement. One of these, the *Aronson* test, applies to complaints that challenge conscious actions of the same directors who would have considered the demand if one had been made. *See Rales,* 634 A.2d at 933 ("The essential predicate for the *Aronson* test is the fact that a decision of the board of directors is being challenged in the derivative suit."). The other test, the *Rales* test, applies "where the board that would be con-

---

[11] *See, e.g., Desimone v. Barrows*, 924 A.2d 908, 915 (Del. Ch. 2007); *Hawaii Laborers Pension Fund ex rel. THQ, Inc. v. Farrell,* No. CV 06-06935 ODW (FMOx), slip op. at 2 (C.D. Cal. Aug. 24, 2007); *In re CNET Networks, Inc. S'holder Deriv. Litig.*, 483 F. Supp. 2d 947, 955 (N.D. Cal. 2007); *In re Computer Scis. Corp. Deriv. Litig.*, Lead Case No. CV 06-05288 MRP (Ex), 2007 U.S. Dist. LEXIS 25414, at *49 (C.D. Cal. Mar. 26, 2007); *In re Linear Tech. Corp. Deriv. Litig.*, No. C-06-3290 MMC, 2006 WL 3533024, at *4 (N.D. Cal. Dec. 7, 2006).

[12] Because the demand requirement is a rule of substance, not procedure, it is governed by the law of the state of incorporation of the nominal defendant. *See Kamen,* 500 U.S. at 108–09; *Judicial Watch, Inc. v. Deutsche Bank, A.G.*, No. 00-5187, 2001 U.S. App. LEXIS 13891 (D.C. Cir. May 21, 2001). ePlus is a Delaware corporation, and therefore Delaware law governs the demand requirement, demand futility, and claims relating to ePlus's internal affairs.

sidering the demand did not make a business *decision* which is being challenged" by the complaint. *Rales*, 634 A.2d at 933–34 (emphasis in original).

The *Rales* test applies in this case because the subject of this derivative suit was not a business decision of the board. There are no specific allegations that ePlus's Board, or a majority thereof, approved (or even knew of) backdating or even the issuance of so-called "suspicious" grants. Furthermore, a majority of the current directors did not even serve on the board at the time Plaintiff claims the alleged misconduct began. Three of the current directors were not board members in 1997, and two more are non-defendants who joined the board after the alleged backdating ceased. FAC ¶¶ 26, 28, 29, 152. The Amended Complaint also appears to concede that four of the directors who were serving on the board when backdating allegedly occurred did not make a decision to backdate, but merely met with unspecified others who did. *See* FAC ¶ 158 ("Director Defendants Cooper, O'Donnell, Herman and Faulders . . . met regularly with [the] Director Defendants who . . . granted backdated stock options . . . ."). Since the Amended Complaint cannot be read to claim that the alleged misconduct was the product of a board decision, the *Rales* test governs. *See, e.g., In re Fed. Nat'l Mortgage Ass'n Sec. Deriv. and "ERISA" Litig.*, MDL No. 1688, 2007 U.S. Dist. LEXIS 39348, at *28–*29 (D.D.C. May 31, 2007) ("*Fannie Mae II*") (applying the *Rales* test when the disputed conduct was not alleged to have involved any affirmative action by the board of directors).

### B.    The Amended Complaint Fails To Satisfy The *Rales* Test.

Under the *Rales* test, the demand requirement is not excused unless "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales,* 634 A.2d at 934.

Lack of independence must be demonstrated by "particularized facts showing that the board is either dominated by an officer or director who is the proponent of the challenged transaction, . . . or that the board is so under the director or officer's influence that its discretion is sterilized." *In re Computer Scis. Corp. Deriv. Litig.*, Lead Case No. CV 06-05288 MRP (Ex), 2007 U.S. Dist. LEXIS 25414, at *15–*16 (C.D. Cal. Mar. 26, 2007) (internal quotation marks omitted). Allegations of personal friendship, without more, are insufficient to raise a reasonable doubt that board members are independent and disinterested. *See Cal. Pub. Employees' Ret. Sys. v. Coulter*, No. Civ. A. 19191, 2002 WL 31888343, at *9 (Del. Ch. Dec. 18, 2002). In *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, the plaintiff's allegations that the company's directors traveled in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as "friends" were held to be insufficient to raise a reasonable doubt of director independence. 845 A.2d 1040, 1051 (Del. 2004). The Amended Complaint alleges even less. It merely asserts that the directors would not be willing to sue themselves, their friends or colleagues, without alleging any specific facts about the personal and professional ties among the board members. These generic assertions are plainly insufficient to establish a lack of director independence.

Lack of disinterestedness may be shown by particularized allegations that there is a "substantial likelihood" of personal liability for the directors or that they "'will receive a personal benefit from a transaction that is not equally shared by the stockholders.'" *Fannie Mae II*, 2007 U.S. Dist. LEXIS 39348, at *24–*25 (quoting *Rales*, 634 A.2d at 934); *accord Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995). The "mere threat of personal liability for approving a questioned transaction" is not sufficient to establish that directors are not disinterested. *Aronson*, 473 A.2d at 815. Nor is a generic contention that directors would be forced "to sue

24

themselves."[13]  *Id.* at 818 ("[A] bare claim of this sort raises no legally cognizable issue under Delaware corporate law . . . .").

For at least four reasons, the allegations of the Amended Complaint utterly fail to create a reasonable doubt that ePlus's directors are disinterested.  First, the Amended Complaint pleads no particularized allegations that ePlus's directors engaged in misconduct of any kind.  Second, ePlus's certificate of incorporation shields the Director Defendants from personal liability.  Third, directors are entitled to a complete defense when they rely in good faith on a company's employees, agents, and committees.  And fourth, a majority of ePlus's directors did not serve on the board when the alleged wrongs began.

### 1.    Plaintiff Fails To Plead Particularized Allegations Of Misconduct.

As noted above, *see supra* Part I.A.1, Plaintiff fails to allege with specificity that a single option ePlus granted was actually backdated.  Rather than pleading his basis for demand futility with particularity, Plaintiff merely offers a list of option grants that he characterizes as "suspicious."  FAC ¶¶ 64–89.  Notably, no published decision to date has held that a derivative plaintiff's mere suspicions about option grants may substitute for particularized allegations of wrongdoing.  Plaintiff's novel strategy of pleading is insufficient to state a claim, much less to satisfy Rule 23.1's burden to plead demand futility with particularity.

In any event, Plaintiff's suspicions rest on faulty premises and, thus, fail to create an inference of wrongdoing.  Plaintiff compares ePlus's overall investor returns to the return to man-

---

[13]  The contention that the directors would lose liability insurance coverage for claims they authorize ePlus to bring against them, *see* FAC ¶ 165, has also been squarely addressed and rejected by Delaware courts.  *See, e.g.*, *Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989).  Such allegations are "nothing more than [a] 'variatio[n] on the "directors suing themselves" . . . refrain.'"  *Carauna v. Saligman*, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (quoting *Decker*, 1989 WL 133617, at *2).

agement for his handpicked sample of options, which he claims "indicat[es]" that backdating oc-

curred.  FAC ¶ 88.  The Amended Complaint does not allege, however, how many options were

granted during the relevant period or whether the so-called "suspicious" grants were a small or

large fraction of that total.  Without this context, "it is equally likely that the . . . identified option

grants fell at or near low points simply by chance, rather than design."  *In re Openwave Sys. Inc.*

*S'holder Deriv. Litig.*, No. C 06-03468 SI, 2007 U.S. Dist. LEXIS 36517, at *15–*16 (N.D. Cal.

May 17, 2007).  For this reason, courts have consistently dismissed backdating allegations that

"provide no facts as to how often and at what times the Committee Defendants have granted

stock options in the past."  *In re Linear Tech. Corp. Deriv. Litig.*, No. C-06-3290 MMC, 2006

U.S. Dist. LEXIS 90986, at *9 (N.D. Cal. Dec. 7, 2006); *see also In re CNET Networks, Inc.*

*S'holder Deriv. Litig.*, 483 F. Supp. 2d 947, 958 (N.D. Cal. 2007) (dismissing various backdating

allegations because plaintiffs "do not plead any facts as to when any other options were granted,

or under what circumstances they were granted").

Plaintiff tries to bolster his flawed statistical analysis by claiming that he is using the

"same analysis as Merrill Lynch," FAC ¶ 79, but he is mistaken.  In *Ryan v. Gifford*, 918 A.2d

341 (Del. Ch. 2007), the Delaware Chancery Court relied on an empirical analysis by Merrill

Lynch that compared the annualized return to management on its stock options versus the annu-

alized returns for the company's stock.  This analysis suggested a pattern of backdating because,

"[i]n theory, companies should not generate systematic excess return in comparison to other in-

vestors as a result of the timing of options pricing events."  *Id.* at 347.  Crucially, the Merrill

Lynch analysis looked at the average return for *all* option grants to management during the rele-

vant period.  *See In re Openwave Sys.*, 2007 U.S. Dist. LEXIS 36517, at *25–*26 (explaining the

Merrill Lynch analysis); *see also In re PMC-Sierra, Inc. Deriv. Litig.*, Master File No. C 06-

05330 RS, 2007 U.S. Dist. LEXIS 64879, at *12–*13 (N.D. Cal. Aug. 22, 2007). Plaintiff here does not rely on any comparable average; rather, he simply handpicked a group of *some* option grants to *some*, but not all, Defendants, and then compared that group to the overall return to investors. This skewed "analysis" does not—and cannot—be used to determine whether management systematically generated excess returns when compared to ordinary investors. If credited, the same approach could be used to demonstrate that any innocent investor received suspicious grants, provided that his or her investments outperformed the market on at least one occasion.[14]

Plaintiff's suspicions are also undermined by his failure to consider alternative explanations for the grant dates. *See In re Ditech Networks Deriv. Litig., Inc.*, No. C 06-5157 JF, 2007 WL 2070300, at *7 (N.D. Cal. July 16, 2007) (noting that backdating complaints should discuss "the presence or absence of other major corporate events, such as an acquisition, at the time of the grants"). For instance, Plaintiff should have noted that the July 15, 1998 grant to Defendant Faulders occurred the day after Faulders became a director. *See* FAC ¶ 29 (alleging that Faulders has been a director of ePlus since July 14, 1998). Furthermore, the September 21, 2001 grants were issued the day after ePlus's 2001 annual meeting, *see* ePlus, Form 14A (July 30, 2001), pursuant to the terms of the 1998 Long-Term Incentive Plan, *see* ePlus, Form 14A (July 29, 1998). And the November 19, 1999 grants were made on a Friday just one day shy of ePlus's IPO anniversary of Saturday, November 20. A fair empirical analysis would have to

---

[14] In *Openwave*, another backdating case, the Northern District of California recently refused to allow plaintiffs to survive dismissal based on a similarly flawed options analysis. The court explained that "plaintiffs' analysis . . . does not compare the average 20 day return on *all* reported stock option grants during the relevant period to the average 20 day return on Openwave stock during the period." *Openwave*, 2007 U.S. Dist. LEXIS 36517, at *26 (emphasis in original). "Instead, plaintiffs simply compare the 20 day return on the 21 particular, handpicked option grants to the average Openwave stock performance." The court concluded that this flawed analysis "does not support a reasonable inference of backdating." *Id.*

consider these plausible alternative explanations for the selected grant dates; the Amended Complaint fails to do so.[15]

In addition, the Amended Complaint is devoid of specific allegations about the directors' knowledge of or role in any alleged misconduct. Absent such allegations, and sufficient allegations of backdating, the Amended Complaint falls far short of raising a "substantial likelihood" of personal liability for the directors.

### 2. Directors Are Protected Under ePlus's Certificate Of Incorporation.

"When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (refusing to excuse the demand requirement). ePlus's certificate of incorporation eliminates all liability for any claims that the Defendant Directors breached the duty of care. *See infra* Part V.B.3. Therefore, there cannot be any possibility—much less a "substantial likelihood"—of liability for such claims.

### 3. Directors Are Entitled To Rely In Good Faith On ePlus's Employees, Committees, And Agents.

Delaware law provides a complete statutory defense to directors who act in good faith reliance on information provided by the company's officers, employees, and board committees.

---

[15] Indeed, even though Plaintiff claims that options grants were backdated when ePlus's shares were trading "at or near the lowest price for that relevant period," FAC ¶ 3, many of the so-called "highly suspicious grants" were awarded at prices well above the lowest price of the relevant period. For example, the July 15, 1998 and November 19, 1999 grant prices—$13.63 and $9.13, respectively—were ranked 24th and 17th lowest closing prices. And the February 5, 1998 grants to Mr. Norton—the only grants Plaintiff alleges were approved by the Board—were not priced at that day's closing price, but rather at a higher price equal to the fifth highest closing price for that quarter.

*See* Del. Code Ann. tit. 8, § 141(e).[16]  Without specifying, Plaintiff implies that the entire board relied on the Compensation Committee to determine option grants.  FAC ¶ 61 ("The Compensation Committee had full power to determine recipients of grants and the terms and conditions.").  Yet the Amended Complaint fails to allege that such reliance was unreasonable or that any directors who were not on the Committee took action inconsistent with the Committee's opinions or advice.  Thus, the Amended Complaint fails to create a reasonable inference that a majority of the board would not be fully protected by Delaware's statutory defense.

### 4.    A Majority Of ePlus's Current Directors Did Not Serve On The Board When The Alleged Misconduct Began.

Plaintiff's argument that the directors' threat of liability excuses the demand requirement flatly ignores the fact that two of ePlus's eight directors joined the Company after the alleged misconduct.  They are not Defendants and are thus under no conceivable threat of liability at all.  Plaintiff further ignores the Amended Complaint's admission that three of the directors who are Defendants joined the board after 1997.  Thus, the Amended Complaint concedes that five—that is, a majority—of ePlus's eight directors were not serving on the board at the time the alleged backdating began.  As such, the Amended Complaint plainly fails to plead allegations raising a substantial likelihood of director liability sufficient to overcome the demand requirement.  *See,*

---

[16]  Section 141(e) provides:

> A member of the board of directors, or a member of any committee designated by the board of directors, shall, in the performance of such member's duties, be fully protected in relying in good faith upon the records of the corporation and upon such information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees, or committees of the board of directors, or by any other person as to matters the member reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the corporation.

*e.g., In re CNET Networks*, 483 F. Supp. 2d at 964–66 (finding that board members who joined the company after the alleged backdating were not subject to a substantial likelihood of liability).

> **C.    The Amended Complaint Also Fails To Satisfy The *Aronson* Test Because It Does Not Raise A Reasonable Doubt That Any Challenged Decision Was The Product Of Protected Business Judgment.**

Even if the Court applies the *Aronson* test for demand futility, Plaintiff fails to make particularized allegations to show that demand should be excused.  Under the *Aronson* test, the demand requirement is not excused unless, "under the particularized facts alleged, a reasonable doubt is created that:  (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."  473 A.2d at 814.  The *Aronson* and *Rales* tests are "only subtly different."  *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003).  Plaintiff fails to satisfy the first prong of this test for all of the reasons stated above.  *See supra* Part III.A.  The second prong involves an additional inquiry into "the substantive nature of the challenged transaction and the board's approval thereof."  *Aronson*, 473 A.2d at 814.  It requires plaintiffs to plead particular facts that suggest that the questioned decision was not the product of a valid exercise of the directors' business judgment.  *Id.*  Assuming *arguendo* that Plaintiff had pleaded that any challenged option grant was considered and approved by the board (and he did not), then Plaintiff would still fail to establish demand futility.

Under Delaware law, a corporation's directors are presumed to have acted with due care, in good faith, and in the honest belief that the action taken is in the company's best interests.  *See id.*, 473 A.2d at 812.  "[M]ere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim . . . is insufficient to excuse demand."  *Id.* at 817.

The Amended Complaint here alleges no particular facts from which the Court could infer that any of the current directors had actual knowledge that any stock option grants were backdated or that backdating is inappropriate.  It fails to plead who received allegedly backdated

options, who was responsible for backdating them, and when they were awarded. Indeed, it fails

even to allege that specific options were backdated (as opposed to merely suspicious). Plaintiff's

threadbare allegations fail to raise any doubt about the exercise of business judgment. Therefore,

Plaintiff fails to allege demand futility sufficiently, even if the *Aronson* test applies. *See, e.g., In

re CNET Networks*, 483 F. Supp. 2d at 954–55, 956–66 (holding that the *Aronson* test was not

met by a complaint, even though it set forth the specific dates of the challenged option grants, the

number of options issued, the particular board members who received those options, and the par-

ticular board members who were responsible for granting them); *In re Linear Tech.*, 2006 WL

3533024, at *2–*4 (applying the *Aronson* test and holding that plaintiffs failed to meet their

pleading burden even though they alleged that there were seven specific occasions when dis-

puted options were awarded and that two specific board members received them); *In re Open-

wave Sys.*, 2007 U.S. Dist. LEXIS 36517, at *14–*15 (holding that plaintiffs failed to plead de-

mand futility despite the "great detail" about "21 stock option grants").

**IV.    The Court Should Dismiss This Case In Its Entirety Because Plaintiff Has Not Ade-
quately Pleaded Standing To Assert Derivative Claims.**

Plaintiff lacks standing to bring this derivative suit because he has not adequately alleged

that he "was a shareholder . . . at the time of the transaction of which the plaintiff complains."

Fed. R. Civ. P. 23.1. To satisfy this "contemporaneous ownership requirement," a complaint

must not "only generally alleg[e] that each Plaintiff 'is, and was during the relevant period,' or

'is, and was at all times relevant to,' " a shareholder of the company. *In re Computer Scis. Corp.

Deriv. Litig.*, 2007 U.S. Dist. LEXIS 25414, at *47–*48. Rather, "plaintiffs must unambiguously

indicate . . . the dates they purchased [the company's] stock, and whether they have continuously

owned [the] stock from the time of purchase up to the present." *VeriSign*, 2007 WL 2705221, at

*25. Plaintiff clearly fails to satisfy these requirements.

31

The Amended Complaint contains only a single sentence discussing Plaintiff's ownership of ePlus stock:  "Plaintiff Christopher Dilorenzo is and at relevant times was a shareholder of nominal party ePlus."  FAC ¶ 20.  This sentence does not allege, as it must, when Plaintiff purchased his shares of ePlus stock.  Neither does it allege, as it must, whether Plaintiff has owned his shares continuously from the time of purchase to the present, even though the allegations address a timeframe that reaches back "at least" to 1997.  FAC ¶ 1.  Rather, the Amended Complaint relies on precisely the sort of generalized "at relevant times" allegation that is insufficient to satisfy Rule 23.1.  *See In re Computer Scis. Corp. Deriv. Litig.*, 2007 U.S. Dist. LEXIS 25414, at *47–*49.  Consequently, this lawsuit should be dismissed for lack of derivative standing.

## V.    The Amended Complaint Pleads No Viable Cause Of Action Under State Law.

Counts IV through XI, collectively the "State Claims," purport to assert claims under the law of Delaware.  In the motion to dismiss phase, "'[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged,'" but Courts "need not blindly accept as true all allegations."  *White v. Panic*, 783 A.2d 543, 549 (Del. 2001) (quoting *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000)); *see also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) ("[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . .") (internal quotation marks and alteration omitted).  As explained below, each of the State Claims fails to rise above the speculative level and should, accordingly, be dismissed.

### A.    The Court Should Dismiss The Accounting Claim (Count IV) Because Plaintiff Is Not Entitled To This Extraordinary Equitable Relief.

In Count IV of the Complaint, Plaintiff requests an accounting of stock option grants.  Accounting is an equitable remedy that can be imposed only "(1) where there are mutual accounts between the parties; (2) where the accounts are all on one side but there are circumstances

of great complication; and, (3) where a fiduciary relationship exists between the parties and a duty rests upon defendant to render an account." *Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.*, 94 A.2d 700, 701 (Del. Ch. 1953). This claim must be dismissed because Plaintiff does not allege that there are mutual accounts between the parties. Nor does he allege that the accounting would be so complicated that it warrants an extraordinary equitable remedy.

In addition, because Plaintiff has not alleged that any particular option grants were back-dated, an accounting is inappropriate and unnecessary. Indeed, it appears that Plaintiff wishes to use the accounting impermissibly as a form of discovery—as a means of investigating the back-dating claims he has not adequately pursued before filing his complaint. *See, e.g., Messick v. Diamond State Truck Brokers, Inc.,* Civil Action No. 816, 1980 Del. Ch. LEXIS 573, at *5 (Mar. 12, 1980) (dismissing a complaint where "the plaintiffs do not seek an accounting so much as they seek discovery of the defendants' records").[17]

### B. The Court Should Dismiss The Breach Of Fiduciary Duty Claim (Count V) For Failure To State A Claim.

Count V alleges that Defendants "have violated fiduciary duties of care, loyalty, candor and independence owed to ePlus and its public shareholders." FAC ¶¶ 193–94. Delaware rec-

---

[17] In any event, because an accounting is an equitable remedy, it is not available if Plaintiff has an adequate remedy at law. *See Theis v. Bd. of Educ.*, C.A. No. 17270-NC, 2000 Del. Ch. LEXIS 48, at *5 (Mar. 17, 2000) ("This Court can not exercise its equity jurisdiction on any claim where an adequate remedy at law is available."). Here, Plaintiff does not allege that ePlus lacks an adequate legal remedy. Indeed, raises a number of legal claims in this derivative suit.

ognizes only two fiduciary duties:  the duty of care and the duty of loyalty.[18]  *Stone v. Ritter*, 911

A.2d 362, 370 (Del. 2006).  Plaintiff fails to state a claim for a breach of either.[19]

### 1.    Count V Fails To State A Claim For Breach Of The Duty Of Loyalty.

To prove breach of the duty of loyalty through an action, plaintiffs must show that the in-

dividual was either "interested in the outcome of the transaction or lacked the independence to

consider objectively whether the transaction was in the best interest of its company and all of its

shareholders."  *Orman v. Cullman*, 794 A.2d 5, 22–23 (Del. Ch. 2002) (discussing the duty of

loyalty as it is applied to individual directors).  The decision must be made with "an intent to

harm the corporation."  *Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*, 906 A.2d 27, 64

n.102 (Del. 2006) (internal quotation marks omitted).  To prove a breach of the duty of loyalty

through inaction, plaintiffs must show that a director or officer's inaction constituted an "inten-

tional dereliction of duty, a conscious disregard for one's responsibilities."  *Id.* at 62 (internal

quotation marks omitted).[20]  In the specific context of backdating allegations, the Delaware

---

[18]  Delaware law applies because corporations are "organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."  *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987).

[19]  In addition to alleging that all Defendants violated fiduciary duties, Plaintiff piles on the additional claim that all Defendants have also aided and abetted such violations.  These overlapping attacks are neither logical nor permissible.  To establish aiding and abetting a breach of fiduciary duty, Plaintiff must prove: (1) the existence of a fiduciary relationship; (2) a breach of an associated fiduciary duty; (3) knowing participation in the breach by a defendant who is not a fiduciary; and (4) damages proximately caused by the breach.  *Carlson v. Hallinan*, 925 A.2d 506, 542 (Del. Ch. 2006).  Clearly, Plaintiff has not pleaded the "existence of a defendant who is not already a fiduciary who participated in the breach."  *In re Zoran Corp. Deriv. Litig.,* No. C 06-05503 WHA, 2007 U.S. Dist. LEXIS 43402, at *73 (N.D. Cal. June 5, 2007).  The aiding and abetting aspect of Count V must be dismissed for this reason and, as explained below, because Plaintiff fails to state a predicate claim for breach of fiduciary duty.

[20]  Such claims are often referred to as a breach of the duty to act in good faith.  The Delaware Supreme Court clarified in *Stone*, however, that the duty to act in good faith "is a subsidiary

[Footnote continued on next page]

Chancery Court recently reasoned that a breach of the duty of loyalty would "likely require a finding that" the relevant directors "knew that the options violated the stock option plan and that the options were being accounted for in a manner that was improper, or that their failure to obtain that information resulted from their knowing abdication of their directorial duties." *Desimone v. Barrows*, 924 A.2d 908, 933 (Del. Ch. 2007) (footnote omitted).

The Amended Complaint clearly fails to allege any such knowledge or abdication. Plaintiff has not alleged that backdating occurred, *see supra* Part V.B.1, much less that any Defendants played a culpable role in it. Although Plaintiff summarizes ePlus's options plans, FAC ¶¶ 55–63, Plaintiff offers no allegation about "whether and to what extent any director was involved in the mechanics by which the options were issued or the dates on which that administrative task was carried out." *Desimone*, 924 A.2d at 942. Plaintiff alleges that the Compensation Committee administered ePlus's Long-Term Incentive Plan, FAC ¶ 61, but Plaintiff fails, as in *Desimone*, to allege that any member of that committee had any knowledge concerning violations of ePlus's stock option plans or improper accounting. Plaintiff has pleaded no allegation that the Defendants took actions that were "motivated by an actual intent to do harm," *Brehm*, 906 A.2d at 64, or that they "were conscious of the fact that they were not doing their jobs," *Guttman*, 823 A.2d at 506. As such, the Amended Complaint fails to state a claim against any Defendant for breach of the duty of loyalty.

---

[Footnote continued from previous page]

element . . . of the fundamental duty of loyalty" and is not, itself, a fiduciary duty. *Stone*, 911 A.2d at 369–70 (internal quotation marks omitted).

### 2.    Count V Fails To State A Claim For Breach Of The Duty Of Care.

To state a claim for breach of the duty of care, Plaintiff must allege facts that would support an inference that the Company's officers were "grossly negligent," carrying out their duties with "a devil-may-care attitude or indifference to duty amounting to recklessness." *Albert v. Alex. Brown Mgmt. Servs.*, C.A. Nos. 762-N & 763-N, 2005 Del. Ch. LEXIS 133, at *14 (Aug. 26, 2005) (internal quotation marks omitted). But Plaintiff's vague and conclusory pleadings fail to provide any factual allegations supporting a reasonable inference that specific options were backdated or that any Defendants were grossly negligent with respect to ePlus's option grants. They also fail to give rise to any reasonable inference that any Defendant knew or was unreasonable in not knowing about the alleged backdating or errors in ePlus's financial statements. Thus, any duty of care claims must also be dismissed as to all Defendants. *See Steinman v. Levine*, C.A. No. 19107, 2002 Del. Ch. LEXIS 132, at *56 (Nov. 27, 2002) (dismissing a negligent representation claim where Plaintiff failed to identify specific acts of individual defendants).

### 3.    Count V Should Be Dismissed As To The Director Defendants For The Additional Reason That They Are Exempt From Liability For Breaches Of The Duty Of Care.

Under Delaware General Corporation Law Section 102(b)(7), a company's certificate of incorporation may eliminate its directors' personal liability for any breach of their fiduciary duties except:

> (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) [improper dividends or stock redemptions]; or (iv) for any transaction from which the director derived an improper personal benefit.

Del. Code Ann. tit. 8, § 102(b)(7). As summarized by the Delaware Supreme Court, this statutory provision authorizes companies "to exculpate their directors from monetary damage liability for a breach of the duty of care." *Brehm*, 906 A.2d at 65.

It is well-established that duty of care claims for damages fail as a matter of law when asserted against directors who are so exculpated. The Delaware Supreme Court made this point forcefully in *Malpiede v. Townson*, 780 A.2d 1075, 1093 (Del. 2001). Drawing all inferences in the plaintiffs' favor, the Delaware Supreme Court construed the complaint to "allege that the board was grossly negligent in immediately accepting the Knightsbridge offer and agreeing to various restrictions on further negotiations without first determining whether [another bidder] would issue a counteroffer." *Id*. at 1089. The defendants moved to dismiss the plaintiffs' claim based in part on the company's charter, which contained the exculpatory provision authorized by Section 102(b)(7) of Delaware's corporate code. The chancery court granted dismissal, and the supreme court affirmed, explaining, "if there is only an unambiguous, residual due care claim and nothing else—*as a matter of law*—then Section 102(b)(7) would bar the claim." *Id*. (emphasis in original); *see also In re Wheelabrator Techs. Inc. S'holders Litig.*, Consolidated C.A. No. 11495, 1992 Del. Ch. LEXIS 196, at *40–*41 (Sept. 1, 1992); *McMichael v. United States Filter Corp.*, Case No. EDCV 99-182 VAP (Mcx), 2001 U.S. Dist. LEXIS 3918, at *28 (C.D. Cal. Feb. 22, 2001) (applying Delaware law).

ePlus's certificate of incorporation eliminates all director liability for breaches of the duty of care as a matter of law.[21] Thus, even if Plaintiff had stated a duty of care claim, it should be

---

[21]  ePlus's Certificate of Incorporation provides:

> No person shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director; *provided, however,* that the foregoing shall not eliminate or limit the liability of a director (i) for any breach of the directory's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

[Footnote continued on next page]

dismissed as to each of the Director Defendants. "These are exactly the types of claims that the immunity clause was designed to prevent." *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.)*, 333 B.R. 506, 527–28 (Bankr. D.D.C. 2005). Furthermore, ePlus's directors are also entitled to a statutory defense against personal liability insofar as they acted in good faith reliance on ePlus's employees, agents, and committees. *See supra* Part III.B.3.

### C.    The Court Should Dismiss Count VI Through IX Because They Merely Repeat The Failed Fiduciary Duty Claim.

Counts VI through IX of the Amended Complaint, respectively, purport to allege claims for "abuse of control," "gross mismanagement," "constructive fraud," and "corporate waste." *See* FAC ¶¶ 198–216. These counts concern the very same underlying allegations of fact as Count V, which is styled as a claim for breach of fiduciary duty. In fact, they are all the same claim. Each of Counts VI through IX indistinguishably incorporate all of the Amended Complaint's previous allegations. Fundamentally, they all contest the same vaguely pleaded course of unspecified conduct involving alleged options backdating over a span of "at least" ten years. FAC ¶ 1.

Under Delaware law, claims variously labeled as breach of fiduciary duty, "abuse of control," "gross mismanagement," and "constructive fraud"—all based on the same underlying allegations of fact—do not state separate causes of action. Rather, they are "a repackaging of claims for breach of fiduciary duties instead of being . . . separate tort[s]." *In re Zoran Corp. Deriv. Litig.,* No. C 06-05503 WHA, 2007 U.S. Dist. LEXIS 43402, at *75–*76 (N.D. Cal. June 5,

---

[Footnote continued from previous page]

Certificate of Incorporation of MLC Holdings, Inc. [later ePlus inc.], ¶ NINTH (Aug. 27, 1996). Defendants moved for judicial notice of this charter provision on April 23, 2007. Nearly six months later, Plaintiff has not opposed that motion. Thus, this Court may treat the motion as conceded. D.D.C. L.R. 7(b).

2007) (citing *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004)).  In *Zoran*, the plaintiff similarly alleged options backdating and included causes of action for constructive fraud, abuse of control, and gross mismanagement, in addition to his fiduciary duty claims.  *Id.* at *69–*76.  The Northern District of California granted the defendants' motion to dismiss these wholly redundant claims, without objection from the plaintiff.  *Id*. at *75–*76.

Corporate waste requires a showing that the officer and director defendants authorized a transaction that "served no corporate purpose or [that] the corporation received no consideration at all."  *Panic*, 783 A.2d at 554.  This is a heavy burden to bear, and Plaintiff fails miserably. His only attempt to address this standard is to conclusorily add that Defendants "[gave] away millions of dollars . . . via the option backdating scheme."  FAC ¶ 214.  Other than that one statement, his claim of corporate waste replicates his breach of duty claim and provides no discernable distinction between them.

The redundant claims in Counts VI through IX serve only to waste valuable time and resources.  *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1130–31 (11th Cir. 2001) ("Cases framed by shotgun pleadings consume an inordinate amount of a court's time.").  They should be dismissed for the reasons set forth in Part V.B above.

Even if the corporate waste claim in Count IX were sufficiently distinctive (and it is not), Plaintiff does not and cannot allege that compensation to senior executives and board members served no corporate purpose or resulted in no consideration to ePlus.  He pleads no facts that, if true, would support the notion that the award of the stock options resulted in consideration from the recipients "so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."  *Brehm*, 746 A.2d at 263.  Decisions regarding executive com-

pensation are the "essence of business judgment" and "[are] entitled to great deference." *Id.*

Count IX should be dismissed for this additional reason.

> ### D. The Court Should Dismiss The Unjust Enrichment Claim (Count X) Because Plaintiff Fails To Allege That Any Defendants Were Unfairly Enriched At The Company's Expense.

Count X of the Amended Complaint claims that Defendants were unjustly enriched at the expense of the Company.  FAC ¶¶ 217–21.  As the Delaware Supreme Court has made clear, "an unjust enrichment claim is essentially another way of stating a traditional tort claim." *Sao Paulo of the Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116, 1124–25 (Del. 2007) (internal quotation marks omitted).  Once the "traditional tort claim"—here, the breach of fiduciary duty claim—is dismissed, analogous equitable claims such as unjust enrichment must likewise be dismissed.  *See*, *e.g.*, *Allegheny Gen. Hosp. v. Phillip Morris, Inc.*, 228 F.3d 429, 446–47 (3d Cir. 2000) (noting that there is "no justification for permitting plaintiffs to proceed on their unjust enrichment claim once" the traditional tort claims have been dismissed).  Because Plaintiff fails to allege backdating and thus fails to plead a breach of fiduciary duty, his equitable claims of unjust enrichment must also be dismissed.

Even if Plaintiff's failure to plead a breach of fiduciary duty did not doom his equitable claim, his allegations of unjust enrichment are insufficient to withstand a motion to dismiss. Plaintiff asserts that each of the Defendants "ha[s] been unjustly enriched at the expense of ePlus, in the form of unjustified salaries, benefits, bonuses, stock option grants and other emoluments of office."  FAC ¶ 218.  But with the exception of stock option grants, the Amended Complaint is devoid of any hint that these types of compensation are at issue in this case.  As to stock option grants, Plaintiff fails to allege that the so-called "suspicious" grants were ever exercised. Furthermore, he does not even allege that suspicious options were retained by any Defendants, notwithstanding ePlus's public disclosure that "the Board of Directors decided, on May 8, 2007,

to cancel the 2004 Options, and each of the four senior managers has consented to this cancellation of options." ePlus Form 8-K (May 11, 2007).[22]  Although this disclosure issued well over two months before Plaintiff moved to amend his pleadings, the Amended Complaint fails to assert a single allegation acknowledging this announcement or explaining why it does not moot his claims.[23]

### E.    The Court Should Dismiss The So-Called "Rescission" Claim (Count XI) Because Rescission Is A Remedy, Not An Independent Cause Of Action.

In Count XI, Plaintiff asserts a cause of action for rescission.  FAC ¶¶ 222–24.  This claim fails because, as explained at length above, Plaintiff has pleaded no allegations sufficient to give rise to any reasonable inference of misconduct.  Furthermore, "rescission is a form of remedy, not a claim under the law."  *Zoran*, 2007 U.S. Dist. LEXIS 43402, at \*75; *see also E.I. Du Pont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 462 (Del. 2000) (discussing rescission as a remedy for fraud in the inducement); *Detroit Med. Ctr. v. Provider Healthnet Servs., Inc.*, 269 F. Supp. 2d 487, 495 (D. Del. 2003) ("[E]quitable rescission, which is sometimes referred to as cancellation, is a remedy" premised on a "judicial declaration that a contract is invalid.").  For these reasons, count XI should be dismissed.

---

[22]  "[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (internal citations omitted); *see also, e.g.*, *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996).

[23]  Furthermore, unjust enrichment is an equitable remedy that is inapplicable if there is an enforceable contract governing the subject matter.  *Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 671 n.24 (Del. Ch. 2006).  Plaintiff does not allege—as he must—that ePlus does not have an adequate remedy at law.  In fact, he asserts elsewhere, much to the contrary, that the stock options grants *were* governed by contract.  FAC ¶¶ 222–24 (seeking rescission).

**VI.    The Court Should Dismiss Any Remaining Claims That Have Expired Under The Statute Of Limitations.**

Plaintiff filed his initial complaint in this case on January 18, 2007.  As explained discussed below, many of Plaintiff's are barred by the applicable statutes of limitations and repose.

**A.    The Section 10(b), 20(a), And 304 Claims (Counts I, III, XII) Are Time-Barred Before January 18, 2005.**

The statute of limitations for Plaintiff's Section 10(b) and 20(a) claims (as well as his Section 304 claims) is the earlier of (1) two years from discovery of the facts constituting the alleged violation, or (2) five years after the alleged violation regardless of time of discovery.  28 U.S.C. § 1658(b).  Since Plaintiff filed his original complaint on January 18, 2007, he cannot sue for Section 10(b), 20(a), or 304 claims that were discoverable before January 18, 2005.

Plaintiff's vague contention that the statute of limitations should be tolled is unavailing.  "'[T]he equitable tolling doctrine is fundamentally inconsistent' with the statute of limitations structure applicable to § 10(b) claims."  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 426 & n.16 (S.D.N.Y. 2003) (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)); *see also In re Atmel Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2007 WL 2070299, at *7 (N.D. Cal. July 16, 2007) ("This statute of limitations is not subject to equitable tolling.").  Rather, the two-year limitations period, "by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary."  *Lampf*, 501 U.S. at 363.  Such discovery occurs when the plaintiff obtains "actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge."  *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 199 (S.D.N.Y. 2003) (internal quotation marks omitted).

The two-year period in this case should begin to run when each allegedly false statement was first made.  Even in 1997, Plaintiff had notice of facts that, through the exercise of reason-

able diligence, would have revealed the claims he failed to raise until a decade later.  All of ePlus's option grants to Defendants must be disclosed in ePlus's SEC filings.  The price of ePlus's stock was also publicly available.  As the Amended Complaint admits, this information was sufficient to enable another shareholder to write a letter to the Company expressing concerns regarding certain options.  FAC ¶ 53.  Through similar inquiry, Plaintiff reasonably could have discovered the information that is now the basis for his claims.  As a result, those claims based on false statements made before January 18, 2005 are time-barred.

In any event, the five-year period of repose is an "outside limit" irrespective of what facts Plaintiff could have discovered.  *Merrill Lynch*, 289 F. Supp. 2d at 426; *see also Lampf*, 501 U.S. at 363.  Therefore, even if the Court concludes that Plaintiff's claims could not have been discovered earlier through reasonable diligence, all claims based on alleged false statements made before January 18, 2002 are time-barred.

**B.    The Section 14(a) Claims (Counts II) Are Time-Barred Before January 18, 2006.**

Plaintiff's Section 14(a) claim has a limitations period of "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation."  *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993) (internal quotation marks omitted); *Global Crossing*, 313 F. Supp. 2d at 196–97.[24]  Like the statute of limita-

---

[24] Section 804 of the Sarbanes-Oxley Act extended the statute of limitations applicable to fraud claims under the federal securities laws.  *See* 28 U.S.C. § 1658(b).  As discussed above, Plaintiff's Section 10(b) and 20(a) claims are subject to this extended statute of limitations. However, this extension does not apply to Section 14(a) claims.  *See, e.g., In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 423–24 (D.N.J. 2005) ("On its face, then, the language of Sarbanes-Oxley clearly applies to 'claims' of fraud.  It does not specifically apply to claims, like those under Section 14(a), for which fraud is not an element or requisite."); *Virginia M. Damon Trust v. N. Country Fin. Corp.*, 325 F. Supp. 2d 817, 823–24 (W.D. Mich. 2004); *Global Crossing*, 313 F. Supp. 2d at 196–97.

tions applicable to his other federal claims, this "1-and-3-year" provision is not subject to equita-

ble tolling. *Lampf*, 501 U.S. at 363. Because Plaintiff did not file his original complaint until

January 18, 2007, he cannot sue for Section 14(a) claims that were discoverable before January

18, 2006.

As discussed above, Plaintiff had notice of facts as early as 1997 that, through reasonable

diligence, would have revealed the claims he failed to raise until now. The one-year limitations

period should therefore begin to run with the filing of each disputed proxy statement. Accord-

ingly, Plaintiff's Section 14(a) claims based on proxy statements filed before January 18, 2006

are time-barred. Because the Complaint only challenges proxy statements from 2005 and earlier,

FAC ¶ 35, *all* of the Section 14(a) claims are time-barred.

In any event, the three-year period of repose is an "outside limit" for Plaintiff's Section

14(a) claims regardless of when discovery occurred. *Lampf*, 501 U.S. at 363. Therefore, even if

the Court concludes that Plaintiff's Section 14(a) claims could not have been discovered earlier

through reasonable diligence, all claims based on proxy statements filed before January 18, 2004

are time-barred nonetheless.

### C.   The State-Law Claims (Counts IV through XI) Are Time-Barred Before January 18, 2004.

Delaware law provides a three-year statute of limitations period for Plaintiff's various

state-law claims, *i.e.*, Counts IV through XI. *See Halpern v. Barran*, 313 A.2d 139, 141 (Del.

Ch. 1973) (citing Del. Code. Ann. tit. 10, § 8106). For the reasons discussed above, Plaintiff was

on inquiry notice of his claims for alleged options misconduct for more than three years prior to

the filing of his Complaint. Accordingly, he cannot premise any state-law claims on alleged

conduct predating January 18, 2004.

Plaintiff contends that the limitations period for the state-law claims should be tolled because Defendants "concealed their manipulation of the stock option plans" and "withheld . . . the facts that give rise to the claims." FAC ¶¶ 141–42. This argument lacks merit. Plaintiff "bear[s] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled." *In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998); *see also In Re Maxxam, Inc./In re Federated Dev. S'holders Litig.*, Civ. A. Nos. 12111 & 12353, 1995 WL 376942, at *6 (Del. Ch. June 21, 1995) (same). The statute of limitations may be tolled by allegations of fraudulent concealment, but Plaintiff must plead some "actual artifice" or misrepresentation by Defendants to prevent him from learning the facts or that is "intended to put the plaintiff off the trail of inquiry." *Merck & Co. v. SmithKline Beecham Pharms. Co.*, No. 15443-NC, 1999 WL 669354, at *43 (Del. Ch. Aug. 5, 1999) (internal quotation marks omitted). Plaintiff cannot "put on blinders to such obvious signals as publicly filed documents, annual and quarterly reports, proxy statements, and SEC filings." *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996) (applying Section 8106). As discussed in Part VI.A, *supra*, information about ePlus's option grants and stock price was publicly available, and that information was sufficient to enable another shareholder to inquire about ePlus's options practices. FAC ¶ 53. Because Plaintiff did not so inquire, but instead "put on blinders to such obvious signals," *Seidel*, 954 F. Supp. at 817, he is not entitled to tolling, and the three-year limitation period applies.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an order dismissing the Complaint and specific claims as described above or, in the alternative, directing Plaintiff to make a more definite statement.

Dated:  October 22, 2007

Respectfully Submitted,

/s/ F. Joseph Warin

F. JOSEPH WARIN (DC Bar # 235978)
FWarin@gibsondunn.com
MICHAEL F. FLANAGAN (DC Bar # 435942)
MFlanagan@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

A copy of ***Defendants' Motion To Dismiss The First Amended Verified Shareholder Derivative Complaint*** and the ***Statement Of Points And Authorities In Support*** thereof were filed electronically this 22nd day of October 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Jason J. Mendro

Jason J. Mendro (DC Bar # 482040)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DILORENZO,

        Plaintiff,

      v.

NORTON, et al.,

        Defendants.

Civil Action No. 1:07-cv-00144-RJL

### [PROPOSED] ORDER

Upon consideration of Defendants' Motion to Dismiss the First Amended Verified

Shareholders Derivative Complaint, and for the reasons stated in the memorandum opinion

issued on this date, it is hereby

**ORDERED** that the Defendants' motion is **GRANTED**; and it is further

**ORDERED** that all claims against the Defendants by the Plaintiff are **DISMISSED** with

prejudice.

_____
Richard J. Leon
United States District Judge

Date:_____