**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DILORENZO,

              Plaintiff,

          v.

NORTON, et al.,

              Defendants.

Civil Action No. 1:07-cv-00144-RJL

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Dated:  February 4, 2008

F. JOSEPH WARIN (DC Bar # 235978)
FWarin@gibsondunn.com
MICHAEL F. FLANAGAN (DC Bar # 435942)
MFlanagan@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendants*

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY ...............................................................................1

ARGUMENT ..............................................................................................................2

I.    The Amended Complaint Should Be Dismissed Because It Fails To Plead
      Any Viable Claim Under Federal Law. ...........................................................2

      A.    Plaintiff Understates His Pleading Burden Under *Bell Atlantic
            Corp. v. Twombly*. ...............................................................................2

      B.    Count I Fails To State A Claim Under Section 10(b). ................................3

      C.    Count II Fails To State A Claim Under Section 14(a). ..............................9

      D.    Count III Fails To State A Claim Under Section 20(a). ..........................11

      E.    Count XII Fails Because There Is No Private Cause Of Action
            Under Section 304 Of The Sarbanes-Oxley Act. .....................................12

II.   The Amended Complaint Should Be Dismissed Because Plaintiff Fails To
      Plead Standing. .........................................................................................15

III.  Plaintiff Fails To Show Demand Futility. ......................................................16

      A.    Plaintiff Fails To Show A Substantial Risk of Liability For
            Granting Options. .................................................................................17

      B.    Plaintiff Fails To Show A Substantial Risk of Liability For
            Receiving Backdated Options. ................................................................20

IV.   Plaintiff Has Insufficiently Pleaded His State-Law Claims. ............................21

V.    This Court Should Dismiss Any Remaining Claims That Are Time-
      Barred. ....................................................................................................22

CONCLUSION .......................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ................................................................. 12

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................... 13

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ..................................................................................... 6

*Bateson v. Magna Oil Corp.*,
   414 F.2d 128 (5th Cir. 1969) ..................................................................... 16

\* *Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ............................................................................. 2, 8

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ..................................................................................... 3

*Burgess v. Premier Corp.*,
   727 F.2d 826 (9th Cir. 1984) ..................................................................... 12

*Cameron v. Outdoor Resorts of Am., Inc.*,
   608 F.2d 187 (5th Cir. 1979) ..................................................................... 12

*Conley v. Gibson*,
   355 U.S. 41 (1957) ....................................................................................... 2

*Conrad v. Blank*,
   C.A. No. 2611-VCL, 2007 Del. Ch. LEXIS 130 (Sept. 7, 2007) ............. 16

\* *Cowin v. Bresler*,
   741 F.2d 410 (D.C. Cir. 1984) ............................................................... 3, 10

\* *Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007) ................................................................... 18

*Emerald Partners v. Berlin*,
   726 A.2d 1215 (Del. 1999) ......................................................................... 18

*Falkowski v. Imation Corp.*,
   309 F.3d 1123 (9th Cir. 2002) ..................................................................... 4

*Foltz v. U.S. News & World Report, Inc.*,
   627 F. Supp. 1143 (D.D.C. 1986) .................................................................................. 4, 5

*Gebhardt v. ConAgra Foods, Inc.*,
   335 F.3d 824 (8th Cir. 2003) ............................................................................................ 7

*Gonzaga University v. Doe*,
   536 U.S. 273 (2002)........................................................................................................ 13

* *Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004) ............................................................................................ 7

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ........................................................................................ 18

*Haw. Laborers Pension Fund v. Farrell*,
   No. CV 06-06935 ODW (FMOx), 2007 U.S. Dist. LEXIS 77777
   (C.D. Cal. Aug. 22, 2007) .............................................................................................. 15

*In re AFC Enters., Inc. Deriv. Litig.*,
   24 F.R.D. 515 (N.D. Ga. 2004)....................................................................................... 14

*In re Affiliated Computer Servs. Deriv. Litig.*,
   No. 3:06-CV-1110-M, 2007 WL 4440920 (N.D. Tex. Dec. 13, 2007) ............................. 23, 24

*In re Apple Computer Inc., Deriv. Litig.*,
   No. C 06-4128 JF, 2007 WL 4170566 (N.D. Cal. Nov. 19, 2007)................................... 23, 24

*In re Atmel Corp. Deriv. Litig.*,
   No. C 06-4592 JF (HRL), 2007 WL 2070299 (N.D. Cal. July 16, 2007) ......................... 23, 24

*In re BISYS Group Inc. Deriv. Action*,
   396 F. Supp. 2d 463 (S.D.N.Y. 2005) ............................................................................ 14

*In re Cendant Corp. Sec. Litig.*,
   76 F. Supp. 2d 539 (D.N.J. 1999) .................................................................................... 5

*In re Cendant Corp. Sec. Litig.*,
   81 F. Supp. 2d 550 (D.N.J. 2000) .................................................................................... 5

*In re CNET Networks, Inc.*,
   483 F. Supp. 2d 947 (N.D. Cal. 2007) ........................................................................ 19, 20

*In re Cree, Inc. Sec. Litig.*,
   No. 1:03CV00549, 2005 WL 1847004 (M.D.N.C. Aug. 2, 2005) ........................................ 14

*In re Digimarc Corp. Deriv. Litig.*,
   No. 05-1324-HA, 2006 WL 2345497 (D. Or. Aug. 11, 2006) .............................................. 14

*In re Ditech Networks, Inc. Deriv. Litig.*,
  No. C 06-5157 JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007) ...................................... 23, 24

*In re F5 Networks, Inc.*,
  No. C06-794RSL, 2007 WL 2476278 (W.D. Wash. Aug. 6, 2007) ......................................... 19

* *In re Fed. Nat'l Mortgage Ass'n Sec., Deriv., & 'ERISA' Litig.*,
  503 F. Supp. 2d 25 (D.D.C. 2007) .................................................................................... passim

*In re Fed. Nat'l Mortgage Ass'n Sec., Deriv., & 'ERISA' Litig.*,
  503 F. Supp. 2d 9 (D.D.C. 2007) ................................................................................ 17, 19, 20

*In re Friedman's, Inc. Deriv. Litig.*,
  386 F. Supp. 2d 1355 (N.D. Ga. 2005) ..................................................................................... 14

*In re Goodyear Tire & Rubber Co. Deriv. Litig.*,
  Nos. 5:03CV2180 *etc.*, 2007 WL 43557 (N.D. Ohio Jan. 5, 2007) ......................................... 14

*In re iBasis, Inc. Deriv. Litig.*,
  No. 06-12276-DPW, 2007 WL 4287591 (D. Mass. Dec. 4, 2007) ........................................... 14

*In re Infosonics Corp. Deriv. Litig.*,
  No. 06cv1336 BTM(WMc), 2007 WL 2572276 (S.D. Cal. Sept. 4, 2007) ....................... 14, 21

*In re Interpublic Sec. Litig.*,
  Nos. 02 Civ. 6527(DLC) & 03 Civ. 1194(DLC), 2004 WL 2397190
  (S.D.N.Y. Oct. 26, 2004) ......................................................................................................... 14

*In re Linear Tech. Corp. Deriv. Litig.*,
  No. C-06-3290 MMC, 2006 U.S. Dist. LEXIS 90986 (N.D. Cal. Dec. 7, 2006) ..................... 20

*In re Maxim Integrated Prods., Inc., Deriv. Litig.*,
  No. C 06-03344 JW, 2007 U.S. Dist. LEXIS 70763 (N.D. Cal. July 25, 2007) ...................... 16

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002) ..................................................................................................... 8

*In re NationsMart Corp. Sec. Litig.*,
  130 F.3d 309 (8th Cir. 1997) ....................................................................................................... 6

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
  387 F. Supp. 2d 1130 (D. Colo. 2005) ...................................................................................... 15

* *In re VeriSign, Inc., Deriv. Litig.*,
  No. C-06-4165 PJH, 2007 U.S. Dist. LEXIS 72341 (N.D. Cal. Sept. 14, 2007) .............. 15, 21

*In re Whitehall Jewellers, Inc. S'holder Deriv. Litig.*,
  No. 05 C 1050, 2006 WL 468012 (N.D. Ill. Feb. 27, 2006) ..................................................... 14

iv

*In re Zoran Corp. Deriv. Litig.*,
   511 F. Supp. 2d 986 (N.D. Cal. 2007) ........................................................................ 4, 16, 23

*Joseph v. Wiles*,
   223 F.3d 1155 (10th Cir. 2000) ................................................................................... 6

*Kaliski v. Bacot (In re Bank of N.Y. Deriv. Litig.)*,
   320 F.3d 291 (2d Cir. 2003) ....................................................................................... 16

*Kogan v. Robinson*,
   432 F. Supp. 2d 1075 (S.D. Cal. 2006) ...................................................................... 14

*Lewis v. Anderson*,
   477 A.2d 1040 (Del. 1984) ......................................................................................... 15

*Mehlenbacher ex rel. Asconi Corp. v. Jitaru*,
   No. 6:04CV1118ORL-22KRS, 2005 WL 4585859 (M.D. Fla. June 6, 2005) ........................ 14

*Needham v. Cruver*,
   Civ. A. Nos. 12,428 & 12,430, 1993 Del. Ch. LEXIS 76  (May 12, 1993) ............................ 17

*Neer v. Pelino*,
   389 F. Supp. 2d 648 (E.D. Pa. 2005) ......................................................................... 14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ....................................................................................... 5

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ....................................................................................... 8

*Portnoy v. Memorex Corp.*,
   667 F.2d 1281 (9th Cir. 1982) .................................................................................... 4

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ........................................................................................... 16, 21

*Reina v. Tropical Sportswear Int'l*,
   No. 8:03-cv-1958-T-23TGW, 2005 U.S. Dist. LEXIS 6129 (M.D. Fla. Apr. 4, 2005) .......... 14

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .................................................................................. 5

*Rose v. Ark. Valley Envtl. & Util. Auth.*,
   562 F. Supp. 1180 (W.D. Mo. 1983) .......................................................................... 4

*Ryan v. Gifford*,
   918 A.2d 341 (Del. Ch. 2007) .................................................................................... 16, 19

*Stephenson v. Cox*,
223 F. Supp. 2d 119 (D.D.C. 2002) ........................................................................... 22

*Stoll v. Ardizzone*,
No. 07 Civ. 00608(CM), 2007 WL 2982250 (S.D.N.Y. Oct. 9, 2007) .............................. 23, 24

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001) ......................................................................................... 5

*Teachers' Ret. Sys. of La. v. Hunter*,
477 F.3d 162 (4th Cir. 2007) ...................................................................................... 14

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966) ............................................................................................... 1, 2

*United States v. City of Redwood City*,
640 F.2d 963 (9th Cir. 1981) ..................................................................................... 2

*Westinghouse Elec. Corp. v. Franklin*,
993 F.2d 349 (3d Cir. 1993) ...................................................................................... 22

**Statutes**

15 U.S.C. § 7243 .................................................................................................... 13

15 U.S.C. § 7244 .................................................................................................... 13

15 U.S.C. § 78j ...................................................................................................... 3

15 U.S.C. § 78t ...................................................................................................... 12

15 U.S.C. § 78u-4 ............................................................................................... 9, 11

28 U.S.C. § 1658 ................................................................................................... 22

**Rules**

* Fed. R. Civ. P. 23.1 .................................................................................... 15, 16, 21

## INTRODUCTION AND SUMMARY

In his opposition to the motion to dismiss, Plaintiff Christopher Dilorenzo stresses his efforts to plead around the demand requirement over the threshold issue in this case:  whether this case may proceed in federal court.  The opposition confirms that it cannot.  Plaintiff's rationale for the federal claims he attempts to plead is fatally flawed.  For example, the opposition demonstrates that Plaintiff's Section 10(b) claim does not concern misstatements in connection with the purchase or sale of securities.  And it further shows that his Section 14(a) claim rests entirely on alleged proxy statement errors that are legally irrelevant because none of the corporate action that Plaintiff contests was authorized by a shareholder vote.  Plaintiff's attempt to craft a novel, private cause of action from Section 304 of the Sarbanes-Oxley Act also fails.  Because Plaintiff's federal claims must therefore be dismissed, and because they are Plaintiff's only basis for invoking this Court's jurisdiction, "the state claims should be dismissed as well."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Plaintiff's insufficient assertion of derivative standing rests on rejected legal theories, and provides a second, independent basis for dismissal.  In addition, although these issues need not be reached, Plaintiff fails to show convincingly why he may bring this derivative action on behalf of ePlus inc. ("ePlus" or the "Company") without first making demand on the Company's board of directors; why many of his state-law claims may withstand dismissal; and why his time-barred claims may proceed.  For these reasons, as well as those explained in the motion to dismiss, the Amended Complaint should be dismissed.

**ARGUMENT**

**I.    The Amended Complaint Should Be Dismissed Because It Fails To Plead Any Viable Claim Under Federal Law.**

Plaintiff does not even attempt to dispute that this Court should dismiss the Amended Complaint in its entirety if the Court concludes that he failed to plead any viable federal claim. Instead, Plaintiff maintains that his state-law challenges to ePlus's management sound in federal law. Plaintiff is mistaken. This Court should dismiss his federal claims—and with them, the Amended Complaint. *See Gibbs*, 383 U.S. at 726.

**A.    Plaintiff Understates His Pleading Burden Under *Bell Atlantic Corp. v. Twombly*.**

Plaintiff begins his defense of the federal claims by misstating the applicable pleading standard. He claims that, under a 1981 decision from the Ninth Circuit, "only 'extraordinary' circumstances warrant dismissal under Rule 12(b)(6)." Pl.'s Opp'n Defs.' Mot. Dismiss ("Opp.") at 21, Dkt. Entry ("D.E.") 17 (quoting *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)). But that case relied on the rule that "a complaint is not to be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Redwood*, 640 F.2d at 966 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The Supreme Court has since "retire[d]" this "'no set of facts' language," explaining that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). Under *Twombly*, a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964–65. The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. For the reasons explained below and in the motion to dismiss, Plaintiff cannot satisfy this pleading burden as to any of his claims—let alone the heightened pleading burden applicable to his securities

fraud claims under both the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b).

### B. Count I Fails To State A Claim Under Section 10(b).

Plaintiff reveals his effort to transform his state-law claims into federal securities claims when he argues that Defendants violated Section 10(b) by making "misrepresentations or omissions in ePlus' SEC filings." Opp. 21. Section 10(b) imposes liability for fraud in the purchase or sale of securities, *not* for misstatements that allegedly result in erroneous SEC filings. As explained below, Plaintiff's mismatched allegations fail to plead numerous essential elements of a Section 10(b) claim.[1]

### 1. Any Alleged Misstatements Were Not In Connection With The Purchase Or Sale Of Securities.

The Amended Complaint fails to satisfy Section 10(b)'s requirement that the alleged misrepresentations be made "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). The alleged misstatements that Plaintiff now identifies are "misrepresentations or omissions in ePlus' SEC filings." Opp. 21. But he makes no attempt to explain how those SEC filings were connected to ePlus's decisions to grant options. To the contrary, Plaintiff claims that the option grants were the *cause* of the inaccurate SEC filings. Opp. 21–22. These allega-

---

[1] As part of his Section 10(b) claim, Plaintiff also argues that various Defendants "engaged in insider *selling* for proceeds in excess of $5 million" because they "had inside knowledge of backdating at ePlus." Opp. 29 (emphasis added). But Plaintiff purports to bring this suit derivatively on behalf of ePlus, so he can sue only for insider selling based on ePlus's purchases. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754–55 (1975); *see also*, *e.g.*, *Cowin v. Bresler*, 741 F.2d 410, 420 (D.C. Cir. 1984) (noting that "only purchasers or sellers of securities have standing to pursue private claims for damages under section 10(b) and Rule 10b-5"). Because Plaintiff has not alleged that ePlus was a party to any of the alleged "insider selling," ePlus (and therefore Plaintiff) lack standing to challenge these transactions. In addition, Plaintiff's "insider selling" claim fails to plead the essential elements of a Section 10(b) claim for all the same reasons that his other attempts to invoke Section 10(b) fail. *See infra* Part I.B.1–5.

tions are insufficient to state a claim: Section 10(b) punishes misleading statements that cause securities transactions, not securities transactions that cause misleading statements.

In addition, Plaintiff's Section 10(b) claim fails because the option grants at issue were not purchases or sales. Plaintiff relies on the Ninth Circuit's decision in *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), to argue that *any* stock option grant is a purchase or sale, regardless of the circumstances under which it was made. Opp. 23–24. *Falkowski* "reject[ed] the contrary holding of *In re Cendant Corp. Securities Litigation*," on which Defendants here rely, *see* Defs.' Mot. Dismiss ("Mot.") at 6–7, D.E. 15, because an option "is a contract to sell a security when the option is exercised," 309 F.3d at 1130–31. But this analysis proves far too much. Under the Ninth Circuit's sweeping reasoning, the *gift* of a stock option would constitute a sale because the option "is a contract to sell a security when the option is exercised." *Id* at 1130. But it is well settled—even in the Ninth Circuit—that a gift is *not* a purchase or sale under the securities laws. *See*, *e.g.*, *Portnoy v. Memorex Corp.*, 667 F.2d 1281, 1283 (9th Cir. 1982) (holding that "purchase" and "sale" "do not include gifts"); *Rose v. Ark. Valley Envtl. & Util. Auth.*, 562 F. Supp. 1180, 1188 (W.D. Mo. 1983) (holding that "donees or legatees" are "clearly neither 'sellers' nor 'purchasers'").[2]

The better approach, which *In re Cendant Corp. Securities Litigation* adopted based on this Court's decision in *Foltz v. U.S. News & World Report, Inc.*, 627 F. Supp. 1143 (D.D.C. 1986), links the "purchase or sale" requirement to the manner in which the option is acquired. "To 'purchase or sell' stock options, employee-purchasers must 'give up a specific consideration

---

[2] Plaintiff tries to bolster his reliance on *Falkowski* by claiming that "the court in *Zoran* rejected exactly the argument made by defendants." Opp. 24. This claim is irrelevant because *Zoran* was decided in the Northern District of California, where *Falkowski* is binding precedent. *See In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007).

in return for a separable financial interest with the characteristics of a security.'" *In re Cendant Corp. Sec. Litig.*, 81 F. Supp. 2d 550, 556 (D.N.J. 2000) (quoting *Foltz*, 627 F. Supp. at 1157–58). By contrast, "[w]hen an employee does not give anything of value for stock other than the continuation of employment nor independently bargains for such stock," there is no "purchase or sale" of securities. *In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d 539, 544 (D.N.J. 1999) (internal quotation marks and emphasis omitted). Under this approach, Plaintiff's Section 10(b) claim must be dismissed because he does not allege that ePlus's option grants were part of any bargained-for exchange.

### 2.    The Complaint Fails To Adequately Plead That ePlus Relied On Any Alleged Misrepresentations In Awarding Options.

Plaintiff claims that ePlus relied on alleged misstatements in "not record[ing] compensation expense for in-the-money options." Opp. 30. This argument misunderstands Section 10(b)'s reliance requirement. To state a Section 10(b) claim, Plaintiff must adequately plead that ePlus relied on alleged misstatements *in its decisions to sell securities*. *See*, *e.g.*, *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172–73 (3d Cir. 2001) ("Reliance, or transaction causation, establishes that but for the fraudulent misrepresentation, the investor *would not have purchased or sold the security*." (emphasis added)).[3] Plaintiff cannot satisfy this requirement simply by claiming that ePlus's financial statements were inaccurate.

---

[3] *See also*, *e.g.*, *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95–96 (2d Cir. 2001) (noting that a Section 10(b) plaintiff must allege "transaction causation, *i.e.*, that *but for* the fraudulent statement or omission, the plaintiff would not have entered into the transaction" (emphasis in original)); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997) ("Transaction causation, another way of describing reliance, is established when the misrepresentations or omissions cause the plaintiff to engage in the transaction in question." (internal quotation marks omitted)).

Indeed, the other allegations in the Amended Complaint make it impossible for Plaintiff to plead reliance. Mot. 10. Plaintiff cannot allege, for instance, that ePlus relied on misleading statements when it awarded option grants because Plaintiff conclusorily asserts that the individuals making those decisions already knew of—and were responsible for—the statements being misleading. *E.g.*, First Am. Verified S'holder Deriv. Compl. ("FAC") ¶ 153, D.E. 16. Moreover, any erroneous financial statements about particular option grants were made only *after* those grants were awarded and therefore could not have been considered in deciding to award the grants.

Plaintiff seeks to avoid these fundamental flaws by arguing that "reliance is a factual inquiry not appropriate for resolution on a motion to dismiss." Opp. 30 n.21. But while this Court does not decide the *truth* of any allegations in ruling on the motion to dismiss, it must determine whether Plaintiff adequately *pleaded* reliance. *See Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988) ("[R]eliance is an element of a Rule 10b-5 cause of action."). Contrary to Plaintiff's view, numerous courts have dismissed complaints that failed to plead reliance adequately. *See*, *e.g.*, *Joseph v. Wiles*, 223 F.3d 1155, 1166 (10th Cir. 2000) (holding that the plaintiff "has not sufficiently alleged reliance to make out a section 10(b) claim"); *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 321–22 (8th Cir. 1997) (holding that "[t]he plaintiffs did not adequately plead actual reliance"). Since the Amended Complaint also fails to plead reliance sufficiently, the Section 10(b) claim should be dismissed.

### 3.    Plaintiff Fails To Adequately Plead Any Misrepresentations That Can Support Liability Under Section 10(b).

Plaintiff claims that the "defendants made misrepresentations or omissions in ePlus' SEC filings." Opp. 21. But the only misstatements that could be relevant to Plaintiff's Section 10(b)

claim are those made *to ePlus* when it decided to award the stock options that were allegedly backdated. Plaintiff does not identify any of these sorts of misrepresentations.

### 4. Plaintiff's *Per Se* Materiality Argument Would Impermissibly Eliminate Section 10(b)'s Materiality Requirement.

Plaintiff claims that the alleged backdating is material because "[q]uestions regarding the integrity of the Company's management . . . are material to investors." Opp. 23. This argument would treat any misrepresentation that bears on "the integrity of management" as *per se* material. But, as the Fourth Circuit has explained, such a rule "simply reads materiality out of the statute." *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 660 (4th Cir. 2004). *Greenhouse* emphasized that "'management's integrity' will *always* be implicated in *any* falsehoods," but that is not enough for Section 10(b) liability because "the securities laws are only concerned with lies about *material facts*." *Id.* (emphases in original). Rather, the proper question is "whether the actual fact misrepresented . . . was, in and of itself, material." *Id.* at 659 (holding that a misrepresentation was not material even though "[n]obody . . . disputes the idea that [the CEO]'s integrity was brought into question by the revelation that he lied").[4]

Plaintiff has not adequately pleaded that any alleged misrepresentation was itself material—and it is telling that his discussion of materiality does not cite any portion of the Amended Complaint. *See* Opp. 23. The Amended Complaint contains only the conclusory assertion that "ePlus' misstatements satisfy th[e] criteria [for materiality *under GAAP*] and thus were material from both a quantitative and qualitative perspective." FAC ¶ 123. This allegation is insufficient

---

[4] *Greenhouse* also explained why *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003), does not hold—as Plaintiff here suggests—that "[q]uestions regarding the integrity of the Company's management" are necessarily material, *see* Opp. 23. In *Gebhardt*, "there plainly was a misrepresented fact that was actually material," and "the 'integrity concerns' . . . [were] merely derivative of the misrepresentation that was the basis for the suit." *Greenhouse*, 392 F.3d at 659.

because it disregards *Twombly*'s requirement that a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 127 S. Ct. at 1964–65.[5]

### 5. Plaintiff Attempts To Plead *Scienter* By Relying On Inferences That This Court Has Squarely Rejected.

Plaintiff argues that this Court should indulge a variety of inferences of *scienter* based on the defendants' positions at ePlus and the nature of the alleged wrongdoing. These arguments are inconsistent with the PSLRA and have previously been rejected by this Court. *See In re Fed. Nat'l Mortgage Ass'n Sec., Deriv., & 'ERISA' Litig.*, 503 F. Supp. 2d 25, 39–40 (D.D.C. 2007) ("*Fannie Mae II*").

Plaintiff contends that this Court can infer *scienter* because of the "defendants' high-level executive positions and Board membership, as well as their participation on the Stock Incentive, Compensation and Audit Committees." Opp. 26. For instance, Plaintiff claims that the members of the Audit Committee "had a duty to oversee the preparation of ePlus' financial statements," and that their alleged failure to do so supports an inference of *scienter*. Opp. 25. This Court has held to the contrary: Allegations that the defendants "fail[ed] to properly perform their 'job . . .

---

[5] It would, moreover, be futile to allow Plaintiff to attempt to plead materiality given the stock market's indifference to ePlus's public announcements. Mot. 9. Although Plaintiff claims that "stock fluctuations" are not necessary for materiality, this argument is contrary to basic economic theory. In an efficient market, such as the NASDAQ market in which ePlus's shares were traded, "the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock." *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000). Because ePlus's share price *rose* after the Company announced the only issue raised in the Amended Complaint, it follows that any previous omissions were immaterial. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) (holding that information was immaterial as a matter of law where there was "no negative effect" on the company's stock price "immediately following" disclosure).

to oversee and monitor the Company's accounting and financial reporting'" are insufficient to satisfy the PSLRA. *Fannie Mae II*, 503 F. Supp. 2d at 39–40 (alteration in original).

Under the PSLRA, Plaintiff must "state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphases added). Plaintiff has failed to satisfy these demanding requirements. Like the plaintiff in *Fannie Mae II*, Plaintiff has never explained—let alone pleaded in his Amended Complaint— "(1) what facts, if any, were brought to the attention of the [Stock Incentive, Compensation, or] Audit Committee[s]; (2) when these facts were brought; or (3) what, if anything, the . . . Committee[s] did in response." 503 F. Supp. 2d at 40. "Without such specific allegations," this Court held, the "plaintiffs' allegations, at best, rise to the level of negligence" and "do not demonstrate the required state of mind of extreme recklessness." *Id.* at 40–41.[6]

Plaintiff next contends that *scienter* may be inferred because backdating is "inherently knowing, fraudulent conduct." Opp. 26. This argument, too, runs afoul of the PSLRA, which requires Plaintiff to plead that *each of these* defendants individually acted with *scienter*. Even if Plaintiff were correct that backdating occurred at ePlus, he has pleaded no particularized facts to show that any of the Defendants he chose to sue were responsible for that backdating. His claim that "'books do not cook themselves,'" Opp. 26 n.18, does nothing to show who cooked them.

### C.    Count II Fails To State A Claim Under Section 14(a).

Plaintiff has not adequately pleaded that any proxy statements were misleading or that any Defendants acted negligently in issuing them. *See* Mot. 14–16; *supra* Part I.B.5. In addition

---

[6] Similarly, Plaintiff is mistaken to claim that "allegations that defendants have signed false financial statements directly evidence scienter." Opp. 27. Even if Plaintiff is correct that the financial statements were false, that does nothing to show that these particular Defendants falsified them, let alone that they did so with extreme recklessness. Rather, Plaintiff's "allegations, at best, rise to the level of negligence." *Fannie Mae II*, 503 F. Supp. 2d at 40–41.

to these defects, the Amended Complaint fails to plead two essential elements of Plaintiff's Section 14(a) claim:  the "essential link" requirement and materiality.

Plaintiff argues that his allegations satisfy the "essential link" requirement because "a reasonable shareholder would consider the fact that defendants were issuing grants at lower than the fair market value important in deciding how to vote on that plan."  Opp. 33.  This argument confuses Section 14(a)'s materiality requirement with its "essential link" requirement.  Although the materiality requirement looks to the importance of an issue to shareholders, the "essential link" requirement asks instead whether the alleged harm was "a result of the corporate action *authorized* by the proxy statement."  *Cowin v. Bresler*, 741 F.2d 410, 428 (D.C. Cir. 1984) (emphasis added).  *Cowin*—which Plaintiff does not cite even though it is the controlling case on this issue—makes clear that, where damages result from "a subsequent breach of fiduciary duty which is only an incident to" the "corporate action authorized by the proxy statement," then those damages are "not actionable under section 14(a)."  *Id.*  Plaintiff claims damages from alleged backdating, which—he repeatedly emphasizes—was *not* authorized by the stock option plans approved by shareholders.  *See*, *e.g.*, Opp. 6.  As *Cowin* makes clear, these allegations are insufficient to satisfy the "essential link" requirement.

Plaintiff also has not adequately pleaded that any alleged misrepresentations were material.  He claims that "the fact that defendants were issuing grants at lower than the fair market value" would be important to shareholders in deciding whether to approve a stock option plan, Opp. 33–34, but the harm he alleges was not approval of the plan, *see*, *e.g.*, FAC ¶ 4 (listing alleged harm to ePlus).  Rather, Plaintiff seeks damages for alleged backdating *in violation of the approved plans*—which was, of course, never the subject of a shareholder vote.  Plaintiff does not claim that these particular plans had anything to do with the alleged backdating.  Indeed, the

10

Amended Complaint acknowledges that ePlus had stock option plans as early as 1996, before the alleged backdating occurred. *See* FAC ¶ 55. Plaintiff pleads no basis for his conclusion that approval of the 1998 plan caused backdating.

### D.     Count III Fails To State A Claim Under Section 20(a).

Because Plaintiff has not adequately pleaded any primary violations of Section 10(b) or 14(a), his claim for secondary violations under Section 20(a) necessarily fails. In addition, the motion to dismiss provides two alternative grounds for dismissing the Section 20(a) claim: Plaintiff has not adequately alleged either that the Defendants were culpable participants in any securities violations or that they were control persons. Plaintiff responds to these arguments only in a footnote, *see* Opp. 30 n.22, which applies an erroneous pleading standard and an incorrect test for control. It does not even address whether the Defendants were culpable participants.

Plaintiff argues, for instance, that Section 20(a) claims are not subject to the heightened pleading requirements of the PSLRA. Opp. 31 n.22. As this Court recognized in *Fannie Mae II*, there is a split of authority on whether culpable participation is an element of a Section 20(a) claim, *see Fannie Mae II*, 503 F. Supp. 2d at 43, and therefore whether the PSLRA's heightened pleading standards apply to those claims. But this Court explained that the "better approach" was that "plaintiffs must adequately plead 'culpable participation' on the part of the defendants in the underlying primary securities violation." *Id.* at 44. "[T]o plead culpable participation under Section 20(a), plaintiffs must plead, at a minimum, 'particularized facts' of a defendant's culpable participation, because the [PSLRA]'s heightened pleading standard applies to 'any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind.'" *Id.* at 45 (quoting 15 U.S.C. § 78u-4(b)(2)). Plaintiff does not argue that he has pleaded culpable participation with sufficient particularity to satisfy the PSLRA, and he plainly has not done so.

11

Nor has Plaintiff adequately pleaded control. Plaintiff claims that "the Complaint adequately pleads that defendants had the ability to control the content and dissemination of the false and misleading statements." Opp. 30 n.22. But whether any Defendants could control particular *statements* is irrelevant. Section 20(a) imposes liability only if the defendant "controls *any person*" liable as a primary violator. 15 U.S.C. § 78t(a) (emphasis added).

Plaintiff does note that "[c]orporate officers and board members regularly are considered control persons," but the issue in each of the cases he cites was whether a corporate director or officer was a control person *of the corporation*. *See* Opp. 30 n.22.[7] The Amended Complaint does not—and indeed cannot—allege that ePlus violated any securities laws: Plaintiff purports to bring this suit derivatively "on behalf of the Company." FAC ¶ 1. Rather, the issue here is whether the Defendants were control persons *of other corporate officials*. Plaintiff does not plead any facts to suggest that the Defendants controlled their fellow officers or directors.

### E.    Count XII Fails Because There Is No Private Cause Of Action Under Section 304 Of The Sarbanes-Oxley Act.

Plaintiff's claim against Defendants Norton and Mencarini under Section 304 of the Sarbanes-Oxley Act must be dismissed because that statute does not authorize private parties to sue to enforce its provisions and because Plaintiff has not adequately pleaded that either defendant engaged in "misconduct." Mot. 18–20. Plaintiff never attempts to explain how the Amended Complaint has alleged "misconduct" sufficiently to survive a motion to dismiss. Plaintiff instead

---

[7] In any event, "[t]he assertion that a person was a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003); *see also Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) ("A director is not automatically liable as a controlling person." (internal quotation marks omitted)); *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 195 (5th Cir. 1979) (same).

raises a handful of arguments that Section 304 confers a private right of action. This Court should reject Plaintiff's arguments and hold, along with *every* court that has addressed the issue, that Congress did not create a right of action for private parties to enforce Section 304.

Plaintiff first argues that "the plain text of § 304 sets forth a private remedy for a corporation . . . to recover illicitly-garnered profits from defalcating executives." Opp. 38. But the statutory text says no such thing. Section 304 is silent on who may sue to enforce its provisions, *see* 15 U.S.C. § 7243, which is why the motion to dismiss explained how the statute's structure and legislative history make clear that no private right of action exists, Mot. 18–20. Indeed, Congress's decision *not* to provide an explicit private right of action in Section 304 stands in stark contrast to its statutory neighbor, Section 306, which expressly provides that "[a]n action . . . [under Section 306] may be instituted . . . by the owner of any security of the issuer in the name and in behalf of the issuer." 15 U.S.C. § 7244(a)(2)(B).

Plaintiff appears to believe that a private right of action is created by Section 304's provision that liable officers "shall reimburse the issuer" for compensation covered by the statute. Opp. 38. But this language does not confer a private *remedy* for the issuer to enforce the statute. As the Supreme Court explained in *Gonzaga University v. Doe*, "even where a statute is phrased in . . . explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" 536 U.S. 273, 284 (2002) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)) (emphases in original). This distinction between "private right[s]" and "private remed[ies]," *Sandoval*, 532 U.S. at 286, makes clear that the beneficiary of a congressionally created right might not always have a cause of action to assert that right. Ultimately, the choice of who may

enforce a particular right is made by Congress, which here decided that *only* the SEC may enforce Section 304. *See* Mot. 19 (discussing statutory structure and legislative history).

Finally, Plaintiff claims that a private right of action under Section 304 "has been recognized throughout the country." Opp. 38. This claim is refuted by the fact that "*[e]very* court that has considered the issue directly has concluded that Section 304 contains no implied private right of action." *In re Digimarc Corp. Deriv. Litig.*, No. 05-1324-HA, 2006 WL 2345497, at *2 (D. Or. Aug. 11, 2006) (emphasis added); *see also In re iBasis, Inc. Deriv. Litig.*, No. 06-12276-DPW, 2007 WL 4287591, at *9 (D. Mass. Dec. 4, 2007) (same).[8] None of the cases that Plaintiff cites even *considered* whether Section 304 provides a private right of action, let alone held that it does. *Reina v. Tropical Sportswear International* did not mention Section 304 except in its summary of the plaintiff's claims; its analysis was limited to other issues. *See* No. 8:03-cv-1958-T-23TGW, 2005 U.S. Dist. LEXIS 6129, at *24 (M.D. Fla. Apr. 4, 2005). In *In re AFC Enterprises, Inc. Derivative Litigation*, the court never considered whether Section 304 provides a private right of action; the issue before the court was whether Section 304 applies retroactively to conduct that occurred before Sarbanes-Oxley was enacted—and the court declined to resolve

---

[8] Numerous other cases have held that Section 304 does not provide a private right of action. *See In re Infosonics Corp. Deriv. Litig.*, No. 06cv1336 BTM(WMc), 2007 WL 2572276, at *8–*9 (S.D. Cal. Sept. 4, 2007); *In re Goodyear Tire & Rubber Co. Deriv. Litig.*, Nos. 5:03CV2180 *etc.*, 2007 WL 43557, at *7 (N.D. Ohio Jan. 5, 2007); *Kogan v. Robinson*, 432 F. Supp. 2d 1075, 1082 (S.D. Cal. 2006); *In re Whitehall Jewellers, Inc. S'holder Deriv. Litig.*, No. 05 C 1050, 2006 WL 468012, at *8 (N.D. Ill. Feb. 27, 2006); *In re BISYS Group Inc. Deriv. Action*, 396 F. Supp. 2d 463, 464 (S.D.N.Y. 2005); *Neer v. Pelino*, 389 F. Supp. 2d 648, 657 (E.D. Pa. 2005); *Mehlenbacher ex rel. Asconi Corp. v. Jitaru*, No. 6:04CV1118ORL-22KRS, 2005 WL 4585859, at *10 (M.D. Fla. June 6, 2005). Others have expressed skepticism that a private right of action exists. *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 189 (4th Cir. 2007); *In re Friedman's, Inc. Deriv. Litig.*, 386 F. Supp. 2d 1355, 1368 n.20 (N.D. Ga. 2005); *In re Cree, Inc. Sec. Litig.*, No. 1:03CV00549, 2005 WL 1847004, at *15 (M.D.N.C. Aug. 2, 2005); *In re Interpublic Sec. Litig.*, Nos. 02 Civ. 6527(DLC) & 03 Civ. 1194(DLC), 2004 WL 2397190, at *9 (S.D.N.Y. Oct. 26, 2004).

even that preliminary issue "at this early stage of the litigation without a developed factual record." 224 F.R.D. 515, 521 (N.D. Ga. 2004). Finally, *In re Qwest Communications International, Inc. Securities Litigation* did not hold that an issuer could seek reimbursement under the statute, but rather that a shareholder could *not* do so. 387 F. Supp. 2d 1130, 1150 (D. Colo. 2005). In short, the only authority on the question before this Court holds that Section 304 does not confer a private right of action.

## II.  The Amended Complaint Should Be Dismissed Because Plaintiff Fails To Plead Standing.

To bring a derivative claim on behalf of a corporation, a plaintiff must allege that he "was a shareholder . . . at the time of the transaction complained of." Fed. R. Civ. P. 23.1(b)(1). Plaintiff is incorrect to argue that the exact date of his stock purchase need not be alleged. Opp. 18. The decision he cites to support this proposition, *Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984), is not even a federal case. In any event, *Lewis* states only the general proposition that the plaintiff must allege he was a shareholder, but it does not address precisely what facts he must allege. *Id.* at 1045 n.7. By contrast, *VeriSign* specifically addressed this issue and held that a plaintiff must allege the exact date he purchased the stock and whether he has continuously owned that stock from the time of purchase until the present. *In re VeriSign, Inc., Deriv. Litig.*, No. C 06-4165 PJH, 2007 U.S. Dist. LEXIS 72341, at *70–*71 (N.D. Cal. Sept. 14, 2007); *see also Haw. Laborers Pension Fund v. Farrell*, No. CV 06-06935 ODW (FMOx), 2007 U.S. Dist. LEXIS 77777, at *31 (C.D. Cal. Aug. 22, 2007) ("Plaintiff is advised to plead with particularity when it first purchased stock, if and whether it maintained its ownership throughout the complained of events, and whether it currently owns shares of [the company's] stock."). The Amended Complaint does not satisfy this requirement.

Plaintiff tries to circumvent the standing requirement by invoking the "continuing harm doctrin[e]," Opp. 20, which some courts have used to modify Rule 23.1's continuous ownership requirement where the alleged wrong extends before and during the plaintiff's ownership of the stock, *Bateson v. Magna Oil Corp.*, 414 F.2d 128, 130 (5th Cir. 1969).  Several other courts have declined to apply this doctrine.  *See*, *e.g.*, *Kaliski v. Bacot (In re Bank of N.Y. Deriv. Litig.)*, 320 F.3d 291, 298 (2d Cir. 2003).  But in any event, the continuing-harm rule is inapplicable to back-dating claims because option grants are discrete events, not a continuing wrong.  *See In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1009 (N.D. Cal. 2007) ("[E]ach grant of backdated stock options was an integrated transaction unto itself."); *In re Maxim Integrated Prods., Inc., Deriv. Litig.*, No. C 06-03344 JW, 2007 U.S. Dist. LEXIS 70763, at *13–*14 (N.D. Cal. July 25, 2007) (same); *Conrad v. Blank*, C.A. No. 2611-VCL, 2007 Del. Ch. LEXIS 130, at *31–*37 (Sept. 7, 2007) (declining to apply the doctrine to a similar Delaware rule requiring contempora-neous ownership); *Ryan v. Gifford*, 918 A.2d 341, 358–59 (Del. Ch. 2007) (same).  This Court should likewise reject Plaintiff's attempt to bypass Rule 23.1's standing requirement.

### III.    Plaintiff Fails To Show Demand Futility.

The opposition brief raises no serious dispute that the *Rales* test governs whether Plaintiff may be excused from his failure to satisfy the pre-suit demand requirement.[9]  *See Rales v. Blas-band*, 634 A.2d 927, 934 (Del. 1993).  To satisfy *Rales*, Plaintiff must plead "'*particularized fac-*

---

[9]  In a footnote, Plaintiff contends that the *Aronson* test might be applicable merely because proxy statements were issued through "full Board action."  Opp. 9 n.8.  But as explained in the motion to dismiss, the proxy statements provide no basis for Plaintiff's claims.  Mot. 12–16; *supra* Part I.B–C.  Plaintiff does not argue that "full Board action" resulted in backdating, nor does he deny that the *Rales* test applies to his claims of backdating.  Rather than dispute the *Rales* test, Plaintiff distorts it by arguing that its adoption waives the protections of the business judgment rule.  Opp. 9 n.8, 18.  But the business judgment rule applies unless Plain-tiff *concedes* that the directors did not approve any backdating:  Any action that the full board or any individual director or officer took is protected by the business judgment rule.

*tual allegations* [that] create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'" *In re Fed. Nat'l Mortgage Ass'n Sec., Deriv., & 'ERISA' Litig.*, 503 F. Supp. 2d 9, 16–17 (D.D.C. 2007) ("*Fannie Mae I*") (quoting *Rales*, 634 A.2d at 934) (emphasis added). Plaintiff argues that the Amended Complaint meets this test by showing that a majority of the board faces "substantial likelihood of liability," either from granting or receiving backdated stock options. Opp. 10–18. Although ePlus does not dispute that errors were made in the issuance of certain stock options—indeed, it restated its financial statements to correct these errors—the Amended Complaint fails to satisfy the onerous burden necessary for an individual investor to usurp the board's authority to decide whether litigation serves the Company's best interests.[10]

### A.    Plaintiff Fails To Show A Substantial Risk of Liability For Granting Options.

The motion to dismiss explained that Plaintiff failed to plead particularized allegations showing a substantial likelihood of director liability for granting improper options. Mot. 25–30. For the reasons stated in that motion and above, Defendants face no liability for such conduct under any federal cause of action. *See* Mot. 5–20; *supra* Part I.

Even if the Director Defendants *carelessly* allowed stock options to be misdated, they are absolutely shielded from liability by the Company's certificate of incorporation. Mot. 36–38 (explaining that the exculpatory charter provision eliminates liability for breach of the duty of

---

[10] Plaintiff argues that once demand futility has been established for *any* of his claims, this Court need not engage in any further analysis. Opp. 10 n.11. But "[p]re-suit demand futility analysis must be conducted for *each* claim in a stockholder derivative action." *Needham v. Cruver*, Civ. A. Nos. 12,428 & 12,430, 1993 Del. Ch. LEXIS 76, at *9–*10 (May 12, 1993) (emphasis added). Thus, this Court must determine for *each* claim in the Amended Complaint whether Plaintiff has properly alleged that demand is futile.

care).  Plaintiff responds that this Court may not consider the certificate of incorporation in ruling on the motion to dismiss.  Opp. 35.  But Plaintiff himself cites a Delaware Supreme Court case holding the contrary:  "[W]here the factual basis for a claim *solely* implicates a violation of the duty of care . . . the protections of such a charter provision may properly be invoked and applied" in a motion to dismiss.  *Emerald Partners v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999).

Thus, Plaintiff's claims related to the *granting* of stock options can overcome the demand requirement only if they demonstrate (through particularized allegations) a substantial likelihood of liability for conduct unprotected by the certificate of incorporation: breaching the duty of loyalty or good faith.  As explained in *Desimone v. Barrows*, such culpable conduct in the backdating context would "likely require" that the relevant directors "*knew* that the options violated the stock option plan and that the options were being accounted for in a manner that was improper, or that their failure to obtain that information resulted from their *knowing* abdication of their directorial duties."  924 A.2d 908, 933 (Del. Ch. 2007) (emphases added; footnote omitted).  But the Amended Complaint pleads no "particularized factual allegations 'detailing the precise roles that these directors played at the company, the information that would have come to their attention in these roles, and any indication as to why they would have perceived the [wrongdoing].'"  *VeriSign*, 2007 U.S. Dist. LEXIS 72341, at *41 (quoting *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003)) (alteration in original).  Plaintiff merely asserts that the Director Defendants had "ample opportunity to discuss" ePlus's accounting issues with one another.  FAC ¶ 51.  These allegations do not plead a breach of the duty of loyalty or good faith with the requisite particularity and therefore do not negate the protection of the certificate of incorporation.  *See Malpiede v. Townson*, 780 A.2d 1075, 1093-94 (Del. 2001) ("Because we have determined that the complaint

fails properly to invoke loyalty and bad faith claims, we are left with only a due care claim.  Defendants had the obligation to raise the bar of Section 102(b)(7) as a defense, and they did.").

Having failed to plead particularized allegations that Defendants knowingly or culpably backdated options, Plaintiff seeks instead to create a *per se* rule of liability for *any* member of a board committee involved with accounting or compensation.  This Court has recognized that a substantial likelihood of liability cannot be established simply through committee membership.  *Fannie Mae I*, 503 F. Supp. 2d at 18–19; *see also Fannie Mae II*, 503 F. Supp. 2d at 40–41.  And other federal courts considering backdating claims have similarly held that a plaintiff cannot escape the demand requirement by alleging membership on a compensation or audit committee.  In *VeriSign*, for instance, the plaintiffs alleged that membership on various committees demonstrated a substantial likelihood of liability, 2007 U.S. Dist. LEXIS 72341, at *45–*48, but the court dismissed these allegations as "conclusory" and held that "mere membership on a committee or board, without specific allegations as to defendants' roles and conduct, is insufficient to support a finding that the directors were conflicted."  *Id.* at *47 (internal quotation marks omitted); *see also id.* at *48 (without particularized factual allegations, there is "no basis for inferring that the members of the Audit Committee had any knowledge of the alleged backdating, or any knowledge of deficiencies in the Company's public filings"); *In re F5 Networks, Inc.*, No. C06-794RSL, 2007 WL 2476278, at *13 (W.D. Wash. Aug. 6, 2007) ("Plaintiffs' allegations that because [certain director defendants] were on the Compensation Committee and Audit Committee, they must have known [about alleged backdating], 'do not constitute particularized facts.'" (quoting *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007)).[11]  Without

---

[11] Plaintiff relies primarily on a footnote from *Ryan v. Gifford*, one of the earliest published decisions regarding backdating allegations.  Opp. 13–14.  But unlike in *Ryan*, it is unclear from

[Footnote continued on next page]

specific allegations of knowledge, Plaintiff's allegations, "at best, rise to the level of negligence," *Fannie Mae II*, 503 F. Supp. 2d at 40–41, and therefore cannot overcome the demand requirement.

**B.    Plaintiff Fails To Show A Substantial Risk of Liability For Receiving Backdated Options.**

Plaintiff also alleges that certain Directors face a substantial likelihood of liability because they *received* allegedly backdated options. Opp. 15–16. Plaintiff pleads that nine grants are suspicious because they were issued "at or near a periodic low in the trading price of ePlus stock." FAC ¶ 155. But Plaintiff has not established a reasonable basis for comparison: He has not pleaded any allegations regarding how often options were granted to management or how those options were priced. *See In re Linear Tech. Corp. Deriv. Litig.,* No. C-06-3290 MMC, 2006 U.S. Dist. LEXIS 90986, at *9 (N.D. Cal. Dec. 7, 2006) (dismissing a complaint in which plaintiffs similarly provided no facts as to "how often and at what times the Committee Defendants have granted stock options in the past"). Plaintiff cannot plead a pattern of backdating simply by showing that a handful of cherry-picked options performed well.

---

[Footnote continued from previous page]

the facts alleged here that the Compensation Committee—Messrs. Cooper, Herman, O'Donnell, and Faulders—"made every single decision in granting options." *In re CNET*, 483 F. Supp. 2d at 965 (recognizing that "board members may not know the exact date on which a grant was finalized because the committee delegated that authority"). Disclosures on which Plaintiff expressly relies for his allegations cast doubt on his assertion that the Compensation Committee administered stock option grants. *See* Pl.'s Req. Jud. Notice, Ex. 1, at 7 (stating that, "[i]n practice," the Stock Incentive Committee rather than the full Compensation Committee "continued to administer the awards" even after adoption of the 1998 Long-Term Incentive Plan). Moreover, to the extent *Ryan* suggests that Delaware courts apply a more liberal pleading standard than federal law permits, it is irrelevant: "A complaint in a derivative suit must meet the procedural requirements of Rule 23.1 of the Federal Rules of Civil Procedure." *Fannie Mae I*, 503 F. Supp. 2d at 14; *see also In re PMC-Sierra, Inc. Deriv. Litig.*, No. C 06-05330 RS, 2007 WL 2427980, at *2 n.2 (N.D. Cal. Aug. 22, 2007) ("Delaware law, by definition, does not govern federal court procedure.").

Although Plaintiff correctly notes that ePlus has disclosed accounting errors in its issuance of options, Plaintiff has not met the heavy burden of showing that half of the current board is unable to evaluate whether the Company's best interests are served by litigating his claims. Three of the eight current directors—Messrs. Cooper, Hovde, and Beimler—are not alleged to have received *any* backdated options. One other—Mr. Bowen—is alleged to have received such options only in 2004, FAC ¶ 77, but (as the motion to dismiss pointed out) these options were cancelled more than two months before Plaintiff moved to amend his Complaint, Mot. 41. Plaintiff's analysis of hand-picked option grants simply fails to demonstrate that all of the remaining directors are incapable of evaluating a proper pre-suit demand.[12] As *VeriSign* made clear, "the issue raised in this motion is not the propriety or legality of backdating options, but whether plaintif[f], by pleading particularized facts . . . ha[s] overcome the presumption of good faith accorded to directors." 2007 U.S. Dist LEXIS 72341, at *32. Because Plaintiff has failed to meet his pleading burden under Rule 23.1, his Amended Complaint must be dismissed.

## IV.    Plaintiff Has Insufficiently Pleaded His State-Law Claims.

Plaintiff's opposition does not attempt to rebut many of Defendants' grounds for dismissing the state-law claims. He does not defend, for instance, his accounting and rescission claims.

---

[12] For example, Plaintiff also has not pleaded with the requisite particularity that Mr. Norton is interested. Mr. Norton is alleged to have received "suspicious" grants on two dates: November 16, 2004 and February 5, 1998. FAC ¶¶ 64, 77. The 2004 options have been cancelled, Mot. 41, and Plaintiff does not sufficiently allege that the 1998 options benefited Mr. Norton. Plaintiff alleges that the 1998 options were granted with an exercise price of $12.65, FAC ¶ 64, but this is well above the $10.70 closing price of ePlus's shares on the day Plaintiff filed the original complaint. Because Plaintiff also has not alleged that Mr. Norton exercised these options for a profit *before* the suit was filed, he has not pleaded any conflict "at the time this action was filed," *Rales*, 634 A.2d at 937. As at least one court has held, applying Maryland law, directors are not "financially interested and thus, conflicted" when they "never exercised their options, and prior to the commencement of [a derivative] action, the stock price fell below the exercise price for" the disputed options. *Infosonics*, 2007 WL 2572276, at *7.

Mot. 32, 41. He does not deny that his abuse of control, gross mismanagement, and constructive fraud claims are "breach of fiduciary duty" claims in another guise. Mot. 38–39. And he does not dispute that one cannot breach his duty while simultaneously abetting that breach. Mot. 34 n.19. Accordingly, Counts VI through XI should be dismissed. *See Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded . . . .").

Finally, while Plaintiff claims that it is "improper" for this Court to consider ePlus's certificate of incorporation at this stage of the case, he is mistaken for the reasons discussed above. *See supra* Part III.A. Consistent with the plain terms of the certificate, all claims that the Director Defendants breached their duty of care should also be dismissed.

## V.    This Court Should Dismiss Any Remaining Claims That Are Time-Barred.

In their motion to dismiss, Defendants demonstrated that many of Plaintiff's federal and state claims are time-barred because they could have been discovered through the exercise of reasonable diligence. Mot. 42–45. Plaintiff's opposition simply reiterates the relevant portions of the Amended Complaint and ignores the fact that publicly available information was sufficient to enable another shareholder to express concerns regarding certain options. FAC ¶ 53. Plaintiff does, however, add a series of legally flawed arguments that the applicable statutes of repose do not bar his federal claims.

Plaintiff's Section 10(b) and 20(a) claims (as well as his Section 304 claim) are barred no later than five years after the alleged violation. 28 U.S.C. § 1658(b). His Section 14(a) claims are barred no later than three years after the alleged violation. *See Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993). Even though Plaintiff has alleged a series of discrete

violations occurring since 1997, he claims that the repose period did not begin to run until July 29, 2005, when ePlus filed the last proxy statement that Plaintiff challenges. Opp. 40–43.

Plaintiff claims that his "last alleged misrepresentation" rule applies because he has alleged a "unified scheme of deceptive conduct." Opp. 40–41. But "[p]leading the existence of a 'scheme' does not resurrect stale claims relating to proxy statements that are more than three years old at the time an action is filed." *Stoll v. Ardizzone*, No. 07 Civ. 00608(CM), 2007 WL 2982250, at *2 (S.D.N.Y. Oct. 9, 2007). For that reason, the "last alleged misrepresentation" rule has repeatedly been rejected in backdating cases—including in the *only* backdating case that Plaintiff cites. *See Zoran*, 511 F. Supp. 2d at 1014 ("[T]he statute of limitations accrues as of when the violation itself occurs, not when the last violation in a series of alleged violations occur.").[13]

For Plaintiff's claims based on alleged backdating, the cases have repeatedly held that "the period of repose starts on the date that the option grant was made." *In re Atmel Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2007 WL 2070299, at *7 (N.D. Cal. July 16, 2007).[14] Plaintiff

---

[13] *See also In re Affiliated Computer Servs. Deriv. Litig.*, No. 3:06-CV-1110-M, 2007 WL 4440920, at *3 (N.D. Tex. Dec. 13, 2007) (rejecting argument that the repose period does not run "until the last alleged misrepresentation was made"); *In re Apple Computer Inc., Deriv. Litig.*, No. C 06-4128 JF, 2007 WL 4170566, at *5 (N.D. Cal. Nov. 19, 2007) (rejecting argument that "the filing of . . . subsequent false financial statements preserves claims for alleged options manipulation that occurred outside the period" of repose); *In re Atmel Corp. Deriv. Litig.*, No. C 06-4592 JF (HRL), 2007 WL 2070299, at *7 (N.D. Cal. July 16, 2007) (rejecting the argument that "the period of repose begins no earlier than the latest such financial statement" even though the plaintiffs "allege[d] a series of false financial statements within the five-year period"); *In re Ditech Networks, Inc. Deriv. Litig.*, No. C 06-5157 JF, 2007 WL 2070300, at *7 (N.D. Cal. July 16, 2007) (same).

[14] *See also Ditech*, 2007 WL 2070300, at *7 ("[T]he period of repose starts on the date that the option grant was made."); *Apple Computer*, 2007 WL 4170566, at *5 ("To the extent that Plaintiffs' claim is based on the backdating itself, the period of repose began to run on the date that the option grant was made."); *Affiliated Computer Servs.*, 2007 WL 4440920, at *3

[Footnote continued on next page]

therefore cannot claim securities violations for options that were granted before January 18, 2002—five years before he filed this suit.

For Plaintiff's claims based on allegedly false statements, the relevant cases hold that the period of repose runs from when the challenged statement is made. *In re Affiliated Computer Servs. Deriv. Litig.*, No. 3:06-CV-1110-M, 2007 WL 4440920, at *4 (N.D. Tex. Dec. 13, 2007) ("A claim under § 10(b) and Rule 10b-5 based on dissemination of false financial statements accrues when the allegedly false or misleading statement was made."); *Stoll*, 2007 WL 2982250, at *2 ("A claim pursuant to § 14(a) must be brought no later than three years after each proxy was issued . . . .").[15]    Accordingly, Plaintiff cannot seek relief under Section 10(b), 20(a), or 304 based on any financial statements made before January 18, 2002, nor may he raise a Section 14(a) claim based on any proxy statement issued before January 18, 2004.

## CONCLUSION

For the foregoing reasons and for the reasons stated in the Motion to Dismiss, Defendants respectfully request that this Court dismiss the Amended Complaint.

---

[Footnote continued from previous page]

("A claim under § 10(b) that is based upon the backdating itself accrues on the date the option grant was made.").

[15] *See also Atmel*, 2007 WL 2070299, at *7 ("[S]uch statements must fall within the five-year period of repose."); *Ditech*, 2007 WL 2070300, at *7 (same); *Apple Computer*, 2007 WL 4170566, at *5 (same).

Dated:  February 4, 2008                    Respectfully Submitted,


                                            /s/ F. Joseph Warin
                                            F. JOSEPH WARIN (DC Bar # 235978)
                                            FWarin@gibsondunn.com
                                            MICHAEL F. FLANAGAN (DC Bar # 435942)
                                            MFlanagan@gibsondunn.com
                                            JASON J. MENDRO (DC Bar # 482040)
                                            JMendro@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
                                            Washington, District of Columbia 20036
                                            Telephone: (202) 955-8500
                                            Facsimile: (202) 467-0539

                                            *Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing ***Reply Memorandum In Support Of Defendants' Motion To Dismiss The First Amended Verified Shareholder Derivative Complaint*** was filed electronically this 4th day of February 2008.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Jason J. Mendro

Jason J. Mendro (DC Bar # 482040)