## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DILORENZO,

                Plaintiff,

        v.                             Civil Action No. 1:07-cv-00144-RJL

NORTON, et al.,

                Defendants.

## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITIES

In preparation for the hearing scheduled for July 22, 2008, Defendants hereby notify the Court of three, relevant cases that were decided after Defendants' motion to dismiss was fully briefed. Each case is attached as an exhibit to this notice.

1. *Wood v. Baum*, __ A.2d __, No. 621, 2007, 2008 WL 2600981, at *3 (Del. July 1, 2008) ("Where directors are contractually or otherwise exculpated from liability for certain conduct, 'then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts.' Where . . . directors are exculpated from liability except for claims based on 'fraudulent,' 'illegal' or 'bad faith' conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." (footnotes and citations omitted; emphasis in original)).

2. *Rudolph v. UTStarcom*, __ F. Supp. 2d__, No. C 07-04578, 2008 WL 1734763, at *6 (N.D. Cal. Apr. 14, 2008) ("[P]laintiff's scienter pleading [for a Section 10(b) claim] is based on numerous factual allegations, many of which cannot support—either alone or taken collectively—an inference of scienter. For instance, plaintiff relies on the company's admission in its restatement that some options had been backdated, defendants' responsibility for approving stock

option grants, defendants' certification of the company's financial reports, and defendants' receipt and exercise of backdated stock options. . . .  [N]one of these factual allegations is cogent and compelling because each could equally support the inference that stock options had been backdated through innocent bookkeeping error."  (citations omitted)).

       3.     *In re Diebold Deriv. Litig.*, Nos. 5:06CV0233 & 5:06CV0418, 2008 WL 564824, at *2 (N.D. Ohio Feb. 29, 2008) ("Every court that has considered whether SOX § 304 provides a private right of action has answered that question in the negative.").

Dated:  July 15, 2008

Respectfully submitted,

/s/ F. Joseph Warin
F. JOSEPH WARIN (DC Bar # 235978)
FWarin@gibsondunn.com
MICHAEL F. FLANAGAN (DC Bar # 435942)
MFlanagan@gibsondunn.com
JASON J. MENDRO (DC Bar # 482040)
JMendro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, District of Columbia 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing ***Defendants' Notice Of Supplemental Authorities*** was filed electronically this 15th day of July 2008.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Jason J. Mendro

Jason J. Mendro (DC Bar # 482040)

--- A.2d ----                                                                                    Page 1
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
**(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))**

Wood v. Baum
Del.Supr.,2008.
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RE-
LEASED FOR PUBLICATION IN THE PER-
MANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAW-
AL.

Supreme Court of Delaware.
Paddy WOOD, Plaintiff Below, Appellant,
v.
Charles C. BAUM, Richard O. Berndt, Eddie C.
Brown, Michael L. Falcone, Robert S. Hillman,
Mark K. Joseph, Barbara B. Lucas, Douglas A. Mc-
Gregor, Arthur S. Mehlman, and Fred N. Pratt, Jr.,
Defendants Below, Appellees,
andMunicipal Mortgage & Equity, LLC, a
Delaware corporation, Nominal Defendant Below,
Appellee.
**No. 621, 2007.**

Submitted: May 21, 2008.
Decided: July 1, 2008.

**Background:** Plaintiff brought derivative action
against current members of board of directors of
Delaware limited liability company (LLC), five of
whom were also members of LLC's audit commit-
tee, and against one former director, alleging
breach of fiduciary duty and breach of *Caremark*
duties regarding accounting and reporting controls.
The Court of Chancery dismissed the complaint,
based on failure to allege particularized facts suffi-
cient to establish that presuit demand on board
would have been futile. Plaintiff appealed.

**Holding:** The Supreme Court, Jacobs, J., held that
plaintiff did not plead with particularity that direct-
ors, who under LLC's operating agreement were ex-
empted from all personal liability except in cases of
fraudulent or illegal conduct, acted with scienter, as
would be required to create reasonable doubt that

majority of directors would have been capable of
considering a presuit demand because of substantial
likelihood of personal liability.

Affirmed.

**[1] Appeal and Error 30 ☞893(2)**

30 Appeal and Error
    30XVI Review
        30XVI(F) Trial De Novo
            30k892 Trial De Novo
                30k893 Cases Triable in Appellate
Court
                    30k893(2) k. Equitable Proceed-
ings. Most Cited Cases
Supreme Court's review of a Court of Chancery de-
cision dismissing a shareholder derivative suit,
based on plaintiff's failure to allege particularized
facts sufficient to establish that presuit demand on
corporation's board of directors would have been
futile, is de novo and plenary. Chancery Court Rule
23.1.

**[2] Corporations 101 ☞211(5)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of
Corporation
            101k211 Pleading
                101k211(5) k. Excuse for Failure to
Allege Demand. Most Cited Cases
On motion to dismiss shareholder derivative suit,
based on plaintiff's failure to allege particularized
facts sufficient to establish that presuit demand on
corporation's board of directors would have been
futile, the court should draw all reasonable infer-
ences in plaintiff's favor, but such reasonable infer-
ences must logically flow from particularized facts
alleged by the plaintiff, and inferences that are not
objectively reasonable cannot be drawn in
plaintiff's favor. Chancery Court Rule 23.1.

**[3] Corporations 101 ☞211(5)**

--- A.2d ----
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
**(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))**

101 Corporations
    101IX Members and Stockholders
      101IX(C) Suing or Defending on Behalf of Corporation
        101k211 Pleading
          101k211(5) k. Excuse for Failure to Allege Demand. Most Cited Cases

Conclusory allegations are not considered as expressly pleaded facts or factual inferences, on a motion to dismiss shareholder derivative suit, based on plaintiff's failure to allege particularized facts sufficient to establish that presuit demand on corporation's board of directors would have been futile. Chancery Court Rule 23.1.

**[4] Corporations 101 ☞206(2)**

101 Corporations
    101IX Members and Stockholders
      101IX(C) Suing or Defending on Behalf of Corporation
        101k206 Refusal of Corporation, Officers, or Stockholders to Act
          101k206(2) k. Necessity of Demanding Action. Most Cited Cases

**Corporations 101 ☞206(4)**

101 Corporations
    101IX Members and Stockholders
      101IX(C) Suing or Defending on Behalf of Corporation
        101k206 Refusal of Corporation, Officers, or Stockholders to Act
          101k206(4) k. Excuse for Failure to Demand. Most Cited Cases

A stockholder may not pursue a derivative suit to assert a claim of the corporation unless: (1) the stockholder has first demanded that the directors pursue the corporate claim and the directors have wrongfully refused to do so, or (2) the stockholder establishes that presuit demand is excused because the directors are deemed incapable of making an impartial decision regarding the pursuit of the litigation. Chancery Court Rule 23.1.

**[5] Corporations 101 ☞320(8)**

101 Corporations
    101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
        101k320 Actions Between Shareholders and Officers or Agents
          101k320(8) k. Allegations as to Right to Sue. Most Cited Cases

To determine the sufficiency of shareholder derivative complaint to withstand dismissal based on failure to allege particularized facts sufficient to establish that presuit demand on corporation's board of directors would have been futile, the *Aronson* test, applicable to claims involving a contested transaction i.e., where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties, requires plaintiff to allege particularized facts creating a reason to doubt: (1) that directors are disinterested and independent, or (2) that challenged transaction was otherwise the product of valid exercise of business judgment. Chancery Court Rule 23.1.

**[6] Corporations 101 ☞320(8)**

101 Corporations
    101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
        101k320 Actions Between Shareholders and Officers or Agents
          101k320(8) k. Allegations as to Right to Sue. Most Cited Cases

To determine the sufficiency of shareholder derivative complaint to withstand dismissal based on failure to allege particularized facts sufficient to establish that presuit demand on corporation's board of directors would have been futile, the *Rales* test, applicable where the subject of a derivative suit is a violation of board's oversight duties, requires that plaintiff allege particularized facts establishing a reason to doubt that the board could have properly exercised its independent and disinterested business judgment in responding to a demand. Chancery

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Court Rule 23.1.

**[7] Corporations 101 ⌫206(4)**

101 Corporations
   101IX Members and Stockholders
      101IX(C) Suing or Defending on Behalf of Corporation
         101k206 Refusal of Corporation, Officers, or Stockholders to Act
            101k206(4) k. Excuse for Failure to Demand. Most Cited Cases

Mere threat of directors' personal liability is insufficient to create a reasonable doubt that majority of directors would have been capable of considering a presuit demand, so that a demand before filing shareholder derivative suit would have been futile; rather, such reasonable doubt is created only where a substantial likelihood of personal liability exists. Chancery Court Rule 23.1.

**[8] Corporations 101 ⌫320(8)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
         101k320 Actions Between Shareholders and Officers or Agents
            101k320(8) k. Allegations as to Right to Sue. Most Cited Cases

Where directors are exculpated from personal liability except for claims based on fraudulent, illegal, or bad faith conduct, a plaintiff, in order to create reasonable doubt that a majority of directors would have been capable of considering a presuit demand, so that a demand before filing shareholder derivative suit would have been futile, must plead particularized facts that demonstrate that directors acted with "scienter," i.e., that they had actual or constructive knowledge that their conduct was legally improper. Chancery Court Rule 23.1.

**[9] Limited Liability Companies 241E ⌫48**

241E Limited Liability Companies

   241Ek44 Actions
      241Ek48 k. Derivative Suits. Most Cited Cases

Plaintiff did not plead with particularity that directors of Delaware limited liability company (LLC), who under LLC's operating agreement were exempted from all personal liability except in cases of fraudulent or illegal conduct, acted with scienter, as would be required to create reasonable doubt that majority of directors would have been capable of considering a presuit demand because of substantial likelihood of personal liability, so that a demand before filing derivative suit would have been futile, as to suit alleging directors breached their fiduciary duties by improperly valuing certain non-performing assets, by making improper charitable contributions, some of which were related-party transactions, and by causing LLC to execute related-party transactions that inflated LLC's performance, and that directors breached *Caremark* duties regarding accounting and reporting controls; complaint did not even purport to plead fraud and instead made non-particularized allegations that directors made "affirmative misrepresentations" and "actively condoned and facilitated a campaign of deceit," and complaint merely alleged violations of federal securities and tax laws, that board approved of related-party transactions, and that some board members were also members of LLC's audit committee, without pleading with particularity the specific conduct in which each director knowingly engaged or that each director knew that such conduct was illegal. 6 West's Del.C. § 18-1101(e); Chancery Court Rule 23.1.

**[10] Corporations 101 ⌫310(1)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
         101k310 Management of Corporate Affairs in General
            101k310(1) k. In General. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Under Delaware law, board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors, as basis for their personal liability.

**[11] Corporations 101 ☞310(1)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
         101k310 Management of Corporate Affairs in General
            101k310(1) k. In General. Most Cited Cases
The implied covenant of good faith and fair dealing is a creature of contract, distinct from the fiduciary duties owed by a director of a corporation.

**[12] Corporations 101 ☞310(1)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
         101k310 Management of Corporate Affairs in General
            101k310(1) k. In General. Most Cited Cases
The implied covenant of good faith and fair dealing functions to protect stockholders' expectations that the corporation and its board of directors will properly perform the contractual obligations they have under the operative organizational agreements.

Court Below: Court of Chancery of the State of Delaware, C.A. No. 2404.
Upon Appeal from the Court of Chancery. **AF-FIRMED.**
Carmella P. Keener, Esquire, of Rosenthal, Monhait & Goddess, P.A ., Wilmington, Delaware; Of Counsel: Christopher S. Hinton, Esquire (argued), of The Hinton Law Firm, New York, New York; for Appellant.

Kenneth J. Nachbar, Esquire, of Morris, Nichols,

Arsht & Tunnell LLP, Wilmington, Delaware; Of Counsel: James B. Weidner, Esquire, of Clifford Chance U.S. LLP, New York, New York; Jon R. Roellke (argued), and Anthony R. Van Vuren, Esquires of Clifford Chance U.S. LLP, Washington, D.C.; for Appellees.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice.
**\*1** Paddy Wood, the plaintiff below, appeals from the dismissal by the Court of Chancery of her derivative action on behalf of Municipal Mortgage & Equity, LLC ("MME"). For the reasons set forth, we affirm.

*FACTS*

MME, a Delaware limited liability company with its principal place of business in Baltimore, Maryland, "provides debt and equity financing to various parties, invests in tax-exempt bonds and other housing-related debt and equity investments, and is a tax credit syndicator that acquires and transfers low-income housing tax credits."MME has a ten-member Board of directors, of which two are inside directors. MME's Amended and Restated Certificate of Formation and Operating Agreement (the "Operating Agreement") exempts directors from any liability "except in the case of fraudulent or illegal conduct of such person."[FN1]

Plaintiff's complaint, filed on September 7, 2006, named as defendants the ten then-current members of MME's Board and one former director. Five of the defendants were also members of MME's Audit Committee. On October 20, 2006, the defendants moved under Court of Chancery Rule 23.1[FN2] to dismiss the initial complaint, for failure to make a pre-suit demand on the Board. Plaintiff subsequently filed an amended complaint (the "Complaint") under Court of Chancery Rule 15(aaa).[FN3] The Complaint set forth a myriad of allegations that are fairly summarized as follows:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
**(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))**

(a) The defendants breached their fiduciary duties by causing MME to improperly value certain non-performing assets in violation of MME's internal policies, GAAP and SEC standards, in particular Financial Accounting Standard 115 ("FAS 115"). As a result, MME issued false financial statements concerning the value and performance of those assets.

(b) The defendants breached their fiduciary duties by causing MME to make improper charitable contributions, some of which were related-party transactions. The beneficiaries used those contributions to service debt held by MME, thereby concealing the deterioration of MME's tax-exempt bond portfolio.

(c) The defendants breached their fiduciary duties by causing MME to execute a series of "related party transactions involv[ing] transfers of the securitized property via deeds in lieu of foreclosures from affiliated companies followed by near simultaneous resales of the same property at enormous profits." The effect was significantly to inflate MME's financial performance.

(d) The defendants breached their *Caremark* duties FN4 by "fail[ing] properly to institute, administer and maintain adequate accounting and reporting controls, practices and procedures," which resulted in a "massive restatement process, an SEC investigation, and loss of substantial access to financial markets."

On March 21, 2007 and April 10, 2007, the defendants renewed their motion to dismiss the Complaint. After oral argument, the Court of Chancery, ruling from the bench, dismissed the Complaint for failure to allege particularized facts sufficient to establish that demand on the Board would have been futile. The Court of Chancery noted that "though the complaint is 80-some pages long and is a model of prolixity, it fails to state any basis on which the Court could reasonably conclude that the demand futility standard is met." This appeal followed.

*ANALYSIS*

**\*2** [1][2][3] Our review of a Court of Chancery decision dismissing a derivative suit under Court of Chancery Rule 23.1 is *de novo* and plenary. FN5 "The Court should draw all *reasonable* inferences in the plaintiff's favor. Such reasonable inferences must logically flow from particularized facts alleged by the plaintiff. '[C]onclusory allegations are not considered as expressly pleaded facts or factual inferences.' Likewise, inferences that are not objectively reasonable cannot be drawn in the plaintiff's favor." FN6

[4] A stockholder may not pursue a derivative suit to assert a claim of the corporation unless the stockholder: (a) has first demanded that the directors pursue the corporate claim and the directors have wrongfully refused to do so; or (b) establishes that pre-suit demand is excused because the directors are deemed incapable of making an impartial decision regarding the pursuit of the litigation. FN7 Having failed to make a pre-suit demand upon MME's Board, plaintiff must establish demand futility.

[5][6] The controlling legal standard for determining the sufficiency of a complaint to withstand dismissal based on a claim of demand futility under Court of Chancery Rule 23.1 is well-established. Two tests are available to determine whether demand is futile. The *Aronson* test applies to claims involving a contested transaction *i.e.,* where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties. That test requires that the plaintiff allege particularized facts creating a reason to doubt that "(1) the directors are disinterested and independent [or that] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." FN8 Only the second (and alternative) prong is implicated here because the plaintiff does not contest that a majority of the Board is generally independent and disinterested (except as discussed below). The second (*Rales* ) test applies where the subject of a derivative suit is not a business de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
**(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))**

cision of the Board but rather a violation of the Board's oversight duties. The *Rales* test requires that the plaintiff allege particularized facts establishing a reason to doubt that "the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."FN9

[7] To satisfy either test, a plaintiff must "comply with stringent requirements of factual particularity" of Court of Chancery Rule 23. 1.FN10 Here, the plaintiff attempted to create a "reasonable doubt" that the Board would have properly exercised its business judgment by alleging that the Board was disabled because of a substantial risk of personal liability.FN11 In evaluating that claim, it must be kept in mind that the exculpation provision contained in MME's Operating Agreement exempts MME's directors from all liability except in case of "fraudulent or illegal conduct." Section 18-1101(e) of the Delaware Limited Liability Company Act ("LLCA") allows a limited liability company, such as MME, to "provide for the limitation or elimination of any and all liabilities ... for breach of duties (including fiduciary duties) of a [director]," except that the LLC "may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."FN12 Therefore, under the Operating Agreement and the LLCA, the MME directors' exposure to liability is limited to claims of "fraudulent or illegal conduct," or "bad faith violation[s] of the implied contractual covenant of good faith and fair dealing."

**\*3** [8][9] Where directors are contractually or otherwise exculpated from liability for certain conduct, "then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts."FN13 Where, as here, directors are exculpated from liability except for claims based on "fraudulent," "illegal" or "bad faith" conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter,

*i.e.,* that they had "actual or constructive knowledge" that their conduct was legally improper.FN14 Therefore, the issue before us is whether the Complaint alleges particularized facts that, if proven, would show that a majority of the defendants knowingly engaged in "fraudulent" or "illegal" conduct or breached "in bad faith" the covenant of good faith and fair dealing. We conclude that the answer is no.

First, plaintiff has not pled with particularity any claim based on fraudulent conduct. The Complaint does not even purport to state a cause of action for fraud, let alone plead the specific facts required to support such a claim. Instead, the Complaint only alleges conclusorily that the defendants made "affirmative misrepresentations" and "actively condoned and facilitated a campaign of deceit."Such assertions are insufficient to state an actionable claim for fraud.FN15

Second, the Complaint alleges many violations of federal securities and tax laws but does not plead with particularity the specific conduct in which each defendant "knowingly" engaged, or that the defendants knew that such conduct was illegal.FN16Before oral argument, this Court directed the plaintiff to identify "the particularized pleaded facts that, if true, would establish that the directors had actual or constructive knowledge that the various acts or omissions complained of were wrongful ... [and] the paragraph[s] of the [C]omplaint where such knowledge is specifically alleged."The facts plaintiff identified in response to that request fell into four main categories: (a) the defendants executed MME's annual reports and other publicly filed financial reports; (b) the defendants authorized certain transactions; (c) five of the defendants served on MME's Audit Committee; and (d) other "red flags." None of the acts identified by plaintiff establish that the directors knowingly participated in illegal conduct.

[10] The Board's execution of MME's financial reports, without more, is insufficient to create an inference that the directors had actual or constructive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
**(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))**

notice of any illegality.[FN17] Plaintiff contends that the Court of Chancery should have inferred that the Board "had knowledge of certain transactions because [the Board] had to authorize the transactions." Specifically, plaintiff argues, such knowledge should be inferred because the alleged transactions were "related party transactions" that the Board was required to approve under MME's Operating Agreement. Delaware law on this point is clear: board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors.[FN18] We conclude that the Court of Chancery correctly applied Delaware law in declining to infer from the Board's approval either that (i) each member of the Board knew that the alleged transactions were improper or that (ii) the Board consciously and in bad faith failed to discharge fiduciary or contractual responsibilities with respect to those transactions.

**\*4** Plaintiff also asserts that membership on the Audit Committee is a sufficient basis to infer the requisite scienter. That assertion is contrary to well-settled Delaware law. In *Rattner v. Bidzos,* for example, the Court of Chancery declined to infer that the directors had a culpable state of mind based on allegations that certain board members served on an audit committee and, as a consequence, should have been aware of the facts on which the plaintiff premised her interpretation of "SEC rules and regulations, and FSAB and GAAP standards."[FN19]

Finally, plaintiff claims that the Board knowingly ignored "red flags."[FN20] Under Delaware law, red flags "are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer."[FN21] Here, the Court of Chancery correctly concluded that there were no cognizable "red flags" from which it could be inferred that the defendants knew that FAS 115 was being improperly applied, or that the defendants otherwise consciously and in bad faith ignored the improprieties alleged in the complaint.

[11][12] Third, the Complaint does not purport to allege a "bad faith violation of the implied contractual covenant of good faith and fair dealing." The implied covenant of good faith and fair dealing is a creature of contract, distinct from the fiduciary duties that the plaintiff asserts here.[FN22] The implied covenant functions to protect stockholders' expectations that the company and its board will properly perform the *contractual* obligations they have under the operative organizational agreements.[FN23] Here, the Complaint does not allege any contractual claims, let alone a "bad faith" breach of the implied contractual covenant of good faith and fair dealing. Nor, as discussed above, does the Complaint contain any particularized allegations that the defendants acted with the requisite scienter (in "bad faith").

This case is but another replay of other similar cases where the plaintiff failed to allege with particularity any facts from which it could be inferred that particular directors knew or should have been on notice of alleged accounting improprieties, and any facts suggesting that the board knowingly allowed or participated in a violation of law.[FN24] In such cases, the failure to allege particularized facts is frequently compounded by a failure to make a statutory "books and records" request concerning the matters alleged and the Board's consideration of such matters.[FN25] Here, plaintiff could have, but chose not to, make a books and records request pursuant to the LLCA.[FN26] Given the broad exculpating provision contained in MME's Operating Agreement, the plaintiff's factual allegations are insufficient to establish demand futility.

### CONCLUSION

For the reasons set forth above, the judgment of the Court of Chancery is affirmed.

> FN1. Section 8.1(a) of the Operating Agreement provides: "No director or officer of the Company shall be liable, responsible, or accountable in damages or otherwise to the Company or any Share-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)
(Cite as: --- A.2d ----, 2008 WL 2600981 (Del.Supr.))

holders for any act or omission performed or omitted by him or her, or for any decision, except in the case of fraudulent or illegal conduct of such person."The corollary indemnification provisions are set out in Section 8.1(b) of the Operating Agreement.

FN2. Ch. Ct. R. 23.1(a) relevantly provides: "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... the complaint shall allege ... with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

FN3. Ch. Ct. R. 15(aaa) relevantly provides: "Notwithstanding subsection (a) of this Rule, a party that wishes to respond to a motion to dismiss under Rule 12(b)(6) or 23.1 by amending its pleading must file an amended complaint ... no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed."

FN4.See In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959 (Del.Ch.1996); Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 364 (Del.2006).

FN5.Brehm v. Eisner, 746 A.2d 244, 253 (Del.2000).

FN6.Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1048 (Del.2004) (citing Brehm, 746 A.2d at 253;White v. Panic, 783 A.2d 543, 549 (Del.2001)) (emphasis in original).

FN7.Id. (citing Rales v. Blasband, 634 A.2d 927, 932 (Del.1993)).

FN8.Aronson v. Lewis, 473 A.2d 805, 814

(Del.1984).

FN9.Rales v. Blasband, 634 A.2d 927, 934 (Del.1993).

FN10.Brehm v. Eisner, 746 A.2d 244, 254 (Del.2000).

FN11. In Aronson, this Court held that "the mere threat of personal liability ... is insufficient to challenge either the independence or disinterestedness of directors" and that a reasonable doubt that a majority of directors is incapable of considering demand should only be found where "a substantial likelihood of personal liability exists."Aronson, 473 A.2d at 814. See also Rales, 634 A.2d at 936;In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268, 1269 (Del.Ch.1995).

FN12.6 Del. C. § 18-1101(e).

FN13.Guttman v. Huang, 823 A.2d 492, 501 (Del.Ch.2003) (citing Baxter, 654 A.2d at 1270) (emphasis in original).Accord, Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 367 (Del.2006).

FN14.See, e.g., Malpiede v. Towson, 780 A.2d 1075 (Del.2001); Emerald Partners v. Berlin, 787 A.2d 85 (Del.2001).See also, e.g., Desimone v. Barrows, 924 A.2d 908, at 933-35 (Del.Ch.2007).

FN15.See, e.g., Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc., 854 A.2d 121, 143-44 (Del.Ch.2004) (discussing the requirements for stating a claim for fraud under Court of Chancery Rule 9 and noting that "[t]he circumstances which shall be stated with particularity in Rule 9(b) refer to the time, place and contents of the false representations, the facts misrepresented, as well as the identity of the person making the misrepresentation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and what he obtained thereby").

FN16.*Rattner v. Bidzos,* 2003 WL 22284323, at *13 (Del. Ch. Ct.) (holding that demand was not excused where the complaint "is quick to prattle off numerous alleged infractions of laws, rules and principles [but never indicates] the accounting procedures employed by the company or the Board's involvement in [the company's] financial recording and reporting systems").*See also Desimone v. Barrows,* 924 A.2d 908, 938-39 (Del.Ch.2007) (board approval of backdated options did not create inference that the directors knew that the options were improper).

FN17.*See, e.g., Guttman v. Huang,* 823 A.2d 492, 498 (Del.Ch.2003) (dismissing complaint that was "devoid of any pleading regarding the full board's involvement in the preparation and approval of the company's financial statements" and of "particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties.")

FN18.*Aronson v. Lewis,* 473 A.2d 805, 814 (Del.1984) (holding that "mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand").

FN19.*Rattner v. Bidzos,* 2003 WL 22284323, at *12-13 (Del. Ch. Ct.) (noting that "conspicuously absent from any of the Amended Complaint's allegations are particularized facts regarding the Company's internal financial controls during the Relevant Period, notably the actions and practices of [the company's] audit committee" and "any facts regarding the Board's in-

volvement in the preparation of the financial statements and the release of financial information to the market," and rejecting plaintiff's asserted inferences where the court was "unable to conclude that a majority of the Board faces a substantial likelihood of liability for failing to oversee [the company's] compliance with required accounting and disclosure standards").

FN20.*See Stone ex rel. AmSouth Bancorporation v. Ritter,* 911 A.2d 362 (Del.2006).

FN21.*In re Citigroup Inc. S'holders Litig.,* 2003 WL 21384599, at *2 (Del. Ch. Ct.).

FN22.*E.I. DuPont de Nemours and Co. v. Pressman,* 679 A.2d 436 (Del.1996); *Blue Chip Capital Fund II Ltd. P'ship v. Tubergen,* 906 A.2d 827, 833 (Del.Ch.2006) (dismissing fiduciary duty claims that overlap with an alleged breach of the implied covenant of good faith and fair dealing).

FN23.*See Gale v. Bershad,* 1998 WL 118022, at *5 (Del.Ch.1998) (holding that "[t]o allow a fiduciary duty claim to coexist in parallel with an implied contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving the essentially contractual rights and obligations of [the] shareholders").

FN24.*See, e.g., Stone v. Ritter,* 911 A.2d 362;*Guttman v. Huang,* 823 A.2d 492 (Del.Ch.2003); *Rattner v. Bidzos,* 2003 WL 22284323;*Desimone v. Barrows,* 924 A.2d 908 (Del.Ch.2007); *In re Citigroup Inc. S'holders e Litig.,* 2003 WL 21384599 (Del. Ch. Ct.); *David B. Shaev Profit Sharing Account v. Armstrong,* 2006 WL 391931 (Del. Ch. Ct.); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 833 A.2d 961 (Del.Ch.2003),

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

845 A.2d 1040 (Del.2004).

FN25.*See, e.g., Desimone,* 924 A.2d at 951 (failure to make a books and records demand rendered plaintiff "unable to plead any facts about what the ... board did, when they did it, what they discussed, what conclusions they reached, and why the board did or did not do anything"); *Beam v. Stewart,* 845 A.2d at 1057 n. 52 ("plaintiff should pursue a books and records inspection in order to secure the facts necessary to support an allegation of demand futility if the factual allegations would otherwise fall short").

FN26.6 *Del. C.* § 18-305 (providing shareholders with certain rights to obtain "information regarding the status of the business and financial condition of [a] limited liability company").

Del.Supr.,2008.
Wood v. Baum
--- A.2d ----, 2008 WL 2600981 (Del.Supr.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 1
--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643
**(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))**

C

Rudolph v. UTStarcom
N.D.Cal.,2008.

United States District Court,N.D. California.
Peter RUDOLPH, individually and on behalf of all
others similarly situated,
v.
UTSTARCOM, Hong Liang Lu, Ying Wu, Michael
Sophie, Francis Barton, and THomas Toy, Defendants.
**No. C 07-04578 SI.**

April 14, 2008.

Christine Pedigo Bartholomew, Mark Punzalan,
Finkelstein Thompson LLP, San Francisco, CA,
Donald J. Enright, Finkelstein Thompson LLP,
Washington, DC, Elizabeth K. Tripodi, Attorney at
Law, Washington, DC, for Plaintiff.
Bahram Seyedin-Noor, Boris Feldman, Cheryl
Weisbard Foung, Terry T. Johnson, Wilson Sonsini
Goodrich & Rosati, Palo Alto, CA, Bryan Jacob
Ketroser, Wilson Sonsini Goodrich & Rosati, San
Francisco, CA, for Defendants.
Ashley Kim, Christopher Lometti, Jay P. Saltzman,
Schoengold Sporn Laitman & Lomett, P.C., New
York, NY, Michael M. Goldberg, Glancy &
Binkow LLP, Los Angeles, CA, for Movant.

**ORDER GRANTING DEFENDANTS' MO-
TION TO DISMISS COMPLAINT**

SUSAN ILLSTON, District Judge.
**\*1** Defendants have filed a motion to dismiss
plaintiff's complaint. The motion is scheduled for
hearing on April 18, 2008. Pursuant to Civil Local
Rule 7-1(b), the Court finds this matter appropriate
for resolution without oral argument, and hereby
VACATES the hearing. Having considered the ar-
guments of the parties and the papers submitted,
and for good cause shown, the Court hereby
GRANTS defendants' motion to dismiss.

**BACKGROUND**[FN1]

This is a securities class action against UTStarcom
and certain of its officers and directors under Sec-
tions 10(b), 14(a), 20(a), Rule 10b-5, and Rule
14a-9 of the Securities Exchange Act of 1934 (the
"Exchange Act"). The case is brought by lead
plaintiff Peter Rudolph on behalf all purchasers of
UTStarcom securities between September 4, 2002,
and July 24, 2007 ("the class period").

UTStarcom is a publicly-traded company based out
of Alameda, California, which "manufactures, in-
tegrates and supports IP-based, end-to-end net-
working and telecommunications solutions."In
layperson's terms, UTStarcom sells broadband
wireless and Internet television products. On
November 7, 2006, the company issued a press re-
lease announcing that it had begun to review its pri-
or practices concerning the granting of stock op-
tions. On February 1, 2007, defendants issued a
second press release stating that this review was on-
going, but that the review had revealed that the
company had used incorrect measurement dates for
certain stock option grants. In another announce-
ment on May 16, 2007, defendants stated that the
use of improper measurement dates likely meant
that the company failed to report roughly $35 mil-
lion in non-cash compensation. In a press release
dated July 24, 2007, defendants revised that amount
to $28 million. Based on these disclosures, plaintiff
alleges that defendants engaged in a fraudulent
scheme of intentionally backdating stock options.
Plaintiff alleges that by backdating stock options,
defendants overstated the company's net income
and earnings, thereby artificially inflating the stock
price. Specifically, plaintiff alleges that 17.9 mil-
lion stock options out of a total of 28.8 million
stock options granted by defendants between 2000
and 2005 had incorrect measurement dates. Of
these 17.9 million, 7.6 million had exercise prices
that were higher than the prices on the actual grant
date, while 10.3 million had exercise prices that
were lower than the prices on the actual grant date.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643
**(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))**

That is, 10.3 million of the backdated stock options were "in-the-money" options because they had intrinsic value on the day they were granted, while 7.9 million of the backdated options actually left the grantees with a loss on the day they were granted. Plaintiff further alleges that once the backdating scheme was revealed to the public through the company's restatements, the price of UTStarcom stock declined to the detriment of investors in the class. After defendants' November 7, 2006 announcement that it had commenced a voluntary review of its stock option practices, UTStarcom stock fell 9%, from $10.23 on November 7, 2006, to $9.32 on November 9, 2006. In addition, after defendants' July 24, 2007 announcement of the likely $28 million restatement (in addition to other negative news), UTStarcom stock fell 22%, from $4.73 on July 22, 2007, to $3.70 on July 25, 2007.

**\*2** Plaintiff filed this lawsuit on September 4, 2007, and filed an amended complaint on January 25, 2008. Now before the Court is defendants' motion to dismiss the amended complaint in its entirety.

## LEGAL STANDARD

### I. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."*Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

### II. Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."15 U.S.C. § 78j(b). Rule 10b5 makes it unlawful for any person to use interstate commerce:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a 3 fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In order to state a claim under section 10(b) and Rule 10b-5, the plaintiff must allege (1) a misrep-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643

**(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))**

resentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff justifiably relied (5) that proximately caused the alleged loss. *See Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir.1999).

### III. Heightened pleading standard for § 10(b) claims

**\*3** A securities class action alleging violation of § 10(b) of the Exchange Act must satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). The Federal Rules of Civil Procedure require that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b). Federal securities fraud claims, like common law fraud claims, are subject to the special pleading requirements of Rule 9(b).*Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). To comply with Rule 9(b) in a securities action, a plaintiff must allege the time, place, and content of the alleged fraud, as well as the "circumstances indicating falseness" or "the manner in which [the] representations [or omissions at issue] were false and misleading."*In re GlenFed Sec. Litig.,* 42 F.3d 1541, 1544 (9th Cir.1994) (en banc) (alterations in the original).

The PSLRA was enacted as an amendment to the Exchange Act. *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 973 n. 2 (9th Cir.1999). Under the PSLRA:

> In any private action arising under his chapter under which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). The required state of mind

is "at a minimum, deliberate recklessness." *In re Silicon Graphics,* 183 F.3 at 983.Scienter may be pled and proven by reference to circumstantial evidence. *See In re Peoplesoft Sec. Litig.,* 2000 WL 1737936, \*3 (N.D.Cal. May 25, 2000). However, when pleading on information and belief, a plaintiff must plead with "particularity" by "provid[ing] all facts forming the basis for [plaintiff's] belief in great detail."*In re Silicon Graphics,* 183 F.3d at 983;*see also*15 U.S.C. § 78u-4(b)(1). Therefore, the Reform Act has strengthened the pleading requirements of Rule 9(b).

### IV. Section 14(a) and Rule 14a-9

To establish a claim under § 14(a) of the Exchange Act, plaintiffs must allege that some part of a proxy statement "contain[s] any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not misleading ...."17 C.F.R. § 240.14a-9; *see also Desaigoudar v. Meyercord,* 223 F.3d 1020, 1022 (9th Cir.2000). The requisite state of mind under this section is negligence. *See In re McKesson HBOC, Inc. Sec. Litig.,* 126 F.Supp.2d 1248, 1263 (N.D.Cal.2000); *Wilson v. Great Am. Indus., Inc.,* 855 F.2d 987, 995 (2d Cir.1988); *Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281-1301 (2d Cir.1973).

### IV. Request for judicial notice

**\*4** Generally, when considering a motion to dismiss, a district court must consider only the facts stated in the plaintiffs' complaint, or in documents attached to the complaint as exhibits or incorporated into the complaint by reference. Under certain circumstances, the court may also consider matters that are appropriate subjects of judicial notice under Federal Rule of Evidence 201. *Kramer v. Time Warner,* 937 F.2d 767, 773 (2d Cir.1991). While the general rule is that "[m]atters outside the plead-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                                    Page 4
--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643
(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))

ings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," in a securities action a court may also consider documents that the defendant has attached to its motion to dismiss either as exhibits or accompanied by a request for judicial notice, *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997).

### DISCUSSION

### I. Motion to dismiss Section 10(b) claims

Defendants move to dismiss plaintiff's § 10(b) and Rule 10b-5 claim. Defendants do not take issue with plaintiff's allegations regarding certain elements of a § 10(b) claim, but focus on whether plaintiff has failed to adequately plead loss causation and scienter. The Court finds that plaintiff has adequately plead loss causation but has not adequately plead scienter.

### A. Loss causation

A plaintiff bringing a securities claim must show some causal connection between the alleged fraud and the securities transaction in question. *In re Daou Sys., Inc.,* 411 F.3d 1006, 1025 (9th Cir.2005).“[T]o prove loss causation, the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff.”*Id.* (citing *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

Plaintiff alleges that “two specific pronouncements from the Company,” AC at ¶ 146, revealed the truth about defendants' fraudulent backdating practices and caused a decline in UTStarcom's stock prices. The first pronouncement relied upon by plaintiff is the November 7, 2006 press release announcing that the company had “commenced a voluntary review of its historical equity award grant practices.”*Id.* at ¶ 147.Following this announce-

ment, stock prices fell from $10.23 to $9.32. *Id.* Defendants argue that this press release cannot support the element of loss causation because an announcement of an internal investigation, without more, does not reveal to the market that prior statements made by the company were untrue. The press release specifically stated that “no conclusions have been reached about whether the Company will need to record any non-cash adjustments to its financial statements related to prior equity grants.”Ketroser Decl. ex. A.[FN2] The Court finds that at that point in time, prior to any revelation by defendants of actual backdating, the “true nature of [the company's] financial condition had not yet been disclosed.”*Daou Sys.,* 411 F.3d at 1027. The Court therefore agrees with the other courts that have reached this question that the announcement of an internal investigation cannot support an allegation of loss causation. *See, e.g., In re Hansen Natural Corp. Sec. Litig.,* 527 F.Supp.2d 1142, 1162 (C.D.Cal.2007) (rejecting loss causation based on a similar announcement because “the November 6, 2006, press release simply stated that Hansen had formed a Special Committee to conduct an investigation into the same matters the SEC was investigating”); *Weiss v. Amkor Tech., Inc.,* 527 F.Supp.2d 938, 947 (D.Ariz.2007); *see also In re Avista Corp. Sec. Litig.,* 415 F.Supp.2d 1214, 1221 (E.D.Wash.2005) (“[T]he announcement by a regulatory agency that it intends to investigate is insufficient, on its own, to plead loss causation.”).

*5 The second pronouncement upon which plaintiff relies is the July 24, 2007 press release that announced, among other things, “the preliminary results of its review of historical equity award practices, requiring the Company to restate approximately $28 million of non-cash compensation expenses over the years 2000 through 2006.”AC at ¶ 148. Following this announcement, stock prices fell from $4.73 to $3.70. *Id.* Defendants argue that this disclosure cannot support the element of loss causation because (1) other information in the July 24 release could have caused stock prices to drop, and (2) in comparison to prior press releases regarding

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643
**(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))**

Case 1:07-cv-00144-RJL    Document 21-3    Filed 07/15/2008    Page 5 of 9    Page 5

the ongoing stock option investigation, the news announced on July 24 was actually positive, not negative. As to defendants' first argument, the Ninth Circuit has made clear that "[a] plaintiff is not required to show 'that a misrepresentation was the *sole* reason for the investment's decline in value' in order to establish loss causation."*Daou Sys.,* 411 F.3d at 1025 (quoting *Robbins v. Koger Props., Inc.,* 116 F.3d 1441, 1447 n. 5 (11th Cir.1997)). Rather, the misrepresentation need only be one substantial cause of the stock's decline. *Id.*

As to defendants' second argument, they are correct that the company announced, prior to July 24, 2007, that previous financial statements should no longer be relied upon and that the company would need to restate additional non-cash compensation charges of approximately $50 million, on February 1, 2007, and then $35 million, on May 16, 2007. *See id.* at ¶¶ 16, 17, 115.In comparison to restatements of $50 million and $35 million, it could be argued that $28 million was actually good news, but the Court finds that plaintiff has adequately pled loss causation based on the July 24, 2007 disclosure because this disclosure was significantly more definite than the prior disclosures. The February 1, 2007 disclosure, for instance, stated that the "investigation is on-going," that "the Company is not yet able to de-termine with finality the amount of additional non-cash stock-based compensation charge to be recog-nized," and that the $50 million restatement was "based on preliminary information." *Id.* at ¶ 16.By contrast, the July 24, 2007 disclosure was cast in far more definitive terms. Although it did state that the results were preliminary and approximate, it did not state that the investigation was ongoing or that the Company was not able to make a final determ-ination. *See* Ketroser Decl. at ex. D. The Court finds this disclosure sufficient to satisfy the plead-ing requirements for loss causation. Accordingly, the Court GRANTS defendants' motion to dismiss as to the November 7, 2006 press release, and DENIES defendants' motion to dismiss as to the Ju-ly 24, 2007 press release.

**B. Scienter**

"[T]he PSLRA requires that the Complaint 'state with particularity facts giving rise to a strong infer-ence that the defendant acted with the required state of mind,' or scienter."*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1230 (9th Cir.2004) (quoting 15 U.S.C. § 78u-4(b)(2)). This inquiry "is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard ."*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* --- U.S. ----, ----, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). Here, the required state of mind is at least "deliberate recklessness," meaning reckless-ness that "reflects some degree of intentional or conscious misconduct."*Nursing Home Pension Fund,* 380 F.3d at 1230 (internal quotation marks omitted). The PSLRA's heightened pleading stand-ard requires the plaintiff to plead "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct,"*Silicon Graphics,* 183 F.3d at 974, such that the inference of scienter is "more than merely 'reasonable' or 'permissible'-it must be co-gent and compelling, thus strong in light of other explanations," *Tellabs,* 127 S.Ct. at 2510.

**\*6** " '[T]he mere publication of inaccurate account-ing figures, or a failure to follow GAAP, without more, does not establish scienter.' " *DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 390 (9th Cir.2002) (quoting *In re Software Tool-works Inc.,* 50 F.3d 615, 627 (9th Cir.1994)); *see also Hockey v. Medheker,* 30 F.Supp.2d 1209, 1224 (N.D.Cal.1998) ("Merely alleging that fraudulent accounting practices have occurred, without more, does not create a strong inference of scienter."). "Rather, to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that: (1) specific accounting decisions were improper; and (2) the defendants knew specific facts at the time that rendered their accounting determinations fraudulent." *Morgan v. AXT, Inc.,* 2005 WL

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643
(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))

2347125, * 14 (N.D.Cal. Sept.23, 2005) (citing *DSAM Global Value Fund,* 288 F.3d at 390-391). Similarly, the signing of quarterly certifications of financial statements mandated by the Sarbanes-Oxley Act does not, without more, support an inference of scienter. *See In re Hypercom Corp. Sec. Litig.,* 2006 WL 1836181 *11 (D.Ariz. July 5, 2006)* ("However, an incorrect Sarbanes-Oxley certification does not, by itself, create a strong inference of scienter."); *In re Invision Techs., Inc. Sec. Litig.,* 2006 WL 538752 *7 n. 3 (N.D.Cal. Jan.24, 2006); *In re Watchguard Sec. Litig.,* 2006 WL 2038656 *11 (W.D.Wash. April 21, 2006); *Morgan v. AXT, Inc.,* 2005 WL 2347125 *15 (N.D.Cal. Sept.23, 2005).* In addition, courts in this Circuit have held that general allegations of intent based upon generalized financial motives are insufficient to establish scienter. *See, e.g., Kane v. Madge Networks N.V.,* 2000 WL 33208116, *11 (N.D.Cal. May 26, 2000)* (holding that motive to avoid stock dilution is a motive for fraud, but would not create a "strong inference" of scienter); *In re PETsMART, Inc. Sec. Litig.,* 61 F.Supp.2d 982, 999 (D.Ariz.1999).

Here, plaintiff's scienter pleading is based on numerous factual allegations, many of which cannot support-either alone or taken collectively-an inference of scienter. For instance, plaintiff relies on the company's admission in its restatement that some options had been backdated, defendants' responsibility for approving stock option grants, defendants' certification of the company's financial reports, and defendants' receipt and exercise of backdated stock options. As shown in the cases cited above, none of these factual allegations is cogent and compelling, *see, e.g., DSAM Global Value Fund,* 288 F.3d at 390-91, because each could equally support the inference that stock options had been backdated through innocent bookkeeping error, *see In re CNET Networks, Inc.,* 483 F.Supp.2d 947, 955-56 (N.D.Cal.2007); *Nach v. Baldwin,* 2008 WL 410261, *4, 7 (N.D.Cal. Feb.12, 2008).* This is particularly so where a full 7.6 million stock options-or 42% of all incorrectly-dated stock options-were backdated to dates that left the recipients in the red on the date they were granted. AC at ¶ 120. Thus, plaintiff must point to other facts which provide cogent and compelling evidence of deliberate recklessness or intentional misconduct, rather than innocent bookkeeping error. Plaintiff cannot make that showing based on a statistical analysis of the likelihood that UTStarcom's stock options were deliberately backdated because plaintiff points to only two or three specific grant dates that fell on days when stock prices were particularly low, *see id.* at ¶ 61, without providing any evidence of the total number of grant dates or other information to place these grant dates in context, *see In re Openwave Sys. Inc. Shareholder Derivative Litig.,* 503 F.Supp.2d 1341, 1348, 1350-51 (N.D.Cal.2007); *Nach,* 2008 WL 410261 at *5-6.

*7 Instead, plaintiff relies on the observations of two confidential witnesses, who apparently can confirm that defendants actively and intentionally backdated stock option grants in order to provide additional compensation to senior executives. AC at ¶¶ 57-60, 62. The statements of these witnesses, in combination with plaintiff's other allegations, might be sufficient to survive defendants' motion to dismiss. The problem, as defendants point out, is that plaintiff has not provided sufficient information about these confidential witnesses. Courts in this District have rejected statements by confidential witnesses in which, as is the case here, only the witness' job title and period of employment was provided. *See, e.g., In re Northpoint Comm Group, Inc. Sec. Litig.,* 184 F.Supp.2d 991, 1001 (N.D.Cal.2001) (finding that use of eight confidential witnesses could not overcome the PSLRA's particularity requirement where the complaint did not describe the witnesses' duties or how they learned the information in the complaint); *In re Network Assocs., Inc. Sec. Litig.,* 2003 WL 24051280, *9 (N.D.Cal. March 25, 2003).* One example of a case in which plaintiffs provided sufficient information about each confidential witness is *In re Adaptive Broadband Sec. Litig.,* 2002 WL989478 (N.D.Cal. Apr. 2, 2002). In that case, the court found that

--- F.Supp.2d ----                                                                      Page 7
--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643
**(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))**

plaintiffs provided sufficient detail where the complaint set forth information including the period during which the witness had been employed, a clearer explanation of the witness' job duties, and how the witness came to know the information he or she describes. Plaintiffs must reveal all facts about that witness that were material to the formation of their belief that the witness' statement is accurate. *See In re Secure Computing Corp. Sec. Litig., 120 F.Supp.2d 810, 817 (N.D.Cal.2000).* At the very least, plaintiff must describe the witnesses' period of employment, what the witnesses' job duties were, their expertise, and how they had access to the information being provided.

In short, the Court agrees with defendants that plaintiff's complaint, as written, fails to adequately plead scienter. Plaintiff must either provide additional information about the confidential witnesses, or put forth other evidence demonstrating that defendants intentionally engaged in backdating or acted with deliberate recklessness. In so doing, plaintiff must plead facts showing that each individual defendant acted with scienter, not only the one or two defendants currently implicated by the confidential witnesses. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 364-65 (5th Cir.2004); In re Silicon Storage Tech., Inc., 2006 WL 648683 *21-22 (N.D.Cal. March 10, 2006)* ("Until such time as the Ninth Circuit does speak on this issue, this court interprets the above-cited provision of the PSLRA as requiring that plaintiffs plead facts showing scienter as to each defendant individually."). For these reasons, the Court GRANTS defendants' motion to dismiss plaintiff's first cause of action.

## II. Motion to dismiss Section 14(a) claim

**\*8** Defendants next argue that plaintiff's claim under Section 14(a) of the Exchange Act must be dismissed for multiple reasons. Section 14(a) and Rule 14a-9 "disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission

of material fact that makes any portion of the statement misleading." *Desaigoudar, 223 F.3d at 1022.* In addition, a plaintiff bringing a claim under this section "must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essentiallink in the accomplishment of the proposed transaction." *Id.*

Defendants first argue that plaintiff fails to identify any false or misleading statements contained in defendants' proxies. The PSLRA requires that a securities fraud plaintiff must identify each misleading statement when seeking relief under § 14(a).*Id.* at 1023;*15 U.S.C. § 78u-4(b)(1).* In response to defendants' motion, plaintiff points to sections of his complaint that state that "UTStarcom's annual Proxy Statements for fiscal years 2002 through 2006 contained false statements about the compensation of UTStarcom's officers," AC at ¶ 66, and that "Defendants negligently omitted the material facts about option grant backdating and negligently misrepresented the terms of the Individual Defendants' compensation and management integrity,"*id.* at ¶ 164.Defendants are correct that plaintiff's complaint manifestly fails to identify what statements in the proxies are alleged to have been misleading. Merely stating that the proxies "contained false statements" obviously does not comply with the PSLRA. In addition, to the extent plaintiff also argues that defendants violated § 14(a) by omitted material facts, plaintiff must provide additional details about what facts were omitted and must identify what statements in the proxies were rendered misleading by virtue of defendants' material omission.

Second, defendants argue that plaintiff's complaint fails to satisfy the "essentiallink" element of a § 14(a) claim. Plaintiff must allege that defendants' misleading statements or omissions were an "essentiallink" in the accomplishment of the transaction proposed in the proxy statement.*Desaigoudar, 223 F.3d at 1022.* Plaintiff essentially concedes that the complaint, as written, does not allege the essentiallink element, and instead makes

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

new arguments in his opposition brief regarding his injury and the essentiallink. The Court will not consider these new allegations, but will instead permit plaintiff to amend his complaint to include the necessary allegations. The Court does not reach any of defendants' other contentions regarding the essentiallink element.

Third, defendants argue that plaintiff's complaint fails to plead that defendants acted negligently. Plaintiff relies solely on his showing of defendants' scienter to plead that defendants acted negligently. *See* Plaintiff's Opposition at 24. As discussed above, the Court finds that plaintiff fails to adequately plead scienter. Accordingly, if plaintiff chooses to amend his complaint to plead scienter, the Court will consider whether plaintiff's new allegations adequately allege defendants' negligence.

*9 Finally, defendants argue that plaintiff's § 14(a) claim is partially time-barred as it relates to proxy statements filed in 2003 and 2004. Plaintiff does not dispute the proxy dates on which defendants rely, but instead argues that defendants rely on the wrong statute of limitations. The statute of limitations for claims brought under § 14(a) "is one year from the discovery of the occurrences giving rise to the claim, but no later than three years from the date of the violation." *In re Verisign, Inc., Derivative Litig.,* 531 F.Supp.2d 1173, 1212 (N.D.Cal.2007); *see also Westinghouse Elec. Corp. by Levit v. Franklin,* 993 F.2d 349, 353 (3d Cir.1993); *Stoll v. Ardizzone,* 2007 WL 2982250, *2 (S.D.N.Y. Oct.9, 2007). On the other hand, pursuant to the Sarbanes-Oxley Act, the statute of limitations for a cause of action "that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" is two years after discovery or five years after the violation. 28 U.S.C. § 1658(b). Plaintiff argues that the Court should apply the longer statute of limitations for fraud claims. The Court disagrees. Plaintiff provides no citation for this proposition, and every court that has considered the issue, including courts in this

district, has held that § 1658(b) does not apply to claims brought under § 14(a). *See, e.g., Verisign,* 531 F.Supp.2d at 1212 ("A Section 14(a) claim is not a claim that 'sounds in fraud' under the Sarbanes-Oxley Act of 2002, so its statute of limitations was not extended by 28 U.S.C. § 1658(b) (2)."). Indeed, the Third Circuit recently rejected plaintiff's argument because § 14(a) claims do not require proof of fraudulent intent. *In re Exxon Mobil Corp. Sec. Litig.,* 500 F.3d 189, 196-97 (3d Cir.2007) ("[W]e conclude that Congress did not intend to include § 14(a) claims within the scope of § 1658(b), but rather intended that provision to apply to § 10(b) claims and other claims requiring proof of fraudulent intent."). The Third Circuit also explicitly rejected the argument, also made by plaintiff here, that even if § 1658(b) does not apply generally to § 14(a) claims, it might apply to particular § 14(a) claims that sound in fraud. *Id.* at 197-98. For these reasons, the Court holds that the applicable statute of limitations is three years. Plaintiff filed this complaint on September 4, 2007, making his § 14(a) claim time-barred as to proxy statements issued on April 2, 2003, August 22, 2003, and April 7, 2004. Should plaintiff wish to amend his complaint, he may move forward on his § 14(a) claim with regard to the later-issued proxies.

For these reasons, the Court GRANTS defendants' motion to dismiss the § 14(a) claim for failure to comply with the PSLRA.

### III. Motion to dismiss Section 20(a) claim

Because plaintiff has not adequately alleged a primary violation of federal securities laws, the Court also GRANTS defendants' motion to dismiss plaintiff's claim for control person liability under § 20(a). *See Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1035 n. 15 (9th Cir.2002) ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5.").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 9
--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643
**(Cite as: --- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.))**

## CONCLUSION

**\*10** For all of the foregoing reasons, the Court hereby GRANTS defendants' motion to dismiss plaintiff's complaint [Docket No. 54].*Should he wish to do so, plaintiff may file an amended complaint no later than May 16, 2008.*

**IT IS SO ORDERED.**

> FN1. The following background facts are taken from the allegations of plaintiffs' complaint, which for purposes of this motion, must be taken as true.

> FN2. The Court GRANTS defendants' request for judicial notice.

N.D.Cal.,2008.

Rudolph v. UTStarcom

--- F.Supp.2d ----, 2008 WL 1734763 (N.D.Cal.), Fed. Sec. L. Rep. P 94,643

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 1
Slip Copy, 2008 WL 564824 (N.D.Ohio)
**(Cite as: 2008 WL 564824 (N.D.Ohio))**

**C**

In re Diebold Derivative Litigation
N.D.Ohio,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio,Eastern Division.
In re DIEBOLD DERIVATIVE LITIGATION.
**Nos. 5:06CV0233, 5:06CV0418.**

Feb. 29, 2008.

John A. Harris, IV, Mark M. Kitrick, Mark D. Lewis, Kitrick & Lewis, Columbus, OH, for Minna Recht.

Daniel P. Goetz, Weisman, Kennedy & Berris Co., L.P.A., Cleveland, OH, William B. Federman, Federman & Sherwood, Oklahoma City, OK, for Minna Recht and Sam Wietschner.

Peter D. Bull, Bull & Lifshitz, New York, NY, for Minna Recht and Liberto Forbes.

Sara E. Collier, Federman & Sherwood, Oklahoma City, OK, for Minna Recht, Liberto Forbes and Sam Wietschner.

R. Eric Kennedy, Weisman, Kennedy & Berris, Cleveland, OH, Joshua M. Lifshitz, Bull & Lifshitz, New York, NY, for Sam Wietschner.

Daniel R. Karon, Goldman, Scarlato & Karon, Cleveland, OH, for Liberto Forbes.

Geoffrey J. Ritts, John M. Newman, Jr., Jones Day, Cleveland, OH, for Walden W. O'Dell, Eric C. Evans, Gregory T. Geswein, Louis V. Bockius, III, Christopher M. Connor, Richard L. Crandall, Gale S. Fitzgerald, Phillip B. Lassiter, John N. Lauer, William F. Massy, Henry D.G. Wallace and Diebold, Inc.

Adrienne M. Ferraro, Jonathan B. Leiken, Jones Day, Cleveland, OH, for Walden W. O'Dell, Eric C. Evans, Gregory T. Geswein, Louis V. Bockius, III, Christopher M. Connor, Richard L. Crandall, Gale S. Fitzgerald, Phillip B. Lassiter, John N. Lauer, William F. Massy, Henry D.G. Wallace, Diebold, Inc., David Bucci, John M. Crowther, Michael J. Hillock, Kevin J. Krakora, Thomas W. Swidarski and Robert Urosevich.

Robert S. Fulton, Newman Olson & Kerr, Youngstown, OH, for Diebold, Inc.

MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.
**\*1** This is a shareholders' derivative action. Before the Court are two motions to dismiss Plaintiffs' Consolidated Amended Shareholder Derivative Complaint (Doc. No. 26) (the "Complaint"). On August 1, 2007, Defendants Walden W. O'Dell, Eric C. Evans, Gregory T. Geswein, Louis V. Bockius III, David Bucci, Christoper M. Connor, Richard L. Crandall, John M. Crowther, Gale S. Fitzgerald, Michael J. Hillock, Kevin J. Krakora, Phillip B. Lassiter, John N. Lauer, William F. Massy, Thomas W. Swidarski, Robert Urosevich, and Henry D.G. Wallace (collectively, the "Individual Defendants") filed a motion to dismiss. (Doc. No. 27.) Also on August 1, 2007, nominal defendant Diebold, Inc., ("Diebold") filed its own motion to dismiss. (Doc. No. 30.) FN1 Both the Individual Defendants and Diebold (collectively, "Defendants") seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 based on Plaintiffs' failure to make a pre-litigation demand on Diebold's board of directors (the "Board") and Plaintiffs' failure to plead particularized facts showing that demand was excused as futile. Defendants also seek dismissal on the grounds that Plaintiffs' substantive claims are insufficient as a matter of law, and/or fail to satisfy applicable pleading standards. Plaintiffs opposed the motions to dismiss (Doc. No. 31), and Defendants replied. (Doc. Nos. 32 & 34.)

> FN1. Diebold's motion to dismiss simply adopts and incorporates the arguments raised in the motion to dismiss filed by Individual Defendants.

**I. Factual and Procedural Background**

This shareholder derivative action arises out of al-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

legations of corporate malfeasance at Diebold. Plaintiff Minna Recht initiated this action by filing her complaint on January 31, 2006. Co-Plaintiff Sam Weitschner filed a similar complaint on February 23, 2006. On October 20, 2006, the Court [FN2] entered an order consolidating the two derivative cases under the caption of the instant case. (Doc. No. 16.) Plaintiffs filed the Consolidated Amended Shareholder Derivative Complaint on May 15, 2007. The matter is now before the Court on motions to dismiss.

> FN2. This case originally was assigned to the Honorable Peter C. Economus. It was transferred to the undersigned by order dated March 19, 2007.

## II. Law and Analysis

### A. Motion to Dismiss

The Complaint asserts six causes of action: (1) disgorgement (against O'Dell, Evans and Geswein) pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 ("SOX"); (2) breach of fiduciary duty; (3) abuse of control; (4) gross mismanagement; (5) waste of corporate assets; and (6) unjust enrichment. Defendants move to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Dana Corp. v. Blue Cross & Blue Shield Mut.,* 900 F.2d 882 (6th Cir.1990); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485 (6th Cir.1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 268, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not rely merely upon conclusory statements.

\*2 The only federal claim, and therefore the only basis for federal jurisdiction, [FN3] is the disgorgement action under SOX § 304. This claim relates to only three of the seventeen Individual Defendants.

Every court that has considered whether SOX § 304 provides a private right of action has answered that question in the negative. *See, e.g., Neer v. Pelino,* 389 F.Supp.2d 648, 652 (E.D.Pa.2005); *In re BISYS Group Derivative Action,* 396 F.Supp.2d 463, 464 (S.D.N.Y.2005); *Kogan v. Robinson,* 432 F.Supp .2d 1075, 1078 (S.D.Cal.2006); *In re Goodyear Tire & Rubber Co. Derivative Litig.,* 2007 WL 43557, at \*7 (N.D.Ohio Jan.5, 2007). The Court agrees, and finds that SOX § 304 does not create an implied private right of action. Accordingly, that claim must be dismissed.

> FN3. Plaintiffs contend the Court has federal question jurisdiction based on Count I, which raises the claim under SOX § 304, and supplemental jurisdiction over the state law claims asserted in Counts II through VI pursuant to 28 U.S.C. § 1367(a). (Compl. ¶ 4.)

### B. Supplemental Jurisdiction

The five other causes of action set forth in the Complaint (breach of fiduciary duty, abuse of control, gross mismanagement, corporate waste, and unjust enrichment) all arise under state law. The Court has jurisdiction over these claims, if at all, based on supplemental jurisdiction. However, as explained, Plaintiffs' only effort to state a federal claim fails as a matter of law. The supplemental jurisdiction statute provides that the district court may decline to exercise jurisdiction over state law claims where the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction, the court weighs considerations of judicial economy, convenience, fairness and comity. *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). The Sixth Circuit has provided the following guidance: "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir.1996). After a 12(b)(6) dismissal of the federal claims, "there is a strong presumption in favor of dismissing supplemental claims."*Musson,* 89 F.3d at 1255.

The Court is reluctant to maintain supplemental jurisdiction in this case, where federal jurisdiction is based solely on the assertion by Plaintiffs of what essentially is nonexistent federal claim. While arguments can be made that judicial economy and convenience considerations militate in favor of exercising supplemental jurisdiction, given that this Court has pending before it companion cases under federal securities law and ERISA against the same defendants, the Court finds that such considerations do not overcome the strong presumption in favor of dismissal. The Court has serious concerns that exercise of supplemental jurisdiction over the state law claims in this case, where the only federal claim pleaded by Plaintiffs is one that has never been recognized to exist as a private right of action and is asserted against only three of eighteen total defendants, would expand improperly the scope of federal jurisdiction. That being the case, the Court exercises its discretion to decline supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3).[FN4] Accordingly, these claims are dismissed without prejudice.

> FN4. The Court notes that dismissal of Plaintiffs' state law claims also would be warranted under 28 U.S.C. § 1367(c)(2), which allows the court to decline supplemental jurisdiction if the state claim substantially predominates over the claim or claims over which the district court has original jurisdiction. The state law claims in the Complaint for breach of fiduciary duty, mismanagement, corporate waste, etc., clearly predominate over the single federal claim brought (in the Court's view, without a solid basis in law) under SOX § 304. This is a clear case "where permitting litigation of all claims in the district court

can accurately be described as allowing a federal tail to wag what is in substance a state dog."*Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 789 (3d Cir.1995) (citations omitted).

**III. Conclusion**

***3** For the foregoing reasons, the motions to dismiss by the Individual Defendants (Doc. No. 27) and nominal defendant Diebold (Doc. No. 30) are **GRANTED.**Plaintiff's federal law claim for disgorgement under SOX § 304 is **DISMISSED,** with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6). The Court declines to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims. Those claims are dismissed without prejudice. This case is closed.

**IT IS SO ORDERED.**

N.D.Ohio,2008.
In re Diebold Derivative Litigation
Slip Copy, 2008 WL 564824 (N.D.Ohio)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.