UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER DILORENZO, Derivatively on Behalf of EPLUS INC.,<br><br>Plaintiff,<br><br>vs.<br><br>PHILLIP G. NORTON, et al.,<br><br>Defendants,<br><br>– and –<br><br>EPLUS INC., a Delaware corporation,<br><br>Nominal Defendant. | ) Civil No. 07-CV-00144-RJL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

                                                                                 **Page**

I.     Introduction ............................................................................................................... 1

II.    Defendants' Backdating Was Not Simply a Lack of Due Care, but Rather an Egregious Bad Faith Act of Disloyalty for Which No "Raincoat" Protection Exists .......... 1

III.   Purported Issues of Standing Do Not Prevent the Orderly Continuation of This Action Under Applicable Delaware Law ............................................................. 4

IV.   The Complaint Alleges Violations of §10(b) ....................................................... 7

V.    Conclusion ......................................................................................................... 10

I.      Introduction

As invited by the Court during the August 6, 2008 hearing in this action, plaintiff submits this supplemental brief to clarify three matters. First, plaintiff explains the inapplicability of this Court's dismissal ruling in *In re Fannie Mae Sec.*, 503 F. Supp. 2d 9 (D.D.C. 2007), *aff'd*, No. 07-7108, 2008 U.S. App. LEXIS 16730 (D.C. Cir. Aug. 8, 2008), including any assertion that the defendants may claim the so-called "raincoat" protections of Delaware General Corporation Law §102(b)(7). Second, plaintiff will explain why he not only has standing to pursue this action, but why standing should not be used as a shield by defendants to escape liability in a shareholder derivative action. Third, plaintiff will outline why he has adequately alleged §10(b) claims against defendants.

II.     **Defendants' Backdating Was Not Simply a Lack of Due Care, but Rather an Egregious Bad Faith Act of Disloyalty for Which No "Raincoat" Protection Exists**

During the August 6 oral argument, defendants asserted that this action is governed by this Court's dismissal ruling in *Fannie Mae*. Defendants are incorrect. *Fannie Mae*'s factual allegations and underlying legal claims are critically different than those in the present action. As summed up by the District of Columbia Circuit Court, the *Fannie Mae* derivative plaintiffs alleged the "directors' failure to prevent the accounting irregularities" also known as "failure to exercise proper oversight." *See* 2008 U.S. App. LEXIS 16730, at *2, *20. At its very core, an allegation of a breach of fiduciary duty based upon failure to perform proper oversight is fundamentally different under Delaware law[1] than the allegation of a breach of fiduciary duty of loyalty or a breach based upon an act of bad faith. As this Court expressed in *Fannie Mae*, a claim for "failure to exercise proper oversight is one of, if not the most, difficult theories upon which to prevail." *Fannie Mae*, 503 F.

---

[1]     As this Court made clear in *Fannie Mae*, Delaware law controls where the corporation is incorporated in Delaware. *See* 503 F. Supp. 2d at 18 n.6.

- 1 -

Supp. 2d at 18 (citing, among other authorities, *In re Caremark Int'l*, 698 A.2d 959, 967 (Del. Ch. 1996)).

The granting of backdated options by a majority of ePlus Inc.'s ("ePlus" or the "Company") ***eight***-person Board of Directors (*i.e.*, defendants Norton, Bowen, O'Donnell, Herman and at least Faulders) is not a mere failure of oversight, such as the failure to adequately supervise third party actors (*i.e.*, accountants) as was the case in *Fannie Mae*. Backdating is the affirmative act by the director of granting backdated options. Both Delaware and federal courts label such conduct as "fraud," a breach of "loyalty" and "bad faith," not a simple failure to control or oversee some other person or internal control process. *See, e.g.*, *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1008, 1017 (N.D. Cal. 2007) (describing backdating as "form of fraud" and distinguishing the bad faith act of backdating from a simple lack of due care); *Ryan v. Gifford*, 918 A.2d 341, 355 n.35, 358 (Del. Ch. 2007) (approving backdated options issued in violation of shareholder-approved plans is "disloyal" and an act of "bad faith").[2] As explained by the Delaware Chancery Court in *In re Tyson Foods, Inc. Consol. S'holder Litig.*, No. 1106-CC, 2007 Del. Ch. LEXIS 120, at *10 (Del. Ch. Aug. 15, 2007), directors owe "unremitting loyalty" to shareholders and all communications made by directors to their shareholders must be made with "complete candor." (Original emphasis omitted.) In *Tyson*, similar to the present action, the directors made false representations about their conduct vis-à-vis the issuance of options. As poignantly stated in *Tyson*:

> Loyalty. Good faith. Independence. Candor. These are words pregnant with obligation. The Supreme Court did not adorn them with half-hearted adjectives. Directors should not take a seat at the board table prepared to offer only conditional loyalty, tolerable good faith, reasonable disinterest or formalistic candor. It is against

---

[2] *See also Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1184 (C.D. Cal. 2007) (upholding claims for breach of duty of good faith and loyalty and for §§10(b) and 14(a) violations based on issuing backdated options and making false statements); *Conrad v. Blank*, 940 A.2d 28 (Del. Ch. 2007) (same); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236 (S.D.N.Y. 2007) (same); *Edmonds v. Getty*, 524 F. Supp. 2d 1267, 1269 (W.D. Wash. 2007) (same).

these standards, and in this spirit, that the alleged actions of spring-loading or backdating should be judged.

*Id*. at *10-*11. Indeed, even where the motivation for the conduct may not be labeled as "selfish" or self-dealing, the mere act of backdating "is itself a disloyal act." *Desimone v. Barrows*, 924 A.2d 908, 933 (Del. Ch. 2007).

Thus, not only is *Fannie Mae* not applicable,[3] but because this case is not about a mere violation of the duty of care, but is instead a case of disloyalty and bad faith, defendants will not be able to escape liability under Delaware's General Corporation Law §102(b)(7). As §102(b)(7) states:

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision ***shall not eliminate*** or limit the liability of a director: (i) For any breach of the ***director's duty of loyalty*** to the corporation or its stockholders; (ii) for acts or omissions ***not in good faith*** or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

Del. Code Ann., tit. 8, §102(b)(7) (emphasis added). Section 102(b)(7) does not apply herein as defendants are alleged, and will be proven at trial, to have breached the duty of loyalty to the corporation by approving or receiving backdated options and/or to have acted in bad faith.

---

[3] The alternative demand excused argument of the *Fannie Mae* derivative plaintiffs was that the directors did not exercise "valid 'business judgment' in approving the severance payments [to certain officers]." *See* 2008 U.S. App. LEXIS 16730, at *21 (citation omitted). To the extent *Fannie Mae* addresses the issue of "business judgment," the case is wholly inapplicable herein because defendants have disclaimed any reliance on the business judgment rule by adopting the *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993), standard for demand futility. *See* Defendants' Motion to Dismiss the First Amended Verified Shareholder Derivative Complaint ("Dismissal Motion") at 22 (contending that *Rales* governs because action by the entire Board of Directors is purportedly not alleged). As held in *Rales*, "[w]here there is no conscious decision by [the corporate board of] directors to act or refrain from acting, the business judgment rule has no application." 634 A.2d at 933. Moreover, as submitted in plaintiff's prior briefing, backdating is not protected by the business judgment rule. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss the First Amended Verified Shareholder Derivative Complaint ("Opposition") at 18 (citing *Ryan*, 918 A.2d at 356-58; *Sanders v. Wang*, No. 16640, 1999 Del. Ch. LEXIS 203, at *14-*15 (Del. Ch. Nov. 8, 1999)).

Defendants who received backdated grants will fail to receive §102(b)(7) protection because they "derived an improper personal benefit" by receiving and exercising backdated options. *See Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006) (§102(b)(7) "provision can exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty"); *Ryan*, 918 A.2d at 358 ("[the court is] unable to fathom a situation where the deliberate violation of a shareholder approved stock option plan and false disclosures, obviously intended to mislead shareholders into thinking that the directors complied honestly with the shareholder-approved option plan, is anything but an act of bad faith"); *Zoran*, 511 F. Supp. 2d at 1017 (holding §102(b)(7) provides individual defendants "no quarter" as defendants' act of granting and receiving backdated options was "self-dealing and a violation of the duty of loyalty, not due care").[4]

### III. Purported Issues of Standing Do Not Prevent the Orderly Continuation of This Action Under Applicable Delaware Law

A second issue that warrants additional discussion is that of plaintiff's standing. It is plaintiff's position that his allegation of standing is sufficient and that the details concerning his purchases of ePlus stock are a matter for discovery. *See* Opposition, §I.V. This notwithstanding, however, plaintiff purchased his ePlus stock on October 16, 2003 before disclosure of any of the information concerning the backdating of stock options at ePlus.[5] Moreover, ePlus has now

---

[4] In any event, the applicability of any "raincoat" provision is an affirmative defense that "will not dispose of a matter at the pleading stage." *See Belova v. Sharp*, No. CV07-299-MO, 2008 WL 700961 at *8 (D. Or. Mar. 13, 2008) (attached as Ex. 6 to plaintiff's Notice of Supplemental Authorities in Further Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Supp. Auth.")).

[5] Plaintiff, if provided leave to amend, will include such an allegation in his complaint. As held recently in *In re Affymetrix Derivative Litig.*, No. C 06-05353 JW, slip op. at 13-14 (N.D. Cal. Mar. 31, 2008), plaintiff should be allowed leave to amend to cure any defect in pleading continuous ownership. *See* Supp. Auth., Ex. 2.

admitted that "actual measurement dates" for options granted between 1998 *and 2005* "differ from the recorded measurement dates," *i.e.*, were backdated. *See* Opposition at 1 (citing ¶¶3, 53).[6] Accordingly, plaintiff has standing for much of the period that ePlus has admitted that stock grants were "determined with hindsight to provide a more favorable exercise price for such grants." *See, e.g.*, Plaintiff's Request for Judicial Notice in Support of Opposition to Defendants' Motion to Dismiss the First Amended Verified Shareholder Derivative Complaint ("RJN"), Ex. 1 (2006 Form 10-K) at 4 (admitting hindsight pricing on grants from 1997 through 2003 and particular problems with grants in April 2004 for which SEC Forms 4 were not timely filed).

For example, plaintiff alleges that defendants O'Donnell, Faulders, Herman, Bowen and Norton granted backdated options bearing an issuance date of November 16, 2004 to ePlus directors and executives well after plaintiff's October 2003 purchase of ePlus stock. This grant alone exposes a majority of ePlus' *eight* directors to liability either as grantors (Bowen, Norton, O'Donnell, Faulders and Herman) or as recipients (Norton and Bowen). *See* ¶¶22-23, 27-29, 77-78, 87. Plaintiff has pled facts showing each of these directors' liability as grantors or recipients. First, plaintiff alleges that the November 2004 grant was made to Parkhurst by the ePlus Stock Incentive Committee, upon which Bowen and Norton served in 2004, and to Bowen and Norton by the Compensation Committee, on which O'Donnell, Faulders and Herman served in 2004. ¶¶22-23, 27-29, 62-63, 101, 154. Second, plaintiff alleges, based on the Merrill Lynch analysis, that the November 2004 grant was backdated (*see, e.g.*, ¶87, reflecting that the annualized return to management was 216.9% versus -8.5% to investors). Given that at least one half of the ePlus Board of Directors granted the November 2004 grant, plaintiff has standing as to at least one grant that

---

[6]    Paragraph references ("¶__" or "¶¶__") are to the First Amended Verified Shareholder Derivative Complaint for Violations of the Federal Securities Laws and State Law Claims for Breach of Fiduciary Duty, Waste of Corporate Asset and Unjust Enrichment ("Complaint").

suffices to allege demand futility (*see, e.g.*, Opposition at 8-17), and that is actionable under both federal and state law and is timely for reasons articulated in the Opposition at §§V.-VII.

More importantly, it is premature for defendants to attempt to dismiss any portion of this case based upon questions as to plaintiff's standing for conduct prior to 2003. As submitted during the argument of plaintiff's counsel on August 6, because these shareholder derivative actions focus on equitable relief being pursued to remedy a wrong to a corporate entity. *See* August 6, 2008 Transcript of Motion Hearing Before The Honorable Richard J. Leon ("Transcript") at 43. Accordingly, standing principles must not be applied in a vacuum without consideration for the nature of the underlying harm and the fact that derivative shareholder actions are brought to remedy a wrong to the corporation, not to the individual shareholder.

Public corporations, such as ePlus, are not owned by their directors and officers, but rather are owned by the shareholders in the form of stock. In the face of egregious acts of backdating, a corporation should not be denied a remedy simply because a minority shareholder has attempted to vindicate the corporation's rights. The answer is not to summarily dismiss the case if the claims are valid. Instead, as other courts have done, the Court should allow for the intervention of additional stockholders to assert those claims. *See, e.g.*, *Conrad*, 940 A.2d at 42 (holding where a company had found backdating had occurred but had "taken no action to hold any individuals accountable" the court "will condition the dismissal of [claims prior to the date plaintiff acquired stock] on the receipt of further information from the parties about the possibility of some other stockholder intervening to assert those early claims, or the adoption of some other measure to preserve those claims in the event that they prove to be of value to [the company]") (cited in Opposition at 19). Accordingly, an appropriate result under Delaware law is that the claims for backdated grants prior to plaintiff Dilorenzo's 2003 ownership is for the Court to allow intervention of additional plaintiffs who purchased ePlus stock in the earlier periods during which backdating admittedly occurred.

## IV. The Complaint Alleges Violations of §10(b)

At the hearing, defendants argued that plaintiff had failed to allege any violations of §10(b) of the Securities Exchange Act of 1934 because the Complaint "contains virtually no particularized facts to support an inference of scienter." Transcript at 18. As defendants have admitted that they intentionally backdated options and plaintiff has set forth in detail each defendant who granted and received those backdated options, this argument must fail.

In order to plead scienter, plaintiff must allege facts that would allow a reasonable person to "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. __, 127 S. Ct. 2499, 2510 (2007). In the context of backdating, courts have repeatedly held that where plaintiffs allege defendants either granted or received backdated stock options, scienter has been adequately pled. *See Zoran,* 511 F. Supp. 2d at 1010 (defendants violated §10(b) by granting and receiving backdated options in violation of company's stock option plan); *Belova*, 2008 WL 700961, at *6 ("scienter is typically present in backdating schemes"); *Quest*, 527 F. Supp. 2d at 1183-84 ("the substantial number and value of the option grants given to Defendants that consistently had measurement dates on either the lowest prices of the year or immediately proceeding rapid rises in the Company's stock, combined with Defendant's key positions relating to both the granting of and/or accounting for stock options gives rise to a compelling inference of either Defendants' actual knowledge or deliberate recklessness").[7]

Here, plaintiff provides specific allegations as to each defendant's role in the backdating scheme. For example, the Complaint alleges that both Norton and Bowen served on the Stock

---

[7] Both the *Belova* and *Quest* opinions were included in plaintiff's Notice of Supplemental Authority. Additional authorities are included in the Opposition at §V.A.1.c. and in the Notice of Supplemental Authority.

Incentive Committee from fiscal years 1997-2005. ¶¶22-23. While on the Stock Incentive Committee, Bowen and Norton selected the recipients of stock option grants and set the grant terms. ¶¶56, 101. In their capacity of Stock Incentive Committee members, they granted stock options that the Company has admitted were intentionally backdated in violation of the Company's own stock option plans. RJN, Ex. 1 at 4. In addition, the Complaint alleges that both Norton and Bowen signed financial statements that were made false and misleading by defendants' backdating scheme. ¶102. Those misleading statements included claims that stock options were issued at an "exercise price equal to the market price as of the date of grant," a statement that defendants have admitted was false. ¶101; *see* RJN, Ex. 1 at 4. Further, for fiscal years ended March 31, 2003, 2004 and 2005, Norton signed false certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"). ¶103. Defendants' baseless claim that the above facts fail to allege that defendants had knowledge of the backdating scheme has been heard and rejected by courts time and again. For example, in *Quest* the court rejected individual defendants' claims of ignorance, holding:

> Given the extremely beneficial option grant dates, the Individual Defendants' respective executive positions in the Company, and the substantial number of shares awarded to the various Defendants during and before the Class Period, the Court finds that Plaintiff has sufficiently pled a "strong inference" that Defendants knew or were deliberately reckless in not knowing that the purported option grant dates were improper.

527 F. Supp. 2d at 1182; *see also Openwave*, 528 F. Supp. 2d at 249-50 (holding scienter was adequately alleged to compensation committee members and the recipients of those options); *Ryan*, 918 A.2d at 355 n.35 ("[I]t is difficult to understand how a plaintiff can allege that directors backdated options *without* simultaneously alleging that such directors *knew* that the options were

being backdated."). Accordingly, plaintiff's allegations raise a strong inference of scienter. *Quest*, 527 F. Supp. 2d at 1183.[8]

Defendants' reliance on *Rudolph v UTStarcom*, 560 F. Supp. 2d 880 (N.D. Cal. 2008) (*see* Transcript at 20), ignores the fact that defendants here have **admitted** that they intentionally backdated options for the illicit purpose of gaining the advantage of historically lower stock prices. *See* RJN, Ex. 1 (Option dates "were determined with hindsight to provide a more favorable exercise price for such grants. These options were priced at the lowest closing price during the quarter, and not, as required by the applicable stock option plans, at the closing price on the date the options were actually awarded."). In *UTStarcom*, the court specifically held that all of the plaintiffs' allegations "could equally support the inference that stock options had been back-dated through innocent bookkeeping errors" because the defendants never admitted that they intentionally backdated options. Transcript at 12. Here, no inference needs to be drawn – defendants have admitted that backdating was done intentionally.

Lastly, plaintiff must set straight the incorrect assertions of defendants' counsel at the August 6 hearing as to the nature of a §10(b) claim and in particular, how loss causation is plead in a derivative backdating case. Curiously enough, while defendants' brief contained an accurate

---

[8] During the August 6 oral argument, the Court inquired whether a §10(b) claim exists if the defendant does not exercise options that they received. *See* Transcript at 19. The answer is yes. As held in *Zoran*, the corporate issuer is defrauded by the conduct of those corporate actors who awarded the backdated grants on behalf of the corporation because the issuer has been caused to

> award options of more value to the recipient than authorized. These options were outside all plans and could have ordinarily fetched a higher price in the market. For both exercised and unexercised options, one damage item caused by the transaction was the loss to the corporation.

*Zoran*, 511 F. Supp. 2d at 1012 (discussing §10(b) transaction causation and reliance for a derivative backdating claim). Thus, a §10(b) claim exists without regard to whether the defendant exercised his options because the damage to the corporation is caused when the backdated option is issued at less than fair market value.

statement of the law by asserting that §10(b) claims exist as to misrepresentations in the "purchase or *sale* of any security'" (*see* Reply Memorandum in Support of Defendants' Motion to Dismiss the First Amended Verified Shareholder Derivative Complaint at 3, quoting 15 U.S.C. §78j(b) (emphasis added)), defendants then attempted to hoodwink the Court by arguing that "***only purchasers*** of securities" have standing to assert §10(b) claims. *See* Transcript at 23 (emphasis added). To the contrary, sellers may assert §10(b) claims. As recognized by Judge Alsup in *Zoran*, in a backdating case "the victim is the seller, defrauded into parting with its shares at a lower price than was right." *Zoran*, 511 F. Supp. 2d at 1011. The Supreme Court has long held that sellers are protected by §10(b) as well. *See id.* (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151-53 (1972)). As articulated in *Zoran*, the unique circumstance that derivative backdating cases are brought on behalf of the corporate entity that was duped into issuing options at less than fair market value necessarily distinguishes these cases, and how they fit within the §10(b) rubric, from a "classic securities case." *See id.* The very issuance of the backdated grants, *i.e.*, causing the corporation to issue options of "more value to the recipient than authorized" suffices for §10(b) loss causation under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). *See Zoran*, 511 F. Supp. at 1011-12.

**V.     Conclusion**

       For the foregoing reasons, defendants' Motion to Dismiss should be denied.

DATED:  August 27, 2008                Respectfully submitted,

                                                   COUGHLIN STOIA GELLER
                                                     RUDMAN & ROBBINS LLP
                                                   TRAVIS E. DOWNS III
                                                 KATHLEEN A. HERKENHOFF
                                                 BENNY C. GOODMAN III (DC Bar # 489187)
                                                 MARY LYNNE CALKINS

                                                     s/ TRAVIS E. DOWNS III
                                                      TRAVIS E. DOWNS III

       655 West Broadway, Suite 1900
       San Diego, CA  92101-3301
       Telephone:  619/231-1058
       619/231-7423 (fax)

       COUGHLIN STOIA GELLER
         RUDMAN & ROBBINS LLP
       SHAWN A. WILLIAMS
       AELISH M. BAIG
       100 Pine Street, Suite 2600
       San Francisco, CA  94111
       Telephone:  415/288-4545
       415/288-4534 (fax)

       CUNEO GILBERT & LaDUCA, LLP
       JONATHAN W. CUNEO (DC Bar # 939389)
       WILLIAM H. ANDERSON (DC Bar # 502380)
       507 C Street, N.E.
       Washington, DC  20002
       Telephone:  202/789-3960
       202/789-0489 (fax)

       LAW OFFICES OF ROGER M. ADELMAN
       ROGER M. ADELMAN (DC Bar # 056358)
       1100 Connecticut Avenue, NW, Suite 730
       Washington, DC  20036
       Telephone:  202/822-0600
       202/822-6722 (fax)

       Attorneys for Plaintiff

S:\CasesSD\Eplus Derivative\BRF00053666 2.doc

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 27, 2008.

s/ TRAVIS E. DOWNS III
TRAVIS E. DOWNS III

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:travisd@csgrr.com

# Mailing Information for a Case 1:07-cv-00144-RJL

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **William H. Anderson**
  wanderson@cuneolaw.com

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **Travis E. Downs**
  travisd@csgrr.com

- **Benny C. Goodman , III**
  bgoodman@csgrr.com,e_file_sd@csgrr.com

- **Jason J. Mendro**
  jmendro@gibsondunn.com

- **Francis Joseph Warin**
  fwarin@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Kathleen A. Herkenhoff
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
```